**REESE RICHMAN LLP**
Michael R. Reese
*mreese@reeserichman.com*
Kim E. Richman
*krichman@reeserichman.com*
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

     - and -

**HALUNEN & ASSOCIATES**
Clayton Halunen
*halunen@halunenlaw.com*
Susan M. Coler
*coler@halunenlaw.com*
Melissa W. Wolchansky
*wolchansky@halunenlaw.com*
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LESLIE FROHBERG and NANCY HARDING, individually and on behalf of all others similarly situated, <br><br>                Plaintiffs, <br><br>      v. <br><br> CUMBERLAND PACKING CORP., <br><br>                Defendant. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiffs Leslie Frohberg and Nancy Harding ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following claims against Cumberland Packing Corp. ("Cumberland" or "Defendant"):

## SUMMARY OF THE ACTION

1.     This is a proposed class action complaint brought on behalf of a "New York Class," a "Minnesota Class," and a "Nationwide Class" (each further defined below)[1] consisting of individuals who purchased Defendant's products labeled as "Stevia In The Raw® 100% Natural Zero Calorie Sweetener" (the "Products" or "Stevia In The Raw®," as defined below). Defendant falsely represents that Stevia In The Raw® is natural, when, in fact, it contains non-natural ingredients.  This lawsuit seeks to enjoin Defendant's false and misleading practices and recover damages and restitution on behalf of the Classes under the applicable state laws.

2.     Stevia is a genus of plant native to South America.  It has been used as a sweetener for thousands of years but was first commercially available in the early 1970s.

3.     Defendant launched Stevia In The Raw® because "people are always looking for more natural options these days."[2]  With a "natural" marketing objective, Defendant's marketing campaign has the obvious intent of branding the product as "natural."

4.     Defendant manufactures, markets, and sells Stevia In The Raw® throughout New York, Minnesota, and the United States and sells two varieties of Stevia In The Raw®: Stevia In The Raw® in sachet packet form ("Stevia In The Raw® Packets"); and Stevia In The Raw® Bakers Bag ("Stevia In The Raw® Bakers") (together, the "Products" or "Stevia In The Raw®").

---

[1] This Complaint refers to the New York Class, the Minnesota Class, and the Nationwide Class, collectively, as the "Class" or "Classes."

[2] About Stevia In The Raw®, http://www.intheraw.com/about/ (last visited Feb. 3, 2014).

5.     Stevia In The Raw® Packets contain dextrose and stevia leaf extract.

6.     Stevia In The Raw® Bakers contains maltodextrin and stevia leaf extract.

7.     The Stevia In The Raw® Product labels emphasize that the sweetener is 100% natural and derived from the stevia plant.  Defendant places the statement "100% Natural Zero Calorie Sweetener" on the front panel of each of the Products and the statement "All Natural" on the back panel.  (*See* **Exhibit A** and **Exhibit B**, attached hereto and incorporated by reference herein.)

8.     However, to the detriment of consumers, including Plaintiffs and the Class members, Defendant's Products contain non-natural ingredients, and, consequently, are not natural.

9.     The ingredients dextrose and maltodextrin—which are highly processed and, as a result, unnatural—constitute the bulk of the Products.

10.     Dextrose and maltodextrin are, on information and belief, manufactured by chemically converting genetically modified corn into a food grade starch, which is then mixed with enzymes to create dextrose or maltodextrin.

11.     A reasonable consumer would not deem Stevia in the Raw® as natural if he/she knew that the Products contained highly processed ingredients and/or genetically modified organisms ("GMOs").

12.     Additionally, Defendant's representations about the Products are misleading and deceptive because Stevia In The Raw® contains only a miniscule amount of a substance that is extracted from the stevia leaf.  On information and belief, that substance is rebaudioside A ("Reb A").

13.     Reb A is a single steviol glycoside from the stevia plant that results from a multi-

step process that requires the use of toxic chemicals.

14. A reasonable consumer would not deem Stevia in the Raw® as natural if he/she knew that the stevia leaf extract is highly processed and/or synthetic.

15. Thus, Defendant's branding of Stevia In The Raw® as a natural sweetener is deceptive, misleading, and false. To label Stevia In The Raw® as "natural" creates consumer deception and confusion.

16. The purpose of this action is to enjoin Defendant from preying on consumers, such as Plaintiffs and the Class members, through its deceptive marketing and labeling of Stevia In The Raw® as a natural sweetener and to recover the ill-gotten gains Defendant received as a result of its fraudulent conduct. Plaintiffs seek relief for Defendant's unjust enrichment, breach of express warranty, and violations of New York General Business Law section 349; New York General Business Law section 350; Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. §325F.69; Minnesota's Unlawful Trade Practices Act, Minn. Stat. §325D.13; Minnesota's Deceptive Trade Practices Act, and Minn. Stat. §325D.44; and Minnesota's False Statement in Advertising Act, Minn. Stat. §325F.67.

## PARTIES

### Plaintiff Leslie Frohberg

17. Plaintiff Leslie Frohberg resides in the Bronx, New York.

18. For a few years, starting when the Products were first available in stores, Ms. Frohberg bought the following Products two (2) to three (3) times per month for her personal consumption:

- Stevia in the Raw® Packets
- Stevia in 7 ounce bags

from Stop & Shop in Co-op City, Bronx, New York and Stop & Shop on East Sandford

Boulevard in Mt. Vernon, New York.

19.     Ms. Frohberg made the above-referenced purchases in reliance on the representations on the Products' packaging that the Products were "natural."

20.     Ms. Frohberg would not have purchased the Products had she known they were not, in fact, natural.

**Plaintiff Nancy Harding**

21.     Plaintiff Nancy Harding resides in St. Paul, Minnesota.

22.     Within the past year, Ms. Harding purchased Stevia in the Raw® Packets from various retail locations in St. Paul, Minnesota, for her personal consumption.

23.     Ms. Harding made the above-referenced purchases in reliance on the representations on the Products' packaging that the Products were "natural."

24.     Ms. Harding would not have purchased the Products had she known they were not, in fact, natural.

**Defendant Cumberland Packing Corp.**

25.     Defendant Cumberland Packing Corp. is a corporation organized under the laws of the State of New York, with its principal place of business at 2 Cumberland Street, Brooklyn, New York 11205.

26.     Cumberland manufactures sweeteners such as Sugar In The Raw® and Sweet'N Low®.

## JURISDICTION AND VENUE

27.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), by virtue of 28 U.S.C. § 1332(d)(2), which explicitly provides for the original jurisdiction of the

federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.  Plaintiffs allege there are at least 100 members in the proposed Classes, the total claims of the proposed Class members are well in excess of $5,000,000.00 in the aggregate, exclusive of interests and costs, and members of the plaintiff Classes are citizens of a State different from the State of citizenship of Defendant.

28.     This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: (i) Defendant is a corporation formed under the laws of New York with its principal place of business in New York, meaning Defendant has systematic and continuous contacts with New York, such that Defendant is "essentially at home" here; and (ii) Plaintiff Frohberg's claims arise out of Defendant's conduct within New York.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is organized under the laws of New York and maintains its principal place of business in Brooklyn, New York.

## SUBSTANTIVE ALLEGATIONS

**A.     Defendant deliberately labeled Stevia In The Raw® to create consumer belief that the Products are "natural."**

30.     Cumberland is an international producer and marketer of alternative sweeteners, including Sugar In The Raw®, Sweet'N Low®, and Stevia In The Raw®.

31.     Cumberland recognized there was a growing market for products that are natural.[3]

32.     To capitalize on this rising demand, Defendant labels and markets Stevia In The

---

[3] About Stevia In The Raw®, http://www.intheraw.com/about/.

Raw® as a natural sweetener, thereby distinguishing it from other competing sweeteners. Indeed, since the inception of the Products, Defendant's marketing strategy has been to capture the "all-natural sweetening revolution."[4]

33.     Stevia In The Raw® is typically packaged and sold in boxes (of 50 grams or 100 grams each) of multiple 1 gram packets (in the case of Stevia In The Raw® Packets) and in 9.7 ounce multi-serving bags (in the case of Stevia In The Raw® Bakers).

34.     The Stevia In The Raw® packaging includes graphics of a leaf as part of the word "Stevia" and uses green and brown colors that can be characterized as earth tones.  (*See* Ex. A.)

35.     The box for Stevia In The Raw® Packets prominently states that the Products are a "100% Natural Zero Calorie Sweetener."  (Ex. A.)

36.     The side label of the packaging for Stevia In The Raw® Packets explains, "Stevia is naturally sweeter than sugar. So, like many zero calorie sweeteners, it is blended with dextrose, a natural ingredient."  (*Id.*)

37.     The back of the box for Stevia In The Raw® Packets states, "[e]njoy your sweet moments naturally with Stevia In The Raw, a 100% natural, zero calorie sweetener and a part of the In The Raw™ family."  (*Id.*)  The back of the package further proclaims, "All Natural," "Naturally Gluten Free Food," and "Sweeten a tea, a cup of coffee, hot or cold.  Sprinkle it on cereal, douse a piece of fruit.  Cook and Bake with it too.  Whatever you do, just do it naturally with Stevia In The Raw."  (*Id.*)

38.     The front label for Stevia In The Raw® Bakers prominently states that it is a "100% Natural Zero Calorie Sweetener."  (*See* Ex. B.)  It also includes graphics of a leaf as part

---

[4] *Id.*

of the word "Stevia."  (*Id.*)  Above the name is the statement, "Stevia Blended with Natural Ingredients."  (*Id.*)

39.     The back label of the packaging for Stevia In The Raw® Bakers explains, "Stevia is naturally sweeter than sugar. So, like many zero calorie sweeteners, it is blended with maltodextrin, a natural ingredient."  (*Id.*)  The back label also states "All Natural" and "Naturally Gluten Free Food."  (*Id.*)  It further proclaims, "[e]njoy your sweet moments naturally with Stevia In The Raw, a 100% natural, zero calorie sweetener and a part of the In The Raw® family."  Additionally it states, "So go on, Cut the calories in all your favorite recipes.  Whatever you do, just do it naturally with the In The Raw brand."  (*Id.*)

40.     Thus, Defendant designed the labeling of Stevia In The Raw® to create consumer belief that the Products are "natural."

### B.     Defendant's website confirms its intent to persuade consumers that Stevia In The Raw® is natural.

41.     Defendant's marketing of the Products on the Stevia In The Raw® website, http://www.intheraw.com/products/stevia-in-the-raw, highlights the Products' alleged "natural" quality.  Defendant focuses heavily on the use of the stevia leaf to provide sweetness to the Products.

42.     The home page of the Stevia In The Raw® website, http://www.intheraw.com/products/stevia-in-the-raw, includes the prominent representation "In The Raw®: Raw Natural Sweetness" and makes numerous representations to bolster Defendant's claims that Stevia In The Raw® is natural.  These representations include, but are not limited to,

the following:[5]

    a.   "All Natural";

    b.   "Naturally Gluten Free";

    c.   "Enjoy your sweet moments naturally with Stevia In The Raw®, a 100% natural, zero-calorie* sweetener.";

    d.   "It's a natural extract from the sweet leaves of the stevia plant."; and

    e.   "So go on, sweeten a tea, hot or cold, sprinkle it on cereal.  Bake and cook with it too.  Whatever you do, just do it naturally with Stevia In The Raw®."

43.    On a web page titled "Stevia In The Raw Frequently Asked Questions and Information," the Product website makes numerous representations, including but not limited to:[6]

    a.   "Stevia In The Raw is a natural, zero-calorie*, sweetener, which consists of stevia extract and a bulking agent (dextrose or maltodextrin).  The stevia is extracted naturally from the sweetest part of the stevia plant leaf (stevia rebaudiana Bertoni);"[7]

    b.   "In our Packet Product, the pure stevia leaf extract is blended with dextrose, a natural carbohydrate derived from corn, to produce the 100% natural, zero calorie sweetener we call Stevia In The Raw®.";[8]

    c.   "In our cup-for-cup Bakers Bag product, pure stevia leaf extract is co-dried with maltodextrin, a natural carbohydrate derived from corn, to produce a 100% natural, zero-calorie sweetener . . . .";[9]

    d.   "Stevia In The Raw brand sweetener is a 100% natural product made from

---

[5] Stevia In The Raw – 0 Calorie Natural Sweetener, http://www.intheraw.com/products/stevia-in-the-raw (last visited Feb. 3, 2014).

[6] Stevia In The Raw Frequently Asked Questions and Information, http://www.intheraw.com/products/faqs/stevia-in-the-raw/ (last visited Feb. 3, 2014).

[7] *Id.* (click "WHAT IS IT?" and then click "What is Stevia In The Raw®?").

[8] *Id.* (click "WHAT IS IT?" and then click "What is Stevia In The Raw®?").

[9] *Id.* (click "WHAT IS IT?" and then click "What is Stevia In The Raw®?").

stevia leaf extract.  Its high purity and wholesomeness make it the perfect zero-calorie complement to Sugar In The Raw® and Agave In The Raw®, the newest member of our 100% natural 'In The Raw' brand line of products.";[10]

e.    "Unlike some of our competitors, Stevia In The Raw® derives virtually all its sweetness from stevia leaf extract[.];"[11]

f.    "Dextrose is a natural carbohydrate derived from corn.  Many sugar substitutes in powder form contain dextrose because it is a natural ingredient and does not change the flavor of the sweetener in the blend.  In our packet product, dextrose is used to dilute the very potent stevia leaf extract to make it measurable for consumers; dextrose does not alter the naturally sweet flavor of the Stevia;"[12] and

g.    "Maltodextrin, like dextrose, is a natural carbohydrate derived from corn.  Many 'cup-for-cup' and other sugar substitutes in powder form contain maltodextrin because it is a natural ingredient that does not change the flavor of the sweetener in the blend."[13]

44.    Thus, Defendant's marketing and website confirm its intent in labeling the Products to create consumer belief that Stevia In The Raw® is "natural."

**C.    A reasonable consumer would not deem Stevia In The Raw® to be natural.**

45.    Defendant's linking of Stevia In The Raw® to the leaf of the stevia plant and to dextrose is false and misleading because the ingredients used to manufacture Stevia In The Raw® are not, in fact, natural.

46.    The primary ingredient in Stevia In The Raw® is either dextrose or maltodextrin,

---

[10] *Id.* (click "WHAT IS IT?" and then click "Why is the product called "In The Raw®").

[11] *Id.* (click "WHAT IS IT?" and then click "What makes Stevia In The Raw® different from other Stevia products?").

[12] *Id.* (click "WHAT IS IT?" and then click "What is dextrose and why is it added to Stevia In The Raw®?").

[13] *Id.* (click "WHAT IS IT?" and then click "What is maltodextrin and why is it added to the Stevia In The Raw® Baker's Bag?").

which are used to provide bulk for the tiny amount of "stevia leaf extract" that is needed to provide, for example, the sweetness of two teaspoons of sugar in the Stevia In The Raw® Packets.

47.     The manufacture of the "stevia leaf extract" and dextrose contained in Stevia In The Raw® requires multiple processing steps in an industrial environment, which transform the ingredients found in nature.  As the resulting substances are synthetic and highly processed, they cannot be described as "natural."

48.     Accordingly, Stevia In The Raw® is not "raw" stevia as indicated by the name "Stevia in the Raw®."

49.     Contrary to Defendant's representations, Stevia In The Raw® does not contain the leaf of the stevia plant in a natural form but instead contains rebaudioside A, a compound extracted from the stevia plant through a complex chemical process.

50.     Defendant chemically extracts Reb A from the stevia plant.  To extract the Reb A, Defendant uses complex, multi-step processes involving the application of toxic chemicals such as acetone, methanol, ethanol, and/or isopropanol.

51.     Thus, Stevia In The Raw® is not a "100% natural" product made from stevia leaf extract as claimed on the front of the packaging.  (Exs. A, B.)  Instead, Reb A only exists as a result of a chemical extraction process.

52.     Defendant states that the dextrose and maltodextrin used in Stevia In The Raw® are manufactured from corn.  (*See* ¶ 43, *supra*.)

53.     As of 2010, approximately 85% of the corn planted in the United States was grown from a genetically modified seed.  Due to this fact, dextrose and maltodextrin have been

listed as invisible genetically modified ingredients.[14]  Consequently, on information and belief, the bulk of Stevia In The Raw® is made from genetically modified organisms ("GMOs").

54.    According to many sources, including industry, government, and health organizations, GMOs are not natural because they are created artificially in a laboratory through genetic engineering (a/k/a "recombinant DNA technology" or "biotechnology").  For example:

a.    The Monsanto Company, the largest producer of GMOs, defines them as "[p]lants or animals that have had their genetic makeup altered to exhibit traits that are **_not naturally theirs_**."[15]

b.    The World Health Organization defines GMO as ". . . organisms in which the genetic material (DNA) has been altered in a way that **_does not occur naturally_**."[16]

c.    The Environmental Protection Agency (EPA) has defined "the difference between plant-incorporated protectants produced through genetic engineering and those produced through conventional breeding" as follows:  "**Conventional breeding** is a method in which genes for pesticidal traits are introduced into a plant through **_natural methods_**, such as cross-pollination . . . .  [In contrast,] **[g]enetically engineered** plant-incorporated protectants are created through a **_process that utilizes several different modern scientific techniques_** to introduce a specific pesticide-producing gene into a plant's DNA genetic material."[17]

d.    A 2010 poll by the Hartman Group found that a majority of consumers

---

[14] Institute for Responsible Technology: Non-GMO Shopping Guide, http://www.nongmoshoppingguide.com/brands/invisible-gm-ingredients.html (last visited Feb. 3, 2013).

[15] Monsanto | Glossary, http://www.monsanto.com/newsviews/Pages/glossary.aspx#gmo (last visited Feb. 3, 2014) (emphasis added).

[16] WHO | 20 questions on genetically modified foods, http://www.who.int/foodsafety/publications/biotech/20questions/en/ (last visited Feb. 3, 2014) (emphasis added).

[17] Environmental Protection Agency, _Questions & Answers: Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules_ (July 19, 2001), at 3, _available at_ http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf (emphasis added).

believed the term "natural" implied absence of GMOs.[18]

55.     A reasonable consumer would not believe a food containing mostly dextrose or maltodextrin and a miniscule amount of Reb A is natural.

56.     A reasonable consumer would not believe a food containing or derived from GMOs is natural.

**D.      Reasonable consumers purchase Stevia In The Raw® because they have been deceived to believe it is natural.**

57.     By claiming Stevia In The Raw® is "natural," Defendant deceives and misleads reasonable consumers.

58.     Defendant's packaging of Stevia In The Raw® unequivocally demonstrates its intent to persuade the consumer that Stevia In The Raw® is a "100% natural zero calorie sweetener" and is primarily derived from the stevia plant.

59.     As described in the preceding paragraphs, everything about the labeling of Stevia In The Raw® is calculated to create consumer belief that this is a natural product.

60.     For example, on the Product labeling and website, Defendant completely conceals the truth about the stevia extraction process.

61.     Similarly, Defendant conceals the fact that the dextrose and maltodextrin are derived from highly processed GMO corn, in part by stating that the dextrose and maltodextrin are "natural carbohydrate[s]."

62.     In fact, reasonable consumers, including Plaintiffs, purchased Stevia In The Raw® based upon the belief that it is a natural sweetener.  However, reasonable consumers

---

[18] Canada Organic Trade Association, *Consumer Confusion About the Difference: "Natural" and "Organic" Product Claims* (2010), at 6, *available at* http://www.pro-cert.org/docs/Library/White%20Paper%20Nat-Org%20COTA.pdf (last visited June 19, 2013).

would not deem Stevia In The Raw® natural if they knew that Stevia In The Raw® contained non-natural ingredients and was derived from GMOs and if they knew how Reb A, dextrose, and maltodextrin go through a rigorous manufacturing process for use in Stevia In The Raw®.

63.     As discussed above, Stevia In The Raw® is not natural.  Hence, Defendant's claims to the contrary are false and misleading.

**E.     Defendant's false representations have injured Plaintiffs and the Class members.**

64.     Defendant's false representations about the Products are material in that they induced Plaintiffs and the Class members to purchase the Products instead of less expensive sweeteners, such as sugar.  Plaintiffs and the other members of the Classes would not have purchased the Products at the price offered had they known the true facts about the Products.

65.     Plaintiffs and other members of the Classes will continue to suffer injury if Defendant's deceptive conduct is not enjoined.  To prevent future injury to Plaintiffs and the other members of the Classes, Defendant must change the Product labels to remove all deceptive and misleading statements or take such other actions as the Court deems just and proper.

66.     Defendant has profited enormously from its false and misleading marketing of the Products.  Plaintiffs and the Class members had less expensive sweeteners available but paid a premium for Defendant's Stevia in the Raw® based upon the belief that it is natural.  For example, Defendant currently sells Stevia in the Raw® Packets in St. Louis Park, Minnesota, in a box of 50 packets for \$3.65 (\$0.0041 per gram).[19]  Consumers can purchase a 4 pound bag of Crystal Sugar granulated sugar in St. Louis Park, Minnesota, for \$3.39 (\$0.0019 per gram), making the premium for Stevia in the Raw® Packets approximately 216% in comparison to

---

[19] 1/2 packet = 1 tsp of sugar.  (Ex. A.)  1 tsp = 9 grams.

Crystal Sugar granulated sugar.[20]  Similarly, consumers can purchase a 275 gram bag of Stevia

in the Raw® Bakers in St. Louis Park, Minnesota, for $8.99 ($0.327 per gram), making the

premium approximately 1721% in comparison to Crystal Sugar granulated sugar.  By promising

a natural sweetener, Defendant caused Plaintiffs and the Class members to pay a premium for

Stevia in the Raw® instead of purchasing other products.

## CLASS ALLEGATIONS

67.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a), (b)(2), and (b)(3).  Plaintiffs seek to represent the following Classes:

A.    The "New York Class," which consists of: All consumers who
purchased Stevia In the Raw® in the State of New York during the
applicable liability period for their personal use, rather than for
resale or distribution.  Excluded from the New York Class are
Defendant's current or former officers, directors, and employees;
counsel for Plaintiffs and Defendant; and the judicial officer to
whom this lawsuit is assigned.

B.    The "Minnesota Class," which consists of: All consumers within
the State of Minnesota who purchased Stevia In The Raw® during
the applicable liability period for their personal use, rather than for
resale or distribution. Excluded from the Minnesota Class are
Defendant's current or former officers, directors, and employees;
counsel for Plaintiffs and Defendant; and the judicial officer to
whom this lawsuit is assigned.

C.    The "Nationwide Class," which consists of: All consumers in the
United States and its territories who purchased Stevia In The
Raw® during the applicable liability period for their personal use,
rather than for resale or distribution.  Excluded from the
Nationwide Class are Defendant's current or former officers,
directors, and employees; counsel for Plaintiffs and Defendant; and
the judicial officer to whom this lawsuit is assigned.

68.    Each of the Classes satisfies the requirements of Federal Rule of Civil Procedure

---

[20] 1 lb = 1.81 kg

23 because:

A.  <u>Numerosity</u>: The members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of class members is presently unknown to Plaintiffs, based on Defendant's volume of sales, Plaintiffs estimate that each of the Classes numbers in the thousands.

B.  <u>Commonality</u>: There are questions of law and fact that are common to the Class members and that predominate over individual questions.  These include the following:

i.  Whether Defendant materially misrepresented to the Class members that Stevia In The Raw® is "natural";

ii.  Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

iii.  Whether Defendant's labeling, marketing, and sale of Stevia In The Raw® constitute deceptive acts and practices in violation of New York General Business Law section 349;

iv.  Whether Defendant's labeling, marketing, and sale of Stevia In The Raw® constitutes an unfair, unlawful, or fraudulent business practice;

v.  Whether Defendant's labeling, marketing, and sale of Stevia In The Raw® constitutes false advertising;

vi.  Whether Defendant's conduct described above constitutes a breach of warranty;

vii.  Whether Defendant's conduct injured consumers and, if so, the extent of the injury; and

viii.  The appropriate remedies for Defendant's conduct.

C.  <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the other Class members because Plaintiffs suffered the same injury as the other Class members—*i.e.*, Plaintiffs purchased the Products based on Defendant's misleading representations that the Products are natural.

D.    Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the members of each Class.  Plaintiffs do not have any interests that are adverse to those of the other class members.  Plaintiffs have retained competent counsel experienced in class action litigation and intend to prosecute this action vigorously.

E.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Since the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

69.    The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive or equitable relief with respect to each of the Classes as a whole.

## COUNT I

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 349
**(By Plaintiff Leslie Frohberg, on Behalf of Herself and the New York Class)**

70.    Plaintiff Leslie Frohberg incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

71.    Plaintiff Leslie Frohberg brings this claim on behalf of herself and on behalf of the New York Class, pursuant to New York General Business Law section 349 ("GBL 349").

72.    GBL 349 prohibits "deceptive acts or practices in the conduct of any business,

trade or commerce or in the furnishing of any service in [New York]."

73.     As fully alleged above, by advertising, marketing, distributing, and/or selling the Products with claims that they were "natural," and using the other representations identified in detail above, to Ms. Frohberg and the New York Class members, Defendant engaged in, and continues to engage in, deceptive acts and practices because the Products, in fact, are not natural, as alleged in detail above.

74.     Ms. Frohberg and the New York Class members seek to enjoin such unlawful, deceptive acts and practices described above.  Each of the New York Class members will be irreparably harmed unless the Court enjoins Defendant's unlawful, deceptive actions in that Defendant will continue to falsely and misleadingly advertise the Products as "natural."

75.     Ms. Frohberg and the New York Class members believed Defendant's representations that the Products they purchased were "natural."  Ms. Frohberg and the New York Class members would not have purchased the Products had they known the Products were not actually "natural," as alleged in detail above.

76.     Ms. Frohberg and the New York Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "natural." Ms. Frohberg and the New York Class members paid for "natural" Products, but did not receive such Products.

77.     The Products Ms. Frohberg and the New York Class members received were worth less than the Products for which they paid.  Ms. Frohberg and the New York Class members paid a premium price on account of Defendant's misrepresentations that the Products were "natural."

78.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes

deceptive acts and practices in violation of GBL 349, and Defendant is liable to Ms. Frohberg and the New York Class members for the actual damages that they have suffered as a result of Defendant's actions. The amount of such damages is to be determined at trial, but will not be less than $50.00. N.Y. Gen. Bus. Law § 349(h).

79. Ms. Frohberg and the New York Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under GBL 349.

80. THEREFORE, Plaintiff Frohberg prays for relief as set forth below.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 350
**(By Plaintiff Leslie Frohberg, on Behalf of Herself and the New York Class)**

81. Plaintiff Leslie Frohberg incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

82. Plaintiff Leslie Frohberg brings this claim on behalf of herself and on behalf of the New York Class, pursuant to New York General Business Law section 350 ("GBL 350").

83. GBL 350 makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York unlawful.

84. Under GBL 350, the term "false advertising" means, in relevant part, "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a(1).

85. As fully alleged above, by advertising, marketing, distributing, and/or selling the Products with claims that they were "natural," and using the other representations identified above, to Ms. Frohberg and the New York Class members, Defendant violated GBL 350 by

engaging in, and it continues to violate GBL 350 by continuing to engage in, false advertising concerning the composition of the Products, which are, in fact, not natural, as alleged in detail above.

86.    Ms. Frohberg and the New York Class members seek to enjoin such unlawful acts and practices as described above.  Each of the New York Class members will be irreparably harmed unless the Court enjoins Defendant's unlawful actions, in that Ms. Frohberg and the New York Class members will continue to be unable to rely on Defendant's representations that the Products are "natural."

87.    Ms. Frohberg and the New York Class members believed Defendant's representations that the Products were "natural."  Ms. Frohberg and the New York Class members would not have purchased the Products had they known the Products were not, in fact, "natural," as alleged in detail above.

88.     Ms. Frohberg and the New York Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "natural." Ms. Frohberg and the New York Class members paid for Products that were "natural," but did not receive such Products.

89.    The Products Ms. Frohberg and the New York Class members received were worth less than the Products for which they paid.  Ms. Frohberg and the New York Class members paid a premium price on account of Defendant's misrepresentations that the Products were "natural."

90.    Ms. Frohberg and the New York Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate its false and misleading

statements, and other relief allowable under GBL 350.

91.     THEREFORE, Plaintiff Frohberg prays for relief as set forth below.

## COUNT III

### VIOLATIONS OF MINNESOTA'S PREVENTION OF CONSUMER FRAUD ACT, MINN. STAT. § 325F.69
**(By Plaintiff Nancy Harding, on Behalf of Herself and the Minnesota Class)**

92.     Plaintiff Nancy Harding incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

93.     Plaintiff Nancy Harding brings this claim on behalf of herself and on behalf of the Minnesota Class, pursuant to Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69.

94.     Minnesota Statute section 325F.69, subdivision 1, makes it unlawful for any person to use "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

95.     Defendant's business practices, in advertising, marketing, and selling its Products as "natural," and using the other misrepresentations identified herein, constitute the use of fraud, false pretense, false promises, misrepresentations, misleading statements, and deceptive practices and, thus, constitute multiple, separate violations of Minnesota Statutes section 325F.69.

96.     By engaging in the conduct described herein, Defendant violated and continues to violate Minnesota Statutes section 325F.69, subdivision 1.

97.     Defendant's wrongful conduct and use of false pretenses, false promises, misrepresentations, and misleading statements, all with the intent that others relied on those statements, includes, by way of example and not by limitation:

a.     Defendant's fraudulent, misleading, and deceptive statements and practices relating to its Products;

b.     Defendant's warranty-related misconduct, including its fraudulent, deceptive, and unfair practice of misrepresenting its Products' characteristics;

c.     Defendant's concealment of the true characteristics of its Products; and

d.     Defendant's continued sale of its Products after it knew about the misleading representations.

98.     Defendant's omissions and misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decision or conduct of purchasers, including Plaintiff Harding and the other members of the Minnesota Class, regarding whether to purchase Defendant's Products.

99.     Had Plaintiff Harding and the other members of the Minnesota Class known that Defendant's Products were not natural, they would not have purchased the Products and/or paid a premium for the Products.

100.     Defendant fraudulently, negligently, recklessly, and/or intentionally concealed and/or failed to disclose the true characteristics of the Products for the purpose of inducing Plaintiff Harding and the other members of the Minnesota Class to rely thereon, and Plaintiff Harding and the other members of the Minnesota Class justifiably relied, to their detriment, upon the truth and completeness of Defendant's representations about its Products. Plaintiff Harding and the other members of the Minnesota Class relied on Defendant to disclose all material facts and not omit any material information regarding its Products. That Plaintiff Harding and the other members of the Minnesota Class were deceived is evidenced by the fact that Plaintiff Harding and the other members of the Minnesota Class purchased the Products. Had they known the truth, Plaintiff Harding and the other members of the Minnesota Class would not have bought

Defendant's Products.  Defendant's fraudulent and deceptive practice of advertising, marketing, and selling the Products repeatedly occurred in Defendant's trade or business and was capable of deceiving a substantial portion of the purchasing public.

101.    Where, as here, Plaintiff Harding's claims inure to the public benefit as Defendant has misrepresented the natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minnesota Statutes section 8.31, subdivision 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

102.    As a result of Defendant's fraud, false pretense, false promises, misrepresentations, misleading statements, and deceptive practices relating to the sale of its Products, Plaintiff Harding and the other members of the Minnesota Class have suffered actual damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known that the "natural" representations regarding the Products are false.

103.    Plaintiff Harding and the other members of the Minnesota Class will continue to suffer injury if Defendant's deceptive conduct is not enjoined, including but not limited to the purchase price of the Products and/or the premium paid for the Products.

104.    As a direct, proximate, and foreseeable result of Defendant's violation of the statute, Plaintiff Harding and the other members of the Minnesota Class sustained damages.

105.    THEREFORE, Plaintiff Harding prays for relief as set forth below.

## COUNT IV

## VIOLATIONS OF MINNESOTA'S UNLAWFUL TRADE PRACTICES ACT, MINN. STAT. § 325D.13
**(By Plaintiff Nancy Harding, on Behalf of Herself and the Minnesota Class)**

106.    Plaintiff Nancy Harding incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

107.    Plaintiff Nancy Harding brings this claim on behalf of herself and on behalf of the Minnesota Class, pursuant to Minnesota's Unlawful Trade Practices Act, Minn. Stat. § 325D.13.

108.    Minnesota Statutes section 325D.13 provides that "[n]o person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

109.    By engaging in the conduct described herein, Defendant violated and continues to violate Minnesota Statutes section 325D.13.

110.    Where, as here, Plaintiff Harding's claims inure to the public benefit as Defendant has misrepresented the natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minnesota Statutes section 8.31, subdivision 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

111.    Defendant's wrongful conduct and misrepresentation of the true qualities of its Products includes, by way of example and not by limitation:

      a.    Defendant's fraudulent, misleading, and deceptive statements and practices relating to the Products;

      b.    Defendant's warranty-related misconduct, including its fraudulent, deceptive, and unfair practice of misrepresenting its Products' characteristics;

c.      Defendant's concealment of the true characteristics of its Products; and

d.      Defendant's continued sale of its Products after it knew about the misleading representations.

112.    Defendant and its agents and distributors also misrepresented the true characteristics of Defendant's Products by making the various statements about the alleged quality and availability of the Products as stated above.

113.    As a result of Defendant's practices relating to misrepresentation of the true characteristics of the Products, Plaintiff Harding and the other Minnesota Class members have suffered actual damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known that the "natural" representations regarding the Products are false and misleading.

114.    As a direct, proximate and foreseeable result of Defendant's violation of the statute, Plaintiff Harding and the other Minnesota Class members sustained damages.

115.    THEREFORE, Plaintiff Harding prays for relief as set forth below.

## COUNT V

**VIOLATIONS OF MINNESOTA'S DECEPTIVE TRADE PRACTICES ACT,
MINN. STAT § 325D.44**
**(By Plaintiff Nancy Harding, on Behalf of Herself and the Minnesota Class)**

116.    Plaintiff Nancy Harding incorporates by reference and realleges all allegations as set forth in the preceding paragraphs.

117.    Plaintiff Nancy Harding brings this claim on behalf of herself and on behalf of the Minnesota Class, pursuant to Minnesota's Deceptive Trade Practices Act, Minn. Stat. § 325D.44.

118.    Minnesota Statutes section 325D.44, subdivision 1, provides, in part:

A person engages in deceptive trade practices when, in the course of business, vocation, or occupation, the person

. . .

    (5)   Represents that goods or services have…characteristics, ingredients, uses, benefits…that they do not have…

    (7)   Represents that goods or services are of a particular standard, quality, or grade,…if they are of another. . . .

    (13) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

119.    By engaging in the conduct described herein, Defendant violated and continues to violate Minnesota Statutes section 325D.44.

120.    Where, as here, Plaintiff Harding's claims inure to the public benefit as Defendant has misrepresented the natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minnesota Statutes section 8.31, subdivision 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

121.    Defendant's wrongful conduct and misrepresentation of the true characteristics, standards, quality and grade of the Products includes, by way of example and not by limitation:

    a.    Defendant's fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality and grade of its Products;

    b.    Defendant's fraud and misrepresentation of information about the characteristics of Defendant's Products, and the Defendant's knowledge of those misrepresentations, and

    c.    Defendant's concealment of the true characteristics of its Products.

122.    Defendant and its agents and distributors also misrepresented the true characteristics, standards, quality, and grade of the Products by making various statements about

Case 1:14-cv-00748-KAM-RLM   Document 1   Filed 02/03/14   Page 27 of 38 PageID #: 27

the alleged quality of the Products.

123.   As a result of the Defendant's practices relating to misrepresentation of the true characteristics, standards, quality, and grade of its Products, Plaintiff Harding and the other Minnesota Class members have suffered actual damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known that the "natural" representations regarding the Products are false.

124.   As a direct, proximate and foreseeable result of Defendant's violation of the statute, Plaintiff Harding and the other Minnesota Class members sustained damages.

125.   THEREFORE, Plaintiff Harding prays for relief as set forth below.

<u>**COUNT VI**</u>

<u>**VIOLATIONS OF MINNESOTA'S FALSE STATEMENT IN ADVERTISING ACT,**</u>
<u>**MINN. STAT. § 325F.67**</u>
**(By Plaintiff Nancy Harding, on Behalf of Herself and the Minnesota Class)**

126.   Plaintiff Nancy Harding incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

127.   Plaintiff Nancy Harding brings this claim on behalf of herself and on behalf of the Minnesota Class, pursuant to Minnesota's False Statement in Advertising Act, Minn. Stat. § 325F.67.

128.   Minnesota Statutes section 325F.67 provides, in part:

> Any person, firm, corporation, or association who, with intent to sell or in any way dispose of merchandise, . . . service, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, makes, publishes, disseminates, circulates, or place before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or places before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, in any other way, an advertisement of any

CLASS ACTION COMPLAINT
- 26 -

sort regarding merchandise, . . . service or anything so offered to the public for use, consumption, purchase, or sale, which advertising contains any material assertion, representation or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any other person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

129.    By engaging in the conduct described herein, Defendant violated and continues to violate Minnesota Statutes section 325F.67.

130.    Where, as here, Plaintiff Harding's claims inure to the public benefit as Defendant has misrepresented the natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minnesota Statutes section 8.31, subdivision 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

131.    Defendant's untrue, deceptive, and misleading assertions and representations about its Products include, by way of example and not by limitation:

    a.    Defendant's fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of Defendant's Products;

    b.    Defendant's fraud and misrepresentation of information about the characteristics of Defendant's Products and the Defendant's knowledge of those misrepresentations; and

    c.    Defendant's concealment of the true characteristics of the Products.

132.    Defendant and its agents and distributors also made untrue, deceptive, and misleading assertions and representations about its Products by making the various statements about the alleged characteristics of the Products referenced herein.

133.    As a result of the Defendant's untrue, deceptive, and misleading assertions and

representations about its Products, Plaintiff Harding and the other Minnesota Class members have suffered actual damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known that the "natural" representations regarding the Products are false.

134.    Plaintiff Harding and the Minnesota Class seek to enjoin Defendant from untrue, deceptive, and misleading assertions and representations about the Products.

135.    THEREFORE, Plaintiff Harding prays for relief as set forth below.

<u>COUNT VII</u>

<u>BREACH OF EXPRESS WARRANTY</u>
<u>UNDER THE LAWS OF VARIOUS STATES</u>
**(By Plaintiffs Leslie Frohberg and Nancy Harding, on Behalf of the Nationwide Class)**

136.    Plaintiffs Leslie Frohberg and Nancy Harding incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

137.    Plaintiffs Leslie Frohberg and Nancy Harding bring this claim on behalf of themselves and on behalf of the Nationwide Class, under the laws of the various states identified below prohibiting breaches of express warranties.

138.    Plaintiffs and the other Nationwide Class members formed a contract with Defendant at the time they purchased the Products.  As part of that contract, Defendant represented that the Products were "natural," as described above.  These representations constitute express warranties and became part of the basis of the bargain between Plaintiffs and the other Nationwide Class members, on the one hand, and Defendant, on the other.

139.    Defendant made the above-described representations to induce Plaintiffs and the other Nationwide Class members to purchase the Products, and Plaintiffs and the other Nationwide Class members did rely on the representations in purchasing the Products.

140.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the other Nationwide Class members.

141.    Defendant breached its express warranties about the Products because, as alleged in detail above, the Products are not natural.  Defendant breached the following state warranty laws:

A.    Alaska Stat. section 45.02.313;

B.    A.R.S. section 47-2313;

C.    A.C.A. section 4-2-313;

D.    Cal. Comm. Code section 2313;

E.    Colo. Rev. Stat. section 4-2-313;

F.    Conn. Gen. Stat. section 42a-2-313;

G.    6 Del. C. section 2-313;

H.    D.C. Code section 28:2-313;

I.    O.C.G.A. section 11-2-313;

J.    HRS section 490:2-313;

K.    Idaho Code section 28-2-313;

L.    810 ILCS 5/2-313;

M.    Ind. Code section 26-1-2-313;

N.    K.S.A. section 84-2-313;

O.    KRS section 355.2-313;

P.    11 M.R.S. section 2-313;

Q.    Mass. Gen. Laws Ann. ch. 106 section 2-313;

R.    Minn. Stat. section 336.2-313;

S.      Miss. Code Ann. section 75-2-313;

T.      R.S. Mo. Section 400.2-313;

U.      Mont. Code Anno. Section 30-2-313;

V.      Neb. Rev. Stat. section 2-313;

W.      Nev. Rev. Stat. Ann. section 104.2313;

X.      RSA 382-A:2-313;

Y.      N.J. Stat. Ann. section 12A:2-313;

Z.      N.M. Stat. Ann. section 55-2-313;

AA.     N.Y. U.C.C. Law section 2-313;

AB.     N.C. Gen. Stat. section 25-2-313;

AC.     N.D. Cent. Code section 41-02-30;

AD.     ORC Ann. section 1302.26;

AE.     12A Okl. St. section 2-313;

AF.     Or. Rev. Stat. section 72-3130;

AG.     13 Pa.C.S. section 2313;

AH.     R.I. Gen. Laws section 6A-2-313;

AI.     S.C. Code Ann. section 36-2-313;

AJ.     S.D. Codified Laws, section 57A-2-313;

AK.     Tenn. Code Ann. section 47-2-313;

AL.     Tex. Bus. & Com. Code section 2.313;

AM.     Utah Code Ann. section 70A-2-313;

AN.     9A V.S.A. section 2-313;

AO.     Va. Code Ann. section 59.1-504.2;

AP.    Wash. Rev. Code Ann. section 62A.2-313;

AQ.    W. Va. Code section 46-2-313;

AR.    Wyo. Stat. section 34.1-2-313.

142.    As a result of Defendant's breaches of express warranty, Plaintiffs and the other members of the Nationwide Class were damaged in the amount of the purchase price and/or the premium they paid for the Products, in amounts to be proved at trial.

143.    Within a reasonable time after she knew or should have known of such breach, Plaintiff Nancy Harding, on behalf of herself and all other members of the Nationwide Class (including Plaintiff Leslie Frohberg), placed Defendant on notice thereof.

144.    THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT VIII**

**UNJUST ENRICHMENT**
**(By Plaintiffs Leslie Frohberg and Nancy Harding,**
**On Behalf of Themselves and the Classes)**
**(In the Alternative)**

145.    Plaintiffs Leslie Frohberg and Nancy Harding incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

146.    Plaintiffs assert this claim in the alternative to the above-listed claims.

147.    By the acts and conduct described herein, Plaintiffs and the other members of the Classes conferred a benefit on Defendant by purchasing its Products, proceeds of which were retained by Defendant.

148.    By the acts and conduct described herein, Defendant knowingly accepted and retained the benefit of the money paid by Plaintiffs and the other members of the Classes.

149.    Defendant's retention of the money is inequitable and unjust for the reasons stated herein.

150.    THEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment as requested above against Defendant and further pray for:

A.      An order certifying the Classes proposed in this Complaint, appointing Plaintiffs and their counsel to represent the Classes, and requiring Defendant to bear the cost of class notice;

B.      Restitution and/or disgorgement of amounts paid by Plaintiffs and members of the Classes for the purchase of the Products, together with interest from the date of payment;

C.      Actual damages;

D.      An order granting injunctive relief requiring Defendant to stop making "natural" claims about the Products and requiring other appropriate disclosures and disclaimers on the labeling, distributing, marketing, and selling of the Products;

E.      Statutory prejudgment interest;

F.      Reasonable attorneys' fees and the costs of this action;

G.      Other legal and equitable relief under the causes of action state herein;

H.      A trial by jury on all issues so triable; and

I.      Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury with respect to all claims so triable.

Date:  February 3, 2014                    Respectfully submitted,

                                           **REESE RICHMAN LLP**


                                            */s/ Michael R. Reese*
                                           Michael R. Reese
                                           *mreese@reeserichman.com*
                                           Kim E. Richman
                                           *krichman@reeserichman.com*
                                           875 Avenue of the Americas, 18th Floor
                                           New York, New York  10001
                                           Telephone: (212) 643-0500
                                           Facsimile: (212) 253-4272

                                                 - and -

                                           **HALUNEN & ASSOCIATES**
                                           Clayton Halunen
                                           *halunen@halunenlaw.com*
                                           Susan M. Coler
                                           *coler@halunenlaw.com*
                                           Melissa W. Wolchansky
                                           *wolchansky@halunenlaw.com*
                                           1650 IDS Center
                                           80 South Eighth Street
                                           Minneapolis, Minnesota  55402
                                           Telephone: (612) 605-4098
                                           Facsimile: (612) 605-4099

# EXHIBIT A

*Frohberg et al. v. Cumberland Packing Corp.*
Class Action Complaint
United States District Court
Eastern District of New York





# EXHIBIT B

*Frohberg et al. v. Cumberland Packing Corp.*
Class Action Complaint
United States District Court
Eastern District of New York



