**REESE RICHMAN LLP**
Michael R. Reese
*mreese@reeserichman.com*
Kim E. Richman
*krichman@reeserichman.com*
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

- and -

**HALUNEN & ASSOCIATES**
Clayton Halunen
*halunen@halunenlaw.com*
Susan M. Coler
*coler@halunenlaw.com*
Melissa W. Wolchansky
*wolchansky@halunenlaw.com*
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Attorneys for Plaintiff and the Proposed Class*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LESLIE FROHBERG, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>CUMBERLAND PACKING CORP.,<br><br>     Defendant. | Case No. 1:14-cv-00748-KAM-RLM<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Leslie Frohberg ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following claims against Cumberland Packing Corp. ("Cumberland" or "Defendant"):

## SUMMARY OF THE ACTION

1.      This is a proposed class action brought on behalf of a "New York Class" and a "Nationwide Class" (each further defined below)[1] consisting of individuals who purchased Defendant's products labeled as "Stevia In The Raw® 100% Natural Zero Calorie Sweetener" (the "Products" or "Stevia In The Raw®," as defined below).  Defendant falsely represents that Stevia In The Raw® is natural, when, in fact, it contains non-natural ingredients.  This lawsuit seeks to enjoin Defendant's false and misleading practices and recover damages and restitution on behalf of the Classes under the applicable state laws.

2.      Stevia is a genus of plant native to South America.  It has been used as a sweetener for thousands of years but was first commercially available in the early 1970s.

3.      Defendant launched Stevia In The Raw® because "people are always looking for more natural options these days."[2]  With a "natural" marketing objective, Defendant's marketing campaign has the obvious intent of branding the product as "natural."

4.      Defendant manufactures, markets, and sells Stevia In The Raw® throughout New York and the United States and sells two varieties of Stevia In The Raw®: Stevia In The Raw® in sachet packet form ("Stevia In The Raw® Packets"); and Stevia In The Raw® Bakers Bag ("Stevia In The Raw® Bakers") (together, the "Products" or "Stevia In The Raw®").

---

[1] This Amended Complaint refers to the New York Class and the Nationwide Class, collectively, as the "Class" or "Classes."

[2] About Stevia In The Raw®, http://www.intheraw.com/about/ (last visited Feb. 3, 2014).

5.     Stevia In The Raw® Packets contain dextrose and stevia leaf extract.

6.     Stevia In The Raw® Bakers contains maltodextrin and stevia leaf extract.

7.     The Stevia In The Raw® Product labels emphasize that the sweetener is 100% natural and derived from the stevia plant.  Defendant places the statement "100% Natural Zero Calorie Sweetener" on the front panel of each of the Products and the statement "All Natural" on the back panel.  (*See* **Exhibit A** and **Exhibit B**, attached hereto and incorporated by reference herein.)

8.     However, to the detriment of consumers, including Plaintiff and the Class members, Defendant's Products contain non-natural ingredients, and, consequently, are not natural.

9.     The ingredients dextrose and maltodextrin—which are highly processed and, as a result, unnatural—constitute the bulk of the Products.

10.    Dextrose and maltodextrin are manufactured by chemically converting genetically modified corn into a food grade starch, which is then mixed with enzymes to create dextrose or maltodextrin.

11.    A reasonable consumer would not deem Stevia in the Raw® as natural if he/she knew that the Products contained highly processed ingredients and/or genetically modified organisms ("GMOs").

12.    Additionally, Defendant's representations about the Products are misleading and deceptive because Stevia In The Raw® contains only a miniscule amount of a substance that is extracted from the stevia leaf.  That substance is rebaudioside A ("Reb A").

13.    Reb A is a single steviol glycoside from the stevia plant that results from a multi-step process that requires the use of toxic chemicals. Those toxic chemicals rip a single glycoside

from the original organism. The resulting substance does not exist in nature, in any form, independent of the greater original organism. Defendant is chemically altering a plant, not washing it.

14. A reasonable consumer would not deem Stevia in the Raw® as natural if he/she knew that the stevia leaf extract is highly processed and/or synthetic.

15. Thus, Defendant's branding of Stevia In The Raw® as a natural sweetener is deceptive, misleading, and false. To label Stevia In The Raw® as "natural" creates consumer deception and confusion.

16. The purpose of this action is to enjoin Defendant from preying on consumers, such as Plaintiff and the Class members, through its deceptive marketing and labeling of Stevia In The Raw® as a natural sweetener and to recover the ill-gotten gains Defendant received as a result of its fraudulent conduct. Plaintiff seeks relief for Defendant's violations of New York General Business Law section 349; New York General Business Law section 350; breach of express warranty; negligent misrepresentation; common law fraud; and unjust enrichment.

## **PARTIES**

### **Plaintiff Leslie Frohberg**

17. Plaintiff Leslie Frohberg resides in the Bronx, New York.

18. For a few years, starting when the Products were first available in stores, Ms. Frohberg bought the following Products two (2) to three (3) times per month for her personal consumption:

- Stevia in the Raw® Packets
- Stevia in 7 ounce bags

from Stop & Shop in Co-op City, Bronx, New York, and Stop & Shop on East Sandford Boulevard in Mt. Vernon, New York.

19.     Ms. Frohberg made the above-referenced purchases in reliance on the representations on the Products' packaging that the Products were "natural."

20.     Ms. Frohberg would not consider a product containing non-natural and/or synthetic ingredients such as genetically modified organisms or highly processed ingredients to be natural.

21.     Ms. Frohberg would not have purchased the Products had she known they were not, in fact, natural.  If the representations on the Products were true, Ms. Frohberg would have continued purchasing the Products.

**Defendant Cumberland Packing Corp.**

22.     Defendant Cumberland Packing Corp. is a corporation organized under the laws of the State of New York, with its principal place of business at 2 Cumberland Street, Brooklyn, New York 11205.

23.     Cumberland manufactures sweeteners such as Sugar In The Raw® and Sweet'N Low®.

## JURISDICTION AND VENUE

24.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), by virtue of 28 U.S.C. § 1332(d)(2), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.  Plaintiff alleges there are at least 100 members in the proposed Classes, the total claims of the proposed Class members are well in excess of $5,000,000.00 in

the aggregate, exclusive of interests and costs, and members of the plaintiff Class are citizens of a State different from the State of citizenship of Defendant.

25.    This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: (i) Defendant is a corporation formed under the laws of New York with its principal place of business in New York, meaning Defendant has systematic and continuous contacts with New York, such that Defendant is "essentially at home" here; and (ii) Plaintiff's claims arise out of Defendant's conduct within New York.

26.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is organized under the laws of New York and maintains its principal place of business in Brooklyn, New York.

## SUBSTANTIVE ALLEGATIONS

**A.    Defendant deliberately labeled Stevia In The Raw® to create consumer belief that the Products are "natural."**

27.    Cumberland is an international producer and marketer of alternative sweeteners, including Sugar In The Raw®, Sweet'N Low®, and Stevia In The Raw®.

28.    Cumberland recognized there was a growing market for products that are natural.[3]

29.    To capitalize on this rising demand, Defendant labels and markets Stevia In The Raw® as a natural sweetener, thereby distinguishing it from other competing sweeteners. Indeed, since the inception of the Products, Defendant's marketing strategy has been to capture the "all-natural sweetening revolution."[4]

30.    Stevia In The Raw® is typically packaged and sold in boxes (of 50 grams or 100

---

[3] About Stevia In The Raw®, http://www.intheraw.com/about/.

[4] *Id.*

grams each) of multiple 1 gram packets (in the case of Stevia In The Raw® Packets) and in 9.7 ounce multi-serving bags (in the case of Stevia In The Raw® Bakers).

31.     The Stevia In The Raw® packaging includes graphics of a leaf as part of the word "Stevia" and uses green and brown colors that can be characterized as earth tones.  (*See* Ex. A.)

32.     The box for Stevia In The Raw® Packets prominently states that the Products are a "100% Natural Zero Calorie Sweetener."  (Ex. A.)

33.     The side label of the packaging for Stevia In The Raw® Packets explains, "Stevia is naturally sweeter than sugar. So, like many zero calorie sweeteners, it is blended with dextrose, a natural ingredient."  (*Id.*)

34.     The back of the box for Stevia In The Raw® Packets states, "[e]njoy your sweet moments naturally with Stevia In The Raw, a 100% natural, zero calorie sweetener and a part of the In The Raw™ family."  (*Id.*)  The back of the package further proclaims, "All Natural," "Naturally Gluten Free Food," and "Sweeten a tea, a cup of coffee, hot or cold.  Sprinkle it on cereal, douse a piece of fruit.  Cook and Bake with it too.  Whatever you do, just do it naturally with Stevia In The Raw."  (*Id.*)

35.     The front label for Stevia In The Raw® Bakers prominently states that it is a "100% Natural Zero Calorie Sweetener."  (*See* Ex. B.)  It also includes graphics of a leaf as part of the word "Stevia."  (*Id.*)  Above the name is the statement, "Stevia Blended with Natural Ingredients."  (*Id.*)

36.     The back label of the packaging for Stevia In The Raw® Bakers explains, "Stevia is naturally sweeter than sugar. So, like many zero calorie sweeteners, it is blended with maltodextrin, a natural ingredient."  (*Id.*)  The back label also states "All Natural" and "Naturally Gluten Free Food."  (*Id.*)  It further proclaims, "[e]njoy your sweet moments naturally with

Stevia In The Raw, a 100% natural, zero calorie sweetener and a part of the In The Raw®family."  Additionally it states, "So go on, Cut the calories in all your favorite recipes.  Whatever you do, just do it naturally with the In The Raw brand."  (*Id.*)

37.     Thus, Defendant designed the labeling of Stevia In The Raw® to create consumer belief that the Products are "natural."

**B.      Defendant's website confirms its intent to persuade consumers that Stevia In The Raw® is natural.**

38.     Defendant's marketing of the Products on the Stevia In The Raw® website, http://www.intheraw.com/products/stevia-in-the-raw, highlights the Products' alleged "natural" quality.  Defendant focuses heavily on the use of the stevia leaf to provide sweetness to the Products.

39.     The     home     page     of     the     Stevia     In     The     Raw®     website, http://www.intheraw.com/products/stevia-in-the-raw, includes the prominent representation "In The Raw®: Raw Natural Sweetness" and makes numerous representations to bolster Defendant's claims that Stevia In The Raw® is natural.  These representations include, but are not limited to, the following:[5]

    a.     "All Natural";

    b.     "Naturally Gluten Free";

    c.     "Enjoy your sweet moments naturally with Stevia In The Raw®, a 100% natural, zero-calorie* sweetener.";

    d.     "It's a natural extract from the sweet leaves of the stevia plant."; and

    e.     "So go on, sweeten a tea, hot or cold, sprinkle it on cereal.  Bake and cook

---

[5] Stevia In The Raw – 0 Calorie Natural Sweetener, http://www.intheraw.com/products/stevia-in-the-raw (last visited Feb. 3, 2014).

with it too. Whatever you do, just do it naturally with Stevia In The Raw®."

40. On a web page titled "Stevia In The Raw Frequently Asked Questions and Information," the Product website makes numerous representations, including but not limited to:[6]

    a.    "Stevia In The Raw is a natural, zero-calorie*, sweetener, which consists of stevia extract and a bulking agent (dextrose or maltodextrin). The stevia is extracted naturally from the sweetest part of the stevia plant leaf (stevia rebaudiana Bertoni);"[7]

    b.    "In our Packet Product, the pure stevia leaf extract is blended with dextrose, a natural carbohydrate derived from corn, to produce the 100% natural, zero calorie sweetener we call Stevia In The Raw®.";[8]

    c.    "In our cup-for-cup Bakers Bag product, pure stevia leaf extract is co-dried with maltodextrin, a natural carbohydrate derived from corn, to produce a 100% natural, zero-calorie sweetener . . . .";[9]

    d.    "Stevia In The Raw brand sweetener is a 100% natural product made from stevia leaf extract. Its high purity and wholesomeness make it the perfect zero-calorie complement to Sugar In The Raw® and Agave In The Raw®, the newest member of our 100% natural 'In The Raw' brand line of products.";[10]

    e.    "Unlike some of our competitors, Stevia In The Raw® derives virtually all its sweetness from stevia leaf extract[.];"[11]

    f.    "Dextrose is a natural carbohydrate derived from corn. Many sugar substitutes in powder form contain dextrose because it is a natural

---

[6] Stevia In The Raw Frequently Asked Questions and Information, http://www.intheraw.com/products/faqs/stevia-in-the-raw/ (last visited Feb. 3, 2014).

[7] *Id.* (click "WHAT IS IT?" and then click "What is Stevia In The Raw®?").

[8] *Id.* (click "WHAT IS IT?" and then click "What is Stevia In The Raw®?").

[9] *Id.* (click "WHAT IS IT?" and then click "What is Stevia In The Raw®?").

[10] *Id.* (click "WHAT IS IT?" and then click "Why is the product called "In The Raw®").

[11] *Id.* (click "WHAT IS IT?" and then click "What makes Stevia In The Raw® different from other Stevia products?").

ingredient and does not change the flavor of the sweetener in the blend. In our packet product, dextrose is used to dilute the very potent stevia leaf extract to make it measurable for consumers; dextrose does not alter the naturally sweet flavor of the Stevia;"[12] and

g.  "Maltodextrin, like dextrose, is a natural carbohydrate derived from corn. Many 'cup-for-cup' and other sugar substitutes in powder form contain maltodextrin because it is a natural ingredient that does not change the flavor of the sweetener in the blend."[13]

41.  Thus, Defendant's marketing and website confirm its intent in labeling the Products to create consumer belief that Stevia In The Raw® is "natural."

**C.  A reasonable consumer would not deem Stevia In The Raw® to be natural.**

42.  Defendant's linking of Stevia In The Raw® to the leaf of the stevia plant and to dextrose is false and misleading because the ingredients used to manufacture Stevia In The Raw® are not, in fact, natural.

43.  The primary ingredient in Stevia In The Raw® is either dextrose or maltodextrin, which are used to provide bulk for the tiny amount of "stevia leaf extract" that is needed to provide, for example, the sweetness of two teaspoons of sugar in the Stevia In The Raw® Packets.

44.  The manufacture of the "stevia leaf extract" and dextrose contained in Stevia In The Raw® requires multiple processing steps in an industrial environment, which transform the ingredients found in nature. As the resulting substances are synthetic and highly processed, they cannot be described as "natural."

45.  Accordingly, Stevia In The Raw® is not "raw" stevia as indicated by the name

---

[12] *Id.* (click "WHAT IS IT?" and then click "What is dextrose and why is it added to Stevia In The Raw®?").

[13] *Id.* (click "WHAT IS IT?" and then click "What is maltodextrin and why is it added to the Stevia In The Raw® Baker's Bag?").

"Stevia in the Raw®."

46. Contrary to Defendant's representations, Stevia In The Raw® does not contain the leaf of the stevia plant in a natural form but instead contains rebaudioside A, a compound extracted from the stevia plant through a complex chemical process.

47. There are at least 10 steviol glycosides in the stevia plant, they include rebaudioside A, B, C, D, and F, stevioside, steviolbioside, dulcoside A, and rubusoside. Rebaudioside-A is considered the sweetest and cleanest tasting of all the steviol glycosides. Reb A is chemically extracted from the stevia plant through a process that requires in excess of 40 steps, including dissolving the stevia in solvents or in carboxylic acid. This multi-step process involves the application of toxic chemicals such as acetone, methanol, ethanol, and/or isopropanol.

48. Thus, Stevia In The Raw® is not a "100% natural" product made from stevia leaf extract as claimed on the front of the packaging. (Exs. A, B.) Instead, Reb A only exists as a result of a chemical extraction process.

49. Defendant states that the dextrose and maltodextrin used in Stevia In The Raw® are manufactured from corn. (*See* ¶ 43, *supra*.)

50. As of 2010, approximately 85% of the corn planted in the United States was grown from a genetically modified seed. Due to this fact, dextrose and maltodextrin have been listed as invisible genetically modified ingredients.[14] Consequently, on information and belief, the bulking agent in Stevia In The Raw® is made from genetically modified organisms.

---

[14] Institute for Responsible Technology: Non-GMO Shopping Guide, http://www.nongmoshoppingguide.com/brands/invisible-gm-ingredients.html (last visited Feb. 3, 2013).

51. According to many sources, including industry, government, and health organizations, GMOs are not natural because they are created artificially in a laboratory through genetic engineering (a/k/a "recombinant DNA technology" or "biotechnology"). For example:

a. The Monsanto Company, the largest producer of GMOs, defines them as "[p]lants or animals that have had their genetic makeup altered to exhibit traits that are ***not naturally theirs***."[15]

b. The World Health Organization defines GMO as ". . . organisms in which the genetic material (DNA) has been altered in a way that ***does not occur naturally***."[16]

c. The Environmental Protection Agency (EPA) has defined "the difference between plant-incorporated protectants produced through genetic engineering and those produced through conventional breeding" as follows: "**Conventional breeding** is a method in which genes for pesticidal traits are introduced into a plant through ***natural methods***, such as cross-pollination . . . . [In contrast,] **[g]enetically engineered** plant-incorporated protectants are created through a ***process that utilizes several different modern scientific techniques*** to introduce a specific pesticide-producing gene into a plant's DNA genetic material."[17]

d. A 2010 poll by the Hartman Group found that a majority of consumers believed the term "natural" implied absence of GMOs.[18]

52. A reasonable consumer would not believe a food containing mostly dextrose or

[15] Monsanto | Glossary, http://www.monsanto.com/newsviews/Pages/glossary.aspx#gmo (last visited Feb. 3, 2014) (emphasis added).

[16] WHO | 20 questions on genetically modified foods, http://www.who.int/foodsafety/publications/biotech/20questions/en/ (last visited Feb. 3, 2014) (emphasis added).

[17] Environmental Protection Agency, *Questions & Answers: Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules* (July 19, 2001), at 3, *available at* http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf (emphasis added).

[18] Canada Organic Trade Association, *Consumer Confusion About the Difference: "Natural" and "Organic" Product Claims* (2010), at 6, *available at* http://www.pro-cert.org/docs/Library/White%20Paper%20Nat-Org%20COTA.pdf (last visited June 19, 2013).

maltodextrin and a miniscule amount of Reb A is natural.

53.     A reasonable consumer would not believe a food containing or derived from GMOs is natural.

**D.     Reasonable consumers purchase Stevia In The Raw® because they have been deceived to believe it is natural.**

54.     By claiming Stevia In The Raw® is "natural," Defendant deceives and misleads reasonable consumers.

55.     Defendant's packaging of Stevia In The Raw® unequivocally demonstrates its intent to persuade the consumer that Stevia In The Raw® is a "100% natural zero calorie sweetener" and is primarily derived from the stevia plant.

56.     As described in the preceding paragraphs, everything about the labeling of Stevia In The Raw® is calculated to create consumer belief that this is a natural product.

57.     For example, on the Product labeling and website, Defendant completely conceals the truth about the stevia extraction process.

58.     Similarly, Defendant conceals the fact that the dextrose and maltodextrin are derived from highly processed GMO corn, in part by stating that the dextrose and maltodextrin are "natural carbohydrate[s]."

59.     In fact, reasonable consumers, including Plaintiff, purchased Stevia In The Raw® based upon the belief that it is a natural sweetener. However, reasonable consumers would not deem Stevia In The Raw® natural if they knew that Stevia In The Raw® contained non-natural ingredients and was derived from GMOs and if they knew how Reb A, dextrose, and maltodextrin go through a rigorous manufacturing process for use in Stevia In The Raw®.

60.     As discussed above, Stevia In The Raw® is not natural. Hence, Defendant's claims to the contrary are false and misleading.

E.    **Defendant's false representations have injured Plaintiff and the Class members.**

61.    Defendant's false representations about the Products are material in that they induced Plaintiff and the Class members to purchase the Products instead of less expensive sweeteners, such as sugar.  Plaintiff and the other members of the Classes would not have purchased the Products at the price offered had they known the true facts about the Products.

62.    Plaintiff and other members of the Classes will continue to suffer injury if Defendant's deceptive conduct is not enjoined.  To prevent future injury to Plaintiff and the other members of the Classes, Defendant must change the Product labels to remove all deceptive and misleading statements or take such other actions as the Court deems just and proper.

63.    Defendant has profited enormously from its false and misleading marketing of the Products.  Plaintiff and the Class members had less expensive sweeteners available but paid a premium for Defendant's Stevia in the Raw® based upon the belief that it is natural.  For example, Defendant currently sells Stevia in the Raw® Packets in St. Louis Park, Minnesota, in a box of 50 packets for $3.65 ($0.0041 per gram).[19]  Consumers can purchase a 4 pound bag of Crystal Sugar granulated sugar in St. Louis Park, Minnesota, for $3.39 ($0.0019 per gram), making the premium for Stevia in the Raw® Packets approximately 216% in comparison to Crystal Sugar granulated sugar.[20]  Similarly, consumers can purchase a 275 gram bag of Stevia in the Raw® Bakers in St. Louis Park, Minnesota, for $8.99 ($0.327 per gram), making the premium approximately 1721% in comparison to Crystal Sugar granulated sugar.  By promising a natural sweetener, Defendant caused Plaintiff and the Class members to pay a premium for

---

[19] 1/2 packet = 1 tsp of sugar.  (Ex. A.)  1 tsp = 9 grams.

[20] 1 lb = 1.81 kg

Stevia in the Raw® instead of purchasing other products.

### F.    Rule 9(b) Allegations

64.    Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  As detailed in the paragraphs above, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

65.    WHO: Defendant Cumberland Packing Corp. made material misrepresentations and failed to disclose, or adequately disclose, material facts as detailed herein.  Except as identified herein, Plaintiff is unaware, and therefore unable to identify, the true names and identities of those individuals at Cumberland Packing Corp. who are responsible for such material misrepresentations and/or omissions.

66.    WHAT: Defendant made material misrepresentations regarding the "natural" quality of the Products.  Specifically, Defendant misrepresented that: (1) the Products are a "100% Natural Zero Calorie Sweetener;" (2) "Stevia is naturally sweeter than sugar. So, like many zero calorie sweeteners, it is blended with dextrose, a natural ingredient;" (3) "[e]njoy your sweet moments naturally with Stevia In The Raw, a 100% natural, zero calorie sweetener and a part of the In The Raw™ family;" (4) the Products are "All Natural;" (5) that the Products are "Naturally Gluten Free Food;" (6) "Stevia Blended with Natural Ingredients;" and (7) "Stevia is naturally sweeter than sugar. So, like many zero calorie sweeteners, it is blended with maltodextrin, a natural ingredient."  Each of these representations is false and misleading because the Products are not "natural" as they contain genetically modified organisms and highly processed Reb A.

67.    WHEN: Defendant made the material misrepresentations, omissions, and non-

disclosures detailed herein continuously during the applicable liability period.

68. WHERE: Defendant's material misrepresentations, omissions, and non-disclosures detailed herein were made, *inter alia*, on the packaging of the Products and on Defendant's website.

69. HOW: Defendant made numerous, written material misrepresentations on the packaging of the Products and on its website that were designed to, and in fact did, mislead Plaintiff and Class members into purchasing the Products.

70. WHY: Defendant engaged in the material misrepresentations, omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and pay a price premium for the Products based on the belief that the Products were "natural." Defendant profited by selling its product to thousands of unsuspecting consumers.

## CLASS ALLEGATIONS

71. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3). Plaintiff seeks to represent the following Classes:

    A.    The "New York Class," which consists of: All consumers who purchased Stevia In the Raw® in the State of New York during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the New York Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

    B.    The "Nationwide Class," which consists of: All consumers in the United States and its territories who purchased Stevia In The Raw® during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Nationwide Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

72. Each of the Classes satisfies the requirements of Federal Rule of Civil Procedure 23 because:

A. <u>Numerosity</u>: The members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to Plaintiff, based on Defendant's volume of sales, Plaintiff estimates that each of the Classes numbers in the thousands.

B. <u>Commonality</u>: There are questions of law and fact that are common to the Class members and that predominate over individual questions. These include the following:

    i. Whether Defendant materially misrepresented to the Class members that Stevia In The Raw® is "natural";

    ii. Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

    iii. Whether Defendant's labeling, marketing, and sale of Stevia In The Raw® constitute deceptive acts and practices in violation of New York General Business Law section 349;

    iv. Whether Defendant's labeling, marketing, and sale of Stevia In The Raw® constitutes false advertising;

    v. Whether Defendant's conduct described above constitutes a breach of warranty;

    vi. Whether Defendant's conduct injured consumers and, if so, the extent of the injury; and

    vii. The appropriate remedies for Defendant's conduct.

C. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other Class members because Plaintiff suffered the same injury as the other Class members—*i.e.*, Plaintiff purchased the Products based on Defendant's misleading representations that the Products are natural.

D. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the

interests of the members of each Class. Plaintiff does not have any interests that are adverse to those of the other class members. Plaintiff has retained competent counsel experienced in class action litigation and intend to prosecute this action vigorously.

E.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

73.    The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive or equitable relief with respect to each of the Classes as a whole.

## COUNT I

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 349
**(By Plaintiff Leslie Frohberg, on Behalf of Herself and the New York Class)**

74.    Plaintiff Leslie Frohberg incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

75.    Plaintiff brings this claim on behalf of herself and on behalf of the New York Class, pursuant to New York General Business Law section 349 ("GBL 349").

76.    GBL 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

77. As fully alleged above, by advertising, marketing, distributing, and/or selling the Products with claims that they were "natural," and using the other representations identified in detail above, to Plaintiff and the New York Class members, Defendant engaged in, and continues to engage in, deceptive acts and practices because the Products, in fact, are not natural, as alleged in detail above.

78. Plaintiff and the New York Class members seek to enjoin such unlawful, deceptive acts and practices described above. Each of the New York Class members will be irreparably harmed unless the Court enjoins Defendant's unlawful, deceptive actions in that Defendant will continue to falsely and misleadingly advertise the Products as "natural."

79. Plaintiff and the New York Class members believed Defendant's representations that the Products they purchased were "natural." Plaintiff and the New York Class members would not have purchased the Products had they known the Products were not actually "natural," as alleged in detail above.

80. Plaintiff and the New York Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "natural." Plaintiff and the New York Class members paid for "natural" Products, but did not receive such Products.

81. The Products Plaintiff and the New York Class members received were worth less than the Products for which they paid. Plaintiff and the New York Class members paid a premium price on account of Defendant's misrepresentations that the Products were "natural."

82. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of GBL 349, and Defendant is liable to Plaintiff and the New York Class members for the actual damages that they have suffered as a result of Defendant's actions. The amount of such damages is to be determined at trial, but will not be

less than $50.00. N.Y. Gen. Bus. Law § 349(h).

83.     Plaintiff and the New York Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under GBL 349.

84.     THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 350
**(By Plaintiff Leslie Frohberg, on Behalf of Herself and the New York Class)**

85.     Plaintiff Leslie Frohberg incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

86.     Plaintiff brings this claim on behalf of herself and on behalf of the New York Class, pursuant to New York General Business Law section 350 ("GBL 350").

87.     GBL 350 makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York unlawful.

88.     Under GBL 350, the term "false advertising" means, in relevant part, "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a(1).

89.     As fully alleged above, by advertising, marketing, distributing, and/or selling the Products with claims that they were "natural," and using the other representations identified above, to Plaintiff and the New York Class members, Defendant violated GBL 350 by engaging in, and it continues to violate GBL 350 by continuing to engage in, false advertising concerning the composition of the Products, which are, in fact, not natural, as alleged in detail above.

90.     Plaintiff and the New York Class members seek to enjoin such unlawful acts and

practices as described above. Each of the New York Class members will be irreparably harmed unless the Court enjoins Defendant's unlawful actions, in that Plaintiff and the New York Class members will continue to be unable to rely on Defendant's representations that the Products are "natural."

91. Plaintiff and the New York Class members believed Defendant's representations that the Products were "natural." Plaintiff and the New York Class members would not have purchased the Products had they known the Products were not, in fact, "natural," as alleged in detail above.

92. Plaintiff and the New York Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "natural." Plaintiff and the New York Class members paid for Products that were "natural," but did not receive such Products.

93. The Products Plaintiff and the New York Class members received were worth less than the Products for which they paid. Plaintiff and the New York Class members paid a premium price on account of Defendant's misrepresentations that the Products were "natural."

94. Plaintiff and the New York Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under GBL 350.

95. THEREFORE, Plaintiff prays for relief as set forth below.

<u>**COUNT III**</u>

<u>**BREACH OF EXPRESS WARRANTY**
**UNDER THE LAWS OF VARIOUS STATES**</u>
**(By Plaintiff Leslie Frohberg, on Behalf of the Nationwide Class)**

96.     Plaintiff Leslie Frohberg incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

97.     Plaintiff brings this claim on behalf of herself and on behalf of the Nationwide Class, under the laws of the various states identified below prohibiting breaches of express warranties.

98.     Plaintiff and the other Nationwide Class members formed a contract with Defendant at the time they purchased the Products.   As part of that contract, Defendant represented that the Products were "natural," as described above.   These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the other Nationwide Class members, on the one hand, and Defendant, on the other.

99.     Defendant made the above-described representations to induce Plaintiff and the other Nationwide Class members to purchase the Products, and Plaintiff and the other Nationwide Class members did rely on the representations in purchasing the Products.

100.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the other Nationwide Class members.

101.    Defendant breached its express warranties about the Products because, as alleged in detail above, the Products are not natural.   Defendant breached the following state warranty laws:

        A.        Alaska Stat. section 45.02.313;

        B.        A.R.S. section 47-2313;

C.      A.C.A. section 4-2-313;

D.      Cal. Comm. Code section 2313;

E.      Colo. Rev. Stat. section 4-2-313;

F.      Conn. Gen. Stat. section 42a-2-313;

G.      6 Del. C. section 2-313;

H.      D.C. Code section 28:2-313;

I.      O.C.G.A. section 11-2-313;

J.      HRS section 490:2-313;

K.      Idaho Code section 28-2-313;

L.      810 ILCS 5/2-313;

M.      Ind. Code section 26-1-2-313;

N.      K.S.A. section 84-2-313;

O.      KRS section 355.2-313;

P.      11 M.R.S. section 2-313;

Q.      Mass. Gen. Laws Ann. ch. 106 section 2-313;

R.      Minn. Stat. section 336.2-313;

S.      Miss. Code Ann. section 75-2-313;

T.      R.S. Mo. Section 400.2-313;

U.      Mont. Code Anno. Section 30-2-313;

V.      Neb. Rev. Stat. section 2-313;

W.      Nev. Rev. Stat. Ann. section 104.2313;

X.      RSA 382-A:2-313;

Y.      N.J. Stat. Ann. section 12A:2-313;

Z.      N.M. Stat. Ann. section 55-2-313;

AA.     N.Y. U.C.C. Law section 2-313;

AB.     N.C. Gen. Stat. section 25-2-313;

AC.     N.D. Cent. Code section 41-02-30;

AD.     ORC Ann. section 1302.26;

AE.     12A Okl. St. section 2-313;

AF.     Or. Rev. Stat. section 72-3130;

AG.     13 Pa.C.S. section 2313;

AH.     R.I. Gen. Laws section 6A-2-313;

AI.     S.C. Code Ann. section 36-2-313;

AJ.     S.D. Codified Laws, section 57A-2-313;

AK.     Tenn. Code Ann. section 47-2-313;

AL.     Tex. Bus. & Com. Code section 2.313;

AM.     Utah Code Ann. section 70A-2-313;

AN.     9A V.S.A. section 2-313;

AO.     Va. Code Ann. section 59.1-504.2;

AP.     Wash. Rev. Code Ann. section 62A.2-313;

AQ.     W. Va. Code section 46-2-313;

AR.     Wyo. Stat. section 34.1-2-313.

102.    As a result of Defendant's breaches of express warranty, Plaintiff and the other members of the Nationwide Class were damaged in the amount of the purchase price and/or the premium they paid for the Products, in amounts to be proved at trial.

103.    Within a reasonable time after she knew or should have known of such breach,

Plaintiff, on behalf of herself and all other members of the Nationwide Class, placed Defendant on notice thereof.

104.     THEREFORE, Plaintiff prays for relief as set forth below.

<u>**COUNT IV**</u>

<u>**NEGLIGENT MISREPRESENTATION**</u>
<u>**UNDER NEW YORK COMMON LAW**</u>
**(By Plaintiff Leslie Frohberg, on Behalf of the Nationwide Class)**

105.     Plaintiff Leslie Frohberg incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

106.     As discussed above, Defendant represented that the Products were "natural".

107.     At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

108.     At a minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Products.

109.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and the Nationwide Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiff and Nationwide Class members to purchase the Products.

110.     Plaintiff and Nationwide Class members would not have purchased the Products, at the price they did, if the true fact had been known.

111.     The negligent actions of Defendant caused damage to Plaintiff and the Nationwide Class members, who are entitled to damages and other legal and equitable relief as a result.

112.     THEREFORE, Plaintiff prays for relief as set forth below.

**COUNT V**

**FRAUD**
**UNDER NEW YORK COMMON LAW**
**(By Plaintiff Leslie Frohberg, on Behalf of the Nationwide Class)**

113.　Plaintiff Leslie Frohberg incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

114.　As discussed above, Defendant provided Plaintiff and the Nationwide Class members with false or misleading material information and failed to disclose material facts about the Products, including but not limited to the claims regarding the "natural" quality. These misrepresentations and omissions were made with knowledge of their falsehood.

115.　The misrepresentations and omissions made by Defendant, upon which Plaintiff the Nationwide Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiff and the Nationwide Class members to purchase the Products.

116.　The fraudulent actions of Defendants caused damage to Plaintiff and the Nationwide Class members, who are entitled to damages and other legal and equitable relief as a result.

117.　THEREFORE, Plaintiff prays for relief as set forth below.

**COUNT VI**

**UNJUST ENRICHMENT**
**(By Plaintiff Leslie Frohberg, on Behalf of the Nationwide Class)**
**(In the Alternative)**

118.　Plaintiff Leslie Frohberg incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

119.　Plaintiff asserts this claim in the alternative to the above-listed claims.

120.　By the acts and conduct described herein, Plaintiff and the other members of the

Classes conferred a benefit on Defendant by purchasing its Products, proceeds of which were retained by Defendant.

121.    By the acts and conduct described herein, Defendant knowingly accepted and retained the benefit of the money paid by Plaintiff and the other members of the Classes.

122.    Defendant's retention of the money is inequitable and unjust for the reasons stated herein.

123.    THEREFORE, Plaintiff prays for relief as set forth below.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and all others similarly situated, prays for judgment as requested above against Defendant and further prays for:

A.    An order certifying the Classes proposed in this Complaint, appointing Plaintiff and her counsel to represent the Classes, and requiring Defendant to bear the cost of class notice;

B.    Restitution and/or disgorgement of amounts paid by Plaintiff and members of the Classes for the purchase of the Products, together with interest from the date of payment;

C.    Actual damages;

D.    An order granting injunctive relief requiring Defendant to stop making "natural" claims about the Products and requiring other appropriate disclosures and disclaimers on the labeling, distributing, marketing, and selling of the Products;

E.    Statutory prejudgment interest;

F.    Reasonable attorneys' fees and the costs of this action;

G.    Other legal and equitable relief under the causes of action state herein;

H.    A trial by jury on all issues so triable; and

I.    Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury with respect to all claims so triable.


Date: June 23, 2014                     Respectfully submitted,

                                        **REESE RICHMAN LLP**

                                         _/s/ Michael R. Reese_
                                        Michael R. Reese
                                        *mreese@reeserichman.com*
                                        Kim E. Richman
                                        *krichman@reeserichman.com*
                                        875 Avenue of the Americas, 18th Floor
                                        New York, New York  10001
                                        Telephone: (212) 643-0500
                                        Facsimile: (212) 253-4272

                                                - and -

                                        **HALUNEN & ASSOCIATES**
                                        Clayton Halunen
                                        *halunen@halunenlaw.com*
                                        Melissa W. Wolchansky
                                        *wolchansky@halunenlaw.com*
                                        Susan M. Coler
                                        *coler@halunenlaw.com*
                                        1650 IDS Center
                                        80 South Eighth Street
                                        Minneapolis, Minnesota  55402
                                        Telephone: (612) 605-4098
                                        Facsimile: (612) 605-4099

# EXHIBIT A

*Frohberg et al. v. Cumberland Packing Corp.*
Amended Class Action Complaint
United States District Court
Eastern District of New York





# EXHIBIT B

*Frohberg et al. v. Cumberland Packing Corp.*
Amended Class Action Complaint
United States District Court
Eastern District of New York



