EXECUTION VERSION

# CLASS ACTION SETTLEMENT AGREEMENT

**LESLIE FROHBERG, et al.**

**vs.**

**CUMBERLAND PACKING CORP.**

**Court File No. 14-00748-KAM-RLM**

# **TABLE OF CONTENTS**

TABLE OF EXHIBITS ........................................................................................................ iii

CLASS ACTION SETTLEMENT AGREEMENT.............................................................1

I.      RECITALS .................................................................................................................1

II.     DEFINITIONS............................................................................................................6

III.    CERTIFICATION OF THE SETTLEMENT CLASS AND PRELIMINARY
        APPROVAL ..............................................................................................................13

IV.     SETTLEMENT CONSIDERATION ......................................................................14

        4.1     Payments by Cumberland ............................................................................14
        4.2     Additional Benefits ......................................................................................15
        4.3     Administration ..............................................................................................15
        4.4     Eligibility and Process for Obtaining a Cash Payment.................................16
        4.5     Submission of Claims to the Class Action Settlement Administrator ..................20
        4.6     Claim Form Review......................................................................................20
        4.7     Payment of Claims .......................................................................................22

V.      NOTICE TO CLASS AND ADMINISTRATION OF PROPOSED
        SETTLEMENT ........................................................................................................23

        5.1     Duties and Responsibilities of the Settlement Administrator .................................23

VI.     OBJECTIONS AND REQUESTS FOR EXCLUSION .........................................29

VII.    RELEASES................................................................................................................33

VIII.   ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE
        INCENTIVE AWARDS ..........................................................................................35

IX.     NO ADMISSION OF LIABILITY..........................................................................36

X.      ADDITIONAL PROVISIONS .................................................................................37

EXECUTION VERSION

## **TABLE OF EXHIBITS**

Exhibit A:    Claim Form

Exhibit B:    Class Notice or Long Form Notice

Exhibit C:    Notice Plan

Exhibit D:    Summary Class Notice or Short Form Notice

Exhibit E:    Escrow Agreement

EXECUTION VERSION

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

This 9th day of October, 2015, Plaintiffs Leslie Frohberg and Nancy Harding, individually and on behalf of the Settlement Class Members, and Defendant Cumberland Packing Corp. hereby enter into this Class Action Settlement Agreement ("Agreement"). The Parties intend this Agreement to fully, finally, and forever resolve, discharge, and settle all claims and potential claims of any class members that relate to or arise from the allegations in the Complaints in this case and/or any labeling, advertising or marketing of Stevia In The Raw.

## I.    RECITALS

1.1    On July 8, 2013, Plaintiffs' Counsel sent a letter and draft complaint to Cumberland on behalf of Plaintiff Nancy Harding. The letter and draft complaint alleged Cumberland represented that the Stevia in the Raw Consumer Products were "natural" through labeling, marketing, and advertising and that the Stevia in the Raw Consumer Products were not, in fact, natural because they contained non-natural and/or synthetic ingredients. The letter and draft complaint alleged the stevia leaf extract within the Stevia in the Raw Consumer Products was so highly processed that no reasonable consumer would deem it natural and that the dextrose and maltodextrin in the Stevia in the Raw Products were highly processed and derived from genetically modified corn, neither of which reasonable consumers would deem to be natural. The letter and draft complaint set out claims against Cumberland for violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*, Unlawful Trade Practices Act, Minn. Stat. § 325D.09 *et seq.*, Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*, and False Statement in Advertisement Act, Minn. Stat. § 325F.67, breach of express warranty under the laws of 44 states, and unjust enrichment, on behalf of Ms. Harding and putative Minnesota and nationwide classes of similarly situated consumers.

1.2     Plaintiffs Leslie Frohberg and Nancy Harding originally filed the Action in the United States District Court for the Eastern District of New York on February 3, 2014, challenging the labeling, marketing, and advertising of Cumberland's Stevia in the Raw Consumer Products. The original complaint alleged Cumberland falsely and deceptively represented the Stevia in the Raw Consumer Products as "natural" when they, in fact, contained non-natural ingredients. The original complaint alleged that the ingredients dextrose and maltodextrin were highly processed and contained genetically modified ingredients and, as a result, were unnatural, and that these ingredients constituted the bulk of the Stevia in the Raw Consumer Products. The original complaint also alleged the stevia leaf extract in the Stevia in the Raw Consumer Products was highly processed and/or synthetic. Plaintiffs brought claims on behalf of New York, Minnesota, and nationwide classes for violation of sections 349 and 350 of New York's Consumer Protection for Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 349 *et seq.*, violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*, Unlawful Trade Practices Act, Minn. Stat. § 325D.09 *et seq.*, Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*, and False Statement in Advertisement Act, Minn. Stat. § 325F.67, breach of express warranty under the laws of 44 states, and unjust enrichment.

1.3     Cumberland and Plaintiff's Counsel mediated the claims in Plaintiff's Complaint on December 11, 2013, before David Geronemus, Esquire, of JAMS, in New York, York. As part of the mediation process, Plaintiffs' Counsel obtained information and documents from Cumberland through confidential, pre-mediation discovery, including information concerning marketing, label design, product formulation, and sales information for the Stevia in the Raw Consumer Products. The Parties reached an impasse in their negotiations and did not settle the Action at this time.

1.4     From December 2013 through May 2014, Cumberland and Plaintiffs' Counsel continued hard-fought negotiations for a settlement agreement with an in-person meeting, phone conferences, written exchanges of information, and additional informal discovery.

1.5     On June 13, 2014, the Parties attended a settlement conference with Magistrate Judge Roanne L. Mann.  The Court made a settlement proposal to the Parties, which was not accepted by the Court's deadline of June 16, 2014.

1.6     Plaintiff Nancy Harding voluntarily dismissed her claims in the Action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) on June 23, 2014. (Notice Voluntary Dismissal Pl. Harding, ECF No. 22.)

1.7     Plaintiff Leslie Frohberg filed an Amended Complaint on June 23, 2014. (Am. Compl., ECF No. 23.) The Amended Complaint made allegations similar to the original Complaint, and alleged violations of sections 349 and 350 of New York's Consumer Protection for Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 349 *et seq.*, breach of express warranty under the laws of 44 states, negligent misrepresentation, fraud, and unjust enrichment. Plaintiff seeks injunctive and monetary relief on behalf of herself and the putative classes.

1.8     The Parties continued discussing possible resolution of this matter, while litigating the merits of the claims. A fully briefed Motion to Dismiss the Amended Complaint was filed with the Court on December 17, 2014.  As a result of continued settlement discussions, the Parties requested a stay on the ruling of the Motion to Dismiss on June 18, 2015.

1.9     After approximately one-and-a-half years of hard-fought negotiations, the Parties were able to reach this Settlement.

1.10    In response to this Action, Cumberland has removed the natural claim from the packaging and labeling of its Stevia In The Raw Products.

1.11    In accordance with this Settlement Agreement, Plaintiffs will file a Second Amended Complaint on behalf of New York, Minnesota, and nationwide classes for violation of sections 349 and 350 of New York's Consumer Protection for Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 349 *et seq.*, violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*, Unlawful Trade Practices Act, Minn. Stat. § 325D.09 *et seq.*, Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*, and False Statement in Advertisement Act, Minn. Stat. § 325F.67, breach of express warranty under the laws of 44 states, and unjust enrichment.

1.12    Before entering into this Settlement Agreement, Plaintiff's Counsel conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the claims, potential claims, and potential defenses asserted in the Action. As part of that investigation, Plaintiff's Counsel obtained pre-mediation discovery, including information concerning marketing, label design, product formulation, and sales information for the Stevia in the Raw Consumer Products and obtained significant information in discovery regarding Cumberland's marketing of the Products.

1.13    The Action has not been certified as a class action. Subject to the approval of the Court, the Parties agree that a class may be conditionally certified for purposes of this Settlement. Cumberland agrees to class action treatment of the claims alleged in the Action solely for the purpose of compromising and settling those claims on a class basis as set forth herein.

1.14    Plaintiffs, as proposed Settlement Class representatives, believe the claims settled herein have merit. Plaintiffs and Class Counsel recognize, however, the litigation risk involved, including the expense and length of continued proceedings necessary to prosecute the claims

through trial and any appeals, and they have taken into account those factors, as well as the litigation's inherent difficulties and delays. They believe the Settlement confers substantial benefits upon the Settlement Class Members. They have evaluated the Settlement and have determined it is fair, reasonable, adequate to resolve Plaintiffs' grievances and is in the best interest of the Settlement Class Members.

1.15   Cumberland has denied, and continues to deny, that its marketing, advertising, and/or labeling of the Stevia in the Raw Consumer Products is false, deceptive, or misleading to consumers or violates any legal requirement. Cumberland's willingness to resolve the Action on the terms and conditions embodied in this Agreement is based on, *inter alia*: (i) the time and expense associated with litigating this Action through trial and any appeals; (ii) the benefits of resolving the Action, including limiting further expense, inconvenience, and distraction, disposing of burdensome litigation, and permitting Cumberland to conduct its business unhampered by the distractions of continued litigation; and (iii) the uncertainty and risk inherent in any litigation, regardless of legal merit.

1.16   This Agreement and any negotiations, proceedings, or documents related to this Agreement, its implementation, or its judicial approval cannot be asserted or used by any person to support a contention that class certification is proper or that liability does or does not exist, or for any other reason, in the Action or in any other proceedings, provided, however, that Settlement Class Members, Class Counsel, Cumberland, other related persons, and any person or entity that is a beneficiary of the Releases set forth in Section VII below, may reference and file this Agreement and any resulting Order and Final Judgment with the Court or any other tribunal or proceeding in connection with the implementation or enforcement of the Agreement's terms (including but not limited to the releases granted herein or any dispute related hereto).

**THEREFORE**, in consideration of the mutual promises and covenants contained herein and of the releases and dismissals of the claims described below, the Parties agree to this Settlement, subject to the final approval of the Court, upon the following terms and conditions set forth in this Class Action Settlement Agreement.

## II.    DEFINITIONS

2.1    "Action" means the above-captioned lawsuit, which is styled *Frohberg v. Cumberland Packing Corp.*, No. 1:14-cv-00748-KAM-RLM (E.D.N.Y.).

2.2    "Agreement" or "Settlement Agreement" means this Class Action Settlement Agreement and the exhibits attached hereto or incorporated herein, including any subsequent amendments to which the Parties agree and any exhibits to such amendments.

2.3    "Attorneys' Fees and Expenses" means the funds the Court may award Class Counsel to compensate Class Counsel for the fees and expenses they have incurred, or will incur, in connection with the Action and the Settlement, as detailed in Section VIII of this Agreement. "Attorneys' Fees and Expenses" does not include any costs or expenses associated with the Class Notice or administration of the Settlement.

2.4    "Claim" means one of the Claims. (*See infra* ¶ 2.8.)

2.5    "Claim Form" means the document Claimants will submit when seeking payment pursuant to Paragraph 4.2 of this Class Action Settlement Agreement. The Claim Form will accompany the mailed Class Notice and will be available online at the Settlement Website, substantially in the form of Exhibit A to this Class Action Settlement Agreement.

2.6    "Claim Period" means the time period during which Settlement Class Members may submit a Claim Form to the Settlement Administrator for review. The Claim Period shall run for the period of time that the Court will order and shall last at least 60 days after the date of

Final Approval.

2.7    "Claimant" means a Settlement Class Member who submits a claim for payment as detailed in Paragraph 4.2 of this Class Action Settlement Agreement.

2.8    "Claims" means claims for payment as detailed in Paragraph 4.2 of this Class Action Settlement Agreement.

2.9    "Class Action Settlement Administrator" means Dahl Administration, LLC, which is the company that Class Counsel and Cumberland's Counsel have jointly selected, and that the Court shall approve, to provide Class Notice and to administer the Claims process.

2.10    "Class Counsel" means Reese LLP and Halunen Law. Reese LLP's office is at 100 West 93rd Street, 16th Floor, New York, New York 10025. Halunen Law's office is at 1650 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402.

2.11    "Class Notice" means the legal notice of the proposed Settlement terms to be provided to potential members of the Settlement Class pursuant to Paragraph 5.1 below. The Class Notice shall not be disseminated unless Class Counsel, Cumberland's Counsel, and the Court all approve the Class Notice. The Class Notice shall be substantially in the form attached hereto as Exhibit B. Class Counsel and Cumberland's Counsel must jointly approve any changes to the Class Notice from the form set forth in Exhibit B.

2.12    "Class Period" means the period from October 9, 2009 to July 1, 2014.

2.13    "Complaint" means the Second Amended Class Action Complaint Plaintiff filed in the Action pursuant to this Agreement.

2.14    "Court" means the United States District Court for the Eastern District of New York.

2.15    "Cumberland" means Cumberland Packing Corp., a corporation organized under

the laws of the State of New York with its principal place of business at 2 Cumberland Street, Brooklyn, New York 11205. "Cumberland" also includes Cumberland Packing Corp.'s predecessors, subsidiaries, shareholders, affiliates, officers, directors, partners, employees, agents, servants, assignees, successors, and/or other transferees or representatives.

2.16    "Cumberland's Counsel" means Gordon & Rees Scully Mansukhani LLP. Gordon & Rees Scully Mansukhani, LLP's office locations include 101 West Broadway, Suite 2000, San Diego, California 92101, and 90 Broad Street, 23rd Floor, New York, New York 10004.

2.17    "Defendant" means Cumberland. (*See supra* ¶ 2.15.)

2.18    "Defense Counsel" means Cumberland's Counsel. (*See supra* ¶ 2.16.)

2.19    "Depository Bank" means the bank that Class Counsel and Cumberland's Counsel will jointly select to receive, hold, invest, and disburse the Escrow Account, subject to instructions that the Parties will provide to the Settlement Administrator and subject to the terms of the Escrow Agreement.

2.20    "Effective Date" means:

(a)    if no appeal is taken from the Order and Final Judgment, 35 calendar days after the Court enters the Order and Final Judgment; or

(b)    if an appeal is taken from the Order and Final Judgment, the date on which all appellate rights (including petitions for rehearing or re-argument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and proceedings in the United States Supreme Court or any other appellate court) have expired, been exhausted, or been finally disposed of in a manner that affirms the Order and Final Judgment.

2.21    "Escrow Account" means the custodial or investment account with the Depository Bank in which the funds to be deposited will be held, invested, administered, and disbursed

pursuant to this Agreement. The Settlement Administrator will administer the Escrow Account.

2.22 "Escrow Agreement" means the agreement by and among Class Counsel, Cumberland's Counsel, and the Settlement Administrator with respect to the escrow of the funds to be deposited into the Escrow Account pursuant to the Settlement Agreement substantially in the form attached hereto as Exhibit E.

2.23 "Fairness Hearing" means the Final Approval Hearing. (*See infra* ¶ 2.26.)

2.24 "FDA" means the United States Food and Drug Administration.

2.25 "Final Approval Date" means the date on which the Court enters judgment in the Action approving this Class Action Settlement Agreement.

2.26 "Final Approval Hearing" means the final hearing of the Settlement Hearings the Court will hold to consider and determine (a) whether it should approve the proposed Settlement contained in this Class Action Settlement Agreement as fair, reasonable, and adequate and (b) whether it should enter the Order and Final Judgment. The Final Approval Hearing will occur after the Court grants Preliminary Approval, as the Court so orders.

2.27 "Incentive Awards" means the amounts that named Plaintiffs Leslie Frohberg and Nancy Harding will receive pursuant to Paragraph 8.6 of this Agreement.

2.28 "Long Form Notice" means the Class Notice. (*See supra* ¶ 2.11.)

2.29 "Notice Administrator" means the Class Action Settlement Administrator. (*See supra* ¶ 2.9.)

2.30 "Notice Plan" means the plan for publication of Class Notice that the Settlement Administrator has developed and will develop. The Notice Plan is attached as Exhibit C.

2.31 "Order and Final Judgment" means the final order the Court will enter, which will approve the Settlement pursuant to the terms and conditions of this Agreement, dismiss the

Action with prejudice, release claims, and otherwise direct as the Court or the Parties deem necessary and appropriate to effectuate the terms and conditions of this Agreement.

2.32    "Parties" means Plaintiffs and Defendant, together.

2.33    "Party" means one of the Parties.

2.34    "Plaintiffs" means Leslie Frohberg and Nancy Harding, the plaintiffs in the Action.

2.35    "Plaintiffs' Counsel" means Class Counsel. (*See supra* ¶ 2.10.)

2.36    "Preliminary Approval" means the order preliminarily approving this Class Action Settlement Agreement, preliminarily certifying the Settlement Class, approving the Notice Plan, and issuing any necessary related orders.

2.37    "Preliminary Approval Hearing" means the first of the Settlement Hearings the Court will hold to consider and determine (a) whether it should approve the proposed Settlement contained in this Class Action Settlement Agreement as fair, reasonable, and adequate and (b) whether it should enter the Order and Final Judgment.

2.38    "Preliminary Approval Order" means the Preliminary Approval. (*See supra* ¶ 2.36.)

2.39    "Released Claims" means any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss, cost, attorney's fee, attorney's expense, action, or cause of every kind and description that Plaintiffs and the Settlement Class Members had, have, or will have, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims, claims asserted on a class basis or claims asserted on behalf of the general public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or patent, that Plaintiffs or the Settlement Class

Members have asserted, could reasonably have asserted, or in the future might reasonably assert, in the Action or that arise from or are related to the allegations in the complaints in this case and/or any labeling, advertising or marketing of Stevia In The Raw.

2.40    "Released Persons" means and includes Cumberland and each of its affiliated entities, subsidiaries, predecessors, successors, distributors, retailers, customers, and assigns, including the present and former directors, officers, employees, shareholders, agents, insurers, partners, privies, representatives, attorneys, and accountants and all persons acting by, through, under the direction of, or in concert with any of the foregoing persons.

2.41    "Settlement" means the Agreement. (*See supra* ¶ 2.2.)

2.42    "Settlement Administration and Notice Payment" means, collectively:

(a)    all costs and expenses associated with disseminating notice to the Settlement Class, including but not limited to the Class Notice and the Summary Settlement Notice; and

(b)    all costs and expenses associated with the administration of the Settlement, including but not limited to any escrow, administrative, and/or bank-related fees and costs associated with and/or related to the Escrow Account; costs of processing Claims; and the fees of the Settlement Administrator.

2.43    "Settlement Administrator" means the Class Action Settlement Administrator. (*See supra* ¶ 2.9.)

2.44    "Settlement Agreement" means the Agreement. (*See supra* ¶ 2.2.)

2.45    "Settlement Class" means all persons who, during the Class Period, both resided in the United States and purchased in the United States any of the Stevia in the Raw Consumer Products for their household use or personal consumption and not for resale or distribution.

Excluded from the Settlement Class are: (a) Cumberland's board members, executive-level officers, and attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures the Court will approve.

2.46    "Settlement Class Member(s)" means members of the Settlement Class.

2.47     "Settlement Fund" means the sums that Cumberland is obligated to pay under the Settlement agreement for:

(a)    costs associated with the Notice Plan and Class Action Claims Administrator;

(b)    cash payments distributed from the Escrow Account to Claimants who have submitted timely, valid, and approved Claims pursuant to the Claims process outlined in Paragraph 4.2 of this Agreement;

(c)    any Incentive Awards the Court may make to Plaintiffs Leslie Frohberg and Nancy Harding under Paragraph 8.6 of this Settlement Agreement; and

(d)    Class Counsel's attorney fees and expenses.

2.48    "Settlement Hearings" means the Preliminary Approval Hearing and the Final Approval Hearing. (*See supra* ¶¶ 2.26, 2.37.)

2.49    "Settlement Website" means the website to be created in connection with the Settlement, which will include information about the Action and the Settlement, relevant documents, and electronic and printable forms related to the Settlement, including the Claim Form. The Settlement Website shall include a Claim Form capable of being completed and submitted online. The Settlement Website shall be activated by the date of the first publication (whether online, via print publication, or via press release) of the Summary Settlement Notice or

the Class Notice, whichever is earlier, and shall remain active until 120 calendar days after the Court enters the Order and Final Judgment.

2.50    "Short Form Notice" or "Summary Class Notice" or "Summary Settlement Notice" means the summary notice of the proposed Settlement to be disseminated by publication substantially in the form of Exhibit D to this Agreement. Class Counsel and Cumberland's Counsel must jointly approve any changes to the Short Form Notice from the form set forth in Exhibit D.

2.51    "Stevia in the Raw Consumer Products" or "Products" means Cumberland's products sold under the brand name "Stevia in the Raw" and containing the word "natural" or the phrases "all natural" or "100% natural" on the product's packaging in sachet packet and bakers' bag forms, of any size or quantity.

## III.    CERTIFICATION OF THE SETTLEMENT CLASS AND PRELIMINARY APPROVAL

3.1    For the purposes of settlement and the proceedings contemplated herein, the Parties stipulate and agree that the Court may certify a nationwide Settlement Class. Class certification shall be for settlement purposes only, and shall have no effect for any other purpose.

3.2    The certification of the Settlement Class shall be binding only with respect to this Class Action Settlement Agreement. In the event that Final Approval does not occur for any reason, the Preliminary Approval, and all of its provisions, shall be vacated by its own terms, and the Action shall revert to the status in which it existed prior to the date of this Class Action Settlement Agreement.

3.3    As part of the settlement process, Cumberland consents to Plaintiffs' application to the Court for entry of an order which, among other things:

(a)    preliminarily certifies the Settlement Class in accordance with the

13

definition set forth in Paragraph 2.45 of this Class Action Settlement Agreement;

(b)     preliminarily approves this Agreement for purposes of issuing Class Notice;

(c)     approves the timing, content, and manner of the Class Notice and Summary Settlement Notice;

(d)     appoints the Settlement Administrator;

(e)     appoints Reese LLP and Halunen Law as Class Counsel and Plaintiffs as the named representatives of the Settlement Class; and

(f)     makes such orders as are necessary and appropriate to effectuate the terms and conditions of this Agreement.

## IV.     SETTLEMENT CONSIDERATION

4.1     **Payments By Cumberland.**     Cumberland shall pay up to a maximum of $1,547,000 as follows:

(a)     costs associated with the Notice Plan and Class Action Claims Administrator, up to a maximum of $210,000.00;

(b)     cash payments distributed from the Escrow Account to Claimants who have submitted timely, valid, and approved Claims pursuant to the Claims process outlined in Paragraph 4.3 of this Agreement.  Defendant agrees to pay to Claimants a maximum of $2.00 per package for each Stevia in the Raw Consumer Product purchased during the Class Period by a Settlement Class Member who submits a timely and valid Claim Form, up to a maximum of 8 packages per class member (i.e., a maximum of $16.00 per class member).  Cumberland shall be required to pay timely and valid Claims up to a maximum amount of $880,000.00 to Settlement Class Members. Settlement Class Members' recovery is subject to a *pro rata* decrease,

depending on the value of approved Claims submitted, pursuant to Section 4.7(c).

(c)     any Incentive Awards the Court may make to named Plaintiffs Leslie Frohberg and Nancy Harding up to a maximum of $3,500.00 each, pursuant to Paragraph 8.6 of this Settlement Agreement; and

(d)     any Attorneys' Fees and Expenses award the Court may make to Class Counsel up to a maximum of $450,000.00, pursuant to Section VIII of this Class Action Settlement Agreement.

4.2     **Additional Benefits.**  Cumberland agrees that it will not use the phrases "100% Natural" or "All Natural" on packages or labels of its Stevia In The Raw products.

4.3     **Administration.**  The Parties agree to appoint the Settlement Administrator as escrow agent for the purpose of creating and administering the Escrow Account and the monies deposited therein in accordance with the terms of the Settlement Agreement and the Escrow Agreement.

(a)     Within 20 calendar days of the issuance of the Preliminary Approval Order, Cumberland will make an initial payment of $210,000 into the Escrow Account with the Depository Bank, pursuant to the terms of the Escrow Agreement. Up to the entirety of this $210,000 initial payment amount shall be used to pay the costs and fees of the Settlement Claims Administrator as indicated in Subparagraph 4.1(a), with any portion of the $210,000 initial payment that is not needed to pay these costs to be credited as a payment toward the payment of valid and approved Claims.  If the Effective Date does not occur for any reason, any remainder of this payment shall be returned to Cumberland.

(b)     The Settlement Administrator shall pay from the Escrow Account awards to Claimants for timely, valid, and approved Claims and all costs associated with the Settlement

15

Administration and Notice Payment. The Settlement Administrator shall invoice all costs associated with the Settlement Administration and Notice Payment and pay all such costs promptly from the funds deposited into the Escrow Account after review and approval by Class Counsel and Cumberland.

(c)     The Settlement Administrator shall be responsible for obtaining a Federal Tax Identification Number, preparing the necessary tax returns for the Escrow Account, if applicable, and paying from the Escrow Account any applicable taxes due on income generated in the Escrow Account. Neither Cumberland nor Cumberland's Counsel, Plaintiffs, or Plaintiffs' Counsel shall have any responsibility for, or liability whatsoever with respect to, the investment, allocation, or distribution of the Escrow Account, the processing of claims, or any loss incurred by the Settlement Administrator or the Depository Bank in connection therewith.

4.4    **Eligibility and Process for Obtaining a Cash Payment**

To be eligible for a cash payment, a Settlement Class Member must submit a timely and valid Claim Form, which will be evaluated by the Settlement Administrator.

(a)     **Claim Form Availability.** The Claim Form shall be in a form substantially similar to the form attached as Exhibit A.  The Claim Form will be: (i) included on the Settlement Website to be designed and administered by the Settlement Administrator (ii) made readily available from the Settlement Administrator, including by requesting a Claim Form from the Settlement Administrator by mail, e-mail, or calling a toll-free number provided by the Settlement Administrator, and (iii) mailed to those individuals who have directly bought the Stevia in the Raw Consumer Products directly from Defendant.  The Claim Form will be available for downloading on Class Counsel's website, at Class Counsel's option.

(b)     **Timely Claim Forms.** Settlement Class Members must submit a timely

Claim Form, which is one postmarked or submitted online before or on the last day of the Claim

Period, the specific date of which will be prominently displayed on the Claim Form and Class

Notice.  For a non-online Claim Form, the Claim Form will be deemed to have been submitted

on the date of the postmark on the envelope or mailer. For an online Claim Form and in all other

cases, the Claim Form will be deemed to have been submitted on the date it is received by the

Settlement Administrator.

(c) **Validity of Claim Forms.**  Settlement Class Members must submit a valid

Claim Form, which must contain the Settlement Class Member's name and mailing address,

attestation of purchase(s) as described in 4.4(d), type(s) of Stevia in the Raw Consumer Products

purchased, and estimated dates and location(s) of each purchase. On the Claim Form, Settlement

Class Members must include the estimated number of Stevia in the Raw Consumer Products

purchased.  Subject to Section 4.4(g) herein, Claim Forms that do not meet the requirements set

forth in this Agreement and in the Claim Form instructions may be rejected. The Settlement

Administrator will determine a Claim Form's validity. Where a good faith basis exists, the

Settlement Administrator may reject a Settlement Class Member's Claim Form for, among other

reasons, the following:

(i) Failure to attest to the purchase of the Stevia in the Raw Consumer

Products, or purchase of products that are not covered by the terms of this Settlement

Agreement;

(ii) Failure to provide adequate verification or additional information of

the Claim pursuant to a request of the Settlement Administrator;

(iii) Failure to fully complete and/or sign the Claim Form;

(iv) Failure to submit a legible Claim Form;

(v) Submission of a fraudulent Claim Form;

(vi) Submission of Claim Form that is duplicative of another Claim Form;

(vii) Submission of Claim Form by a person who is not a Settlement Class Member;

(viii) Request by person submitting the Claim Form to pay funds to a person or entity that is not the Settlement Class Member for whom the Claim Form is submitted;

(ix) Failure to submit a Claim Form by the end of the Claim Period; or

(x) Failure to otherwise meet the requirements of this Agreement.

(d)        **Attestation of Purchase Under Penalty of Perjury Required**. Because the claims process will not require proof of purchase, each Settlement Class Member shall sign and submit a Claim Form that states to the best of his or her knowledge the total number and type of purchased Stevia in the Raw Consumer Products, and dates and location of each purchase. The Claim Form shall be signed under an affirmation stating the following or substantially similar language: "I declare, under penalty of perjury, that the information in this Claim Form is true and correct to the best of my knowledge, and that I purchased the Stevia in the Raw Consumer Product(s) claimed above between October 9, 2009 and July 1, 2014, for personal or household use and not for resale. I understand that my Claim Form may be subject to audit, verification, and Court review."

(e)        **Verification of Purchase May be Required.** The Claim Form shall advise Settlement Class Members that while proof of purchase is not required to submit a Claim, the Settlement Administrator has the right to request verification or more information regarding the purchase of the Stevia in the Raw Consumer Products for the purpose of preventing fraud.  If the Settlement Class Member does not timely comply or is unable to produce documents or

additional information to substantiate the information on the Claim Form and the Claim is otherwise not approved, the Settlement Administrator may disqualify the Claim.

(f) **Claim Form Submission and Review.** Claimants may submit a Claim Form either by mail or electronically. The Settlement Administrator shall review and process the Claim Forms pursuant to the process described in this Agreement to determine each Claim Form's validity. Adequate and customary procedures and standards will be used by the Settlement Administrator to prevent the payment of fraudulent claims and to pay only legitimate claims. The Parties shall take all reasonable steps, and direct the Settlement Administrator to take all reasonable steps, to ensure that Claim Forms completed and signed electronically by Settlement Class Members conform to the requirements of the federal Electronic Signatures Act, 15 U.S.C. § 7001, *et seq*.

(g) **Claim Form Deficiencies**. Failure to provide all information requested on the Claim Form will not result in immediate denial or nonpayment of a claim. Instead, the Settlement Administrator will take all adequate and customary steps to attempt to cure the defect and to determine the Settlement Class Member's eligibility for payment and the amount of payment based on the information contained in the Claim Form or otherwise submitted, including but not limited to attempting to follow up with the Claimant to gather additional information if necessary. If the Claim Form defect cannot be cured, the Claim will be rejected.

(h) **Failure to Submit Claim Form**. Unless a Settlement Class Member opts out pursuant to Section VI, any Settlement Class Member who fails to submit a timely and valid Claim Form shall be forever barred from receiving any payment pursuant to this Agreement, and shall in all other respects be bound by all of the terms of this Agreement and the terms of the Order and Final Judgment to be entered in the Action. Based on the Release contained in the

Agreement, any Settlement Class Member who does not opt out will be barred from bringing any action in any forum (state or federal) against any of the Released Parties concerning any of the matters subject to the Release.

4.5     **Submission of Claims to the Class Action Settlement Administrator**

(a)     A Settlement Class Member shall be eligible for monetary relief provided that the Settlement Class Member:

(i)     purchased one or more Stevia in the Raw Consumer Products during the Class Period;

(ii)    completes and timely submits the Claim Form during the Claim Period to the Settlement Administrator; and

(iii)   does not opt out from the Settlement Agreement.

(b)     Each Settlement Class Member who purchased one or more Stevia in the Raw Consumer Products during the Class Period shall be entitled to submit a Claim in either hard copy or electronically to the Settlement Administrator during the Claim Period. The payment for each purchase of one of the Stevia in the Raw Consumer Products shall be up to two dollars subject to the adjustments and other procedures discussed in the Settlement Agreement. No Claimant may submit more than one Claim for purchase of one of the Stevia in the Raw Consumer Products for which the Claimant is seeking payment from monies in the Escrow Account that are a part of the Settlement Fund. Claimants may seek reimbursement for purchases of up to a maximum of eight packages of the Stevia in the Raw Consumer Products (*i.e.*, a maximum of $16 per Claimant). Proof of purchase is not required.

4.6     **Claim Form Review**

(a)     Pursuant to the terms of the Settlement Agreement, the Settlement

Administrator shall reject Claim Forms that do not meet the requirements set forth in the Agreement, regardless of whether the Claimant submitted the Claim Form electronically via the Settlement Website or in hard copy via United States Mail. The Settlement Administrator shall administer the process of receiving, handling, processing, rejecting (if warranted), and/or paying Claims in addition to the other duties identified in the Settlement Agreement and those that are usual and customary in class action settlement administration. Cumberland has the right to waive any of the Claim Form requirements set forth above.

(b)      The Settlement Administrator shall have the authority to determine whether registration by any Settlement Class Member is complete and timely. The Settlement Administrator's determinations in this regard shall be final and shall not be appealable by any Party or by any Settlement Class Member.

(c)      The Settlement Administrator shall notify, in a timely fashion, any Claimant whose Claim has been rejected and set forth the reasons therefor. The Settlement Administrator shall timely provide copies of all rejection notices to Class Counsel and Defense Counsel.

(d)      Any Settlement Class Member whose claim is rejected in its entirety shall be barred from receiving any payment under the Settlement Agreement, but shall in all other respects be bound by the terms of the Settlement Agreement and by the Order and Final Judgment entered in the Action, unless such Settlement Class Member has submitted a timely request to opt out pursuant to Paragraph 6.3 of this Agreement. Similarly, any Settlement Class Member whose Claim is approved in part and rejected in part shall be barred for that portion of the Claim that is rejected from receiving any payment under the Settlement Agreement, but shall in all other respects be bound by the terms of the Settlement Agreement and by the Order and

Final Judgment entered in the Action, unless such Settlement Class Member has submitted a timely request to opt out pursuant to Paragraph 6.3 of this Agreement.

(e)     The Settlement Administrator shall exercise, in its reasonable discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claims process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim to prevent actual or possible fraud or abuse.

(f)     The Settlement Administrator shall identify any Claims that appear to seek relief on behalf of the same Claimant. The Settlement Administrator shall determine whether there is any duplication of Claims. The Settlement Administrator shall designate any such duplicative claims as rejected Claims to the extent they seek payment for the same purchases of the Stevia in the Raw Consumer Products.

(g)     No person shall have any claim against Cumberland, Plaintiffs, the Settlement Class, Class Counsel, Defense Counsel, or the Settlement Administrator based on any eligibility determinations made in accordance with the Settlement Agreement.

4.7     **Payment of Claims**

(a)     Within 30 calendar days after the occurrence of the Effective Date or within 30 calendar days of the last day of the Claim Period, whichever is later, the Settlement Administrator will provide to Class Counsel and Cumberland a detailed statement of the costs that will be incurred in generating and disbursing checks to Claimants. Within 14 calendar days of the deadline in the prior sentence and subject to Cumberland's approval and Class Counsel's approval, the Settlement Administrator shall request that Cumberland deposit funds into the Escrow Account in the amount necessary to pay timely, valid, and approved Claims plus any remaining amount owed to complete the Settlement Administration and Notice Payment, and

Cumberland shall have 30 calendar days to fund the Escrow Account with the amount requested by the Settlement Administrator.

(b)     Unless the Court orders otherwise, the Settlement Administrator shall distribute funds from the Escrow Account to Settlement Class Members who timely returned a complete Claim Form that has been verified and approved for payment by the Settlement Administrator within 120 calendar days of the last day of the Claim Period, provided, however, that this provision can be triggered no earlier than 45 calendar days from the occurrence of the Effective Date, subject to any adjustments discussed in the Settlement Agreement.

(c)     **Insufficient Funds in the Settlement Fund.**  If the total amount of the timely, valid, and approved Claims submitted by Settlement Class Members exceeds the available relief, considering any fees, payments, and costs set forth in this Agreement that must also be paid from the Settlement Fund, each eligible Settlement Class Member's Claim shall be proportionately reduced on a *pro rata* basis, such that the aggregate value of the payments does not exceed $880,000. The Settlement Administrator shall determine each authorized Settlement Class member's *pro rata* share based upon each Settlement Class Member's Claim Form and the total number of valid Claims. Accordingly, the actual amount recovered by each Settlement Class Member will not be determined until after the Claim Period has ended and all Claims have been calculated.

## V.     NOTICE TO CLASS AND ADMINISTRATION OF PROPOSED SETTLEMENT

### 5.1     Duties and Responsibilities of the Settlement Administrator

Class Counsel and Cumberland recommend and retain Dahl Administration, LLC, to be the Settlement Administrator for this Agreement. The Settlement Administrator shall abide by, and shall administer, the Settlement in accordance with the terms, conditions, and obligations of

this Agreement and the orders the Court has issued, or will issue, in the Action.

        (a)    **Class Notice Duties.** The Settlement Administrator shall, in cooperation with the Parties, be responsible for consulting on and designing the Class Notice, Summary Class Notice, and Claim Form. After the Court's Preliminary Approval of this Agreement and appointment of the Settlement Administrator, the Settlement Administrator shall also be responsible for disseminating the Class Notice and Summary Class Notice, substantially in the form described in the Notice Plan attached as Exhibit C to this Agreement, specified in the Preliminary Approval Order, and specified in this Agreement. The Class Notice and Summary Class Notice will comply with all applicable laws, including but not limited to the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Class Notice duties include but are not limited to:

        (i)    consulting on, drafting, and designing the Class Notice, Summary Class Notice, and Claim Form. Class Counsel and Cumberland's Counsel shall have input and joint approval rights, which neither Class Counsel nor Cumberland's Counsel shall unreasonably withhold, over the Class Notice, Summary Class Notice, and Claim Form or any changes to the Class Notice, Summary Class Notice, or Claim Form;

        (ii)    developing the Notice Plan. Class Counsel and Cumberland's Counsel shall have input and joint approval rights, which neither Class Counsel nor Cumberland's Counsel shall unreasonably withhold, over the Notice Plan and changes to the Notice Plan;

        (iii)    implementing and arranging for the publication of the Summary Settlement Notice and Class Notice via various forms of paper and electronic media, including implementing media purchases, all in substantial accordance with the Notice Plan. To the extent

the Settlement Administrator believes additional or different notice should be undertaken than the notice for which the Notice Plan provides, Class Counsel and Cumberland's Counsel shall have input and joint approval rights, which neither Class Counsel nor Cumberland's Counsel shall unreasonably withhold, over any additional or different notice;

(iv)     establishing and publishing the Settlement Website (*see supra* ¶ 2.49);

(v)     sending the Class Notice and related documents, including a Claim Form, via electronic mail or regular mail to any potential Settlement Class Member who so requests and sending such Class Notice and documents to the list of direct consumers that Cumberland will provide;

(vi)     responding to requests from Class Counsel and Cumberland's Counsel; and

(vii)     otherwise implementing and assisting with the dissemination of the notice of the Settlement.

(b)     **Duties under Class Action Fairness Act to Provide Notice to Federal and State Officials.** No later than 10 calendar days after this Agreement is filed with the Court, Cumberland shall mail or cause the items specified in 28 U.S.C. § 1715(b) to be mailed to appropriate Federal and State officials as specified in 28 U.S.C. § 1715(a).

(c)     **Claims Process Duties.** The Settlement Administrator shall be responsible for implementing the terms of the Claims process and related administrative activities, including communications with Settlement Class Members concerning the Settlement, the Claims process, and the options they have. Claims process duties include but are not limited to:

(i)      executing any mailings required under the terms of this Agreement;

(ii)      establishing a toll-free voice response unit to which Settlement Class Members may refer for information about the Action and the Settlement;

(iii)      establishing a United States Post Office box for the receipt of each Claim Form, exclusion request, and any correspondence;

(iv)      receiving and maintaining on behalf of the Court all correspondence from any Settlement Class Member regarding the Settlement, and forwarding inquiries from Settlement Class Members to Class Counsel or their designee for a response, if warranted; and

(v)      receiving and maintaining on behalf of the Court any Settlement Class Member correspondence regarding any opt-out requests, exclusion forms, or other requests for exclusion from the Settlement, and providing to Class Counsel and Cumberland's Counsel a copy within five calendar days of receipt. If the Settlement Administrator receives any such forms or requests after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide Class Counsel and Cumberland's Counsel with copies.

(d)      **Claims Review Duties.** The Settlement Administrator shall be responsible for reviewing and approving each submitted Claim Form in accordance with this Agreement. Claims review duties include but are not limited to:

(i)      reviewing each Claim Form submitted to determine whether the Claim Form meets the requirements set forth in this Agreement and whether it should be approved, including determining whether a Claim by any Settlement Class Member is timely, complete, and valid;

(ii)     working with Settlement Class Members who submit timely Claims to try to cure any Claim Form deficiencies;

(iii)    using all reasonable efforts and means to identify and reject duplicate and/or fraudulent Claims, including but not limited to maintaining a database of all Claim Form submissions;

(iv)    keeping an accurate and updated accounting via a database of the number of Claim Form submissions received, the amount claimed on each Claim Form, the name and address of the Settlement Class Member who made the Claim, whether the Claim has any deficiencies, and whether the Claim has been approved as timely and valid; and

(v)     otherwise implementing and assisting with the Claim review process and payment of the Claims, pursuant to the terms and conditions of this Agreement.

(e)     **Periodic Updates.** The Settlement Administrator shall provide periodic updates to Class Counsel and Cumberland's Counsel regarding Claim Form submissions beginning within seven calendar days after the commencement of the dissemination of the Class Notice or the Summary Settlement Notice, whichever is earlier, and continuing on a monthly basis thereafter, and shall provide such an update within seven calendar days before the Final Approval Hearing. The Settlement Administrator shall also provide updates to Class Counsel or Cumberland's Counsel upon request, within a reasonable amount of time.

(f)     **Claims Payment Duties.** The Settlement Administrator shall be responsible for sending payments to all eligible Settlement Class Members with valid, timely, and approved Claims pursuant to the terms and conditions of this Agreement. Claim payment duties include but are not limited to:

(i)     providing, within 30 calendar days after the occurrence of the

27

Effective Date or within 30 calendar days of the last day of the Claim Period, whichever is later, to Class Counsel and Cumberland a detailed statement of the costs that will be incurred in generating and disbursing checks to Claimants;

(ii)     sending, pursuant to Paragraph 4.2 and after the Settlement Fund has been funded, checks to Settlement Claim Members who submitted a Claim Form that was timely, valid, and approved; and

(iii)     providing, once payments have commenced to the Settlement Class pursuant to the terms and conditions of this Agreement, a regular accounting to Class Counsel and Cumberland's Counsel that includes but is not limited to the number and amount of Claims paid.

(g)     **Reporting to Court.** Not later than 10 calendar days before the date of the Fairness Hearing, the Notice Administrator shall file a declaration or affidavit with the Court that:

(i)     includes a list of the persons who have opted out or excluded themselves from the Settlement; and

(ii)     describes the scope, methods, and results of the notice program.

(h)     **Duty of Confidentiality.** The Settlement Administrator shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information or materials to any person or entity, except to the Parties or as provided in this Agreement or by Court Order.

(i)     **Right to Inspect.** Class Counsel and Cumberland's Counsel shall have the right to inspect any and all Claim Form submission and supporting documentation received by

28

the Settlement Administrator at any time upon reasonable notice.

(j) **Failure to Perform.** If the Settlement Administrator misappropriates any funds from the administration or settlement funds or makes a material or fraudulent misrepresentation to, or conceals requested material information from, Class Counsel, Cumberland, or Cumberland's Counsel, then the Party who discovers the misappropriation or concealment or to whom the misrepresentation was made shall, in addition to any other appropriate relief, have the right to demand that the Settlement Administrator immediately be replaced. If the Settlement Administrator fails to perform adequately on behalf of the Parties, the Parties may agree to remove the Settlement Administrator. Neither Party shall unreasonably withhold consent to remove the Settlement Administrator. The Parties will attempt to resolve any disputes regarding the retention or dismissal of the Settlement Administrator in good faith. If unable to so resolve a dispute, the Parties will refer the matter to the Court for resolution.

## VI.   OBJECTIONS AND REQUESTS FOR EXCLUSION

6.1   A Settlement Class Member may object to this Agreement pursuant to Paragraph 6.2 or request exclusion from this Agreement pursuant to Paragraph 6.3.

6.2   **Objections.** Settlement Class Members shall have the right to object to this Settlement and to appear and show cause, if they have any reason why the Court should not give final approval to the terms of this Agreement and must do so no later than 30 calendar days before the Final Approval Hearing, or such other date as the Court may order (the Objection Deadline) pursuant to this paragraph, in accordance with the provisions of this Paragraph set forth below:

(a)   A Settlement Class Member may object to this Agreement either on his or her own without an attorney, or through an attorney hired at his or her own expense;

(b)     Any objection to this Agreement must be in writing, signed by the Settlement Class Member (and his or her attorney, if individually represented), filed with the Court, with a copy delivered to Class Counsel and Defendant's Counsel at the addresses set forth in the Class Notice, no later than 30 days before the Final Approval Hearing;

(c)     The name, address, telephone number, and, if available, the email address of the Person objecting, and if represented by counsel, of his/her counsel, including any former or current counsel who may be entitled to compensation for any reason related to the objection;

(d)     Specifically and in writing, all objections, accompanied by any legal support known to the objecting Class Member or his or her counsel;

(e)     Whether he/she intends to appear at the Final Approval Hearing, either with or without counsel;

(f)     A statement of his/her membership in the Settlement Class, including all information required by the Claim Form; and

(g)     A detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years.  If the Settlement Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the Objection to this Settlement.

(h)     Any objection regarding or related to this Agreement shall contain a caption or title that identifies it as an "Objection to the Class Action Settlement Agreement in *Frohberg v. Cumberland Packing Corp.*, No. 1:14-cv-00748-KAM-RLM (E.D.N.Y.)."

(i)     Any objection regarding or related to this Agreement shall contain

30

information sufficient to identify and contact the objecting Settlement Class Member (or his or her individually-hired attorney, if any), as well as a clear and concise statement of the Settlement Class Member's objection, the facts supporting the objection, and the legal grounds on which Settlement Class Member (and/or his or her individually-hired attorney, if any) bases the objection.

(j)       Any objection shall include documents sufficient to establish the basis for the objector's standing as a Settlement Class Member, such as (i) a declaration signed by the objector under penalty of perjury, with language similar to that included in the Claim Form attached as Exhibit A, that the Settlement Class Member purchased at least one of the Stevia in the Raw Consumer Products during the Class Period or (ii) receipt(s) reflecting such purchase(s).

(k)       Class Counsel and Cumberland shall have the right to respond to any objection no later than seven calendar days prior to the Fairness Hearing. The Party responding shall file a copy of the response with the Court and shall serve a copy by regular mail, hand delivery, or overnight delivery to the objecting Settlement Class Member (or to the individually-hired attorney for the objecting Settlement Class Member, if any), to all Class Counsel, and to Cumberland's Counsel.

(l)       If an objecting Settlement Class Member chooses to appear at the Fairness Hearing, no later than 15 calendar days before the Fairness Hearing, the Settlement Class Member must file a "Notice of Intention to Appear, either In Person or Through an Attorney" with the Court. The "Notice of Intention to Appear, either In Person or Through an Attorney" must list the name, address, and telephone number of the attorney, if any, who will appear.

6.3    **Requests for Exclusion.** Settlement Class Members shall have the right to elect to exclude themselves (*i.e.*, opt out) of the monetary portion of this Agreement, relinquishing

their rights to cash payments under this Agreement and preserving their claims for damages that accrued during the Class Period, in accordance with the provisions of this Paragraph set forth below:

(a)     A Settlement Class Member wishing to opt out of this Agreement must send to the Settlement Administrator by United States Mail a personally-signed letter including his or her name and address and providing a clear statement communicating that he or she elects to be excluded from the Settlement Class. A request for exclusion shall be null and void, and shall not effectuate an exclusion from the Settlement Class, unless the Settlement Class Member requesting exclusion has personally signed the request for exclusion.

(b)     Any request for exclusion must be postmarked on or before the opt-out deadline date specified in the Preliminary Approval Order. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.

(c)     The Settlement Administrator shall forward copies of any written requests for exclusion to Class Counsel and Cumberland's Counsel and shall file a list reflecting all requests for exclusion with the Court no later than 10 calendar days before the Final Approval Hearing.

(a)     Any Settlement Class Member who does not file a timely written request for exclusion as provided in the preceding Paragraph 6.3 shall be bound by all subsequent proceedings, orders, and judgments (including but not limited to the Releases set forth in Section VII below) in this Action, even if he or she has litigation pending or subsequently initiates litigation against Cumberland relating to the claims and transactions released in this Action.

(b)     Any Settlement Class Member who does not request exclusion from the

Settlement has the right to object to the Settlement. Settlement Class Members may not both object and opt out of the Settlement. Any Settlement Class Member who wishes to object must timely submit an objection as set forth in Paragraph 6.2 above. If a Settlement Class Member submits both an objection and a written request for exclusion, he or she shall be deemed to have complied with the terms of the procedure for requesting exclusion set forth in Paragraph 6.3 and shall not be bound by the Agreement (if approved by the Court), and the Court will not consider the objection.

## VII.   RELEASES

7.1     Upon the Effective Date of this Class Action Settlement Agreement, Plaintiffs and each member of the Settlement Class, and each of their respective successors, assigns, legatees, heirs, and personal representatives, shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons. The Released Claims shall be construed as broadly as possible to effect complete finality over this litigation involving the advertising, labeling, and marketing of the Stevia in the Raw Consumer Products as set forth herein.

7.2     In addition, with respect to the subject matter of the Action, by operation of entry of the Order and Final Judgment, Plaintiffs and each member of the Settlement Class, and each of their respective successors, assigns, legatees, heirs, and personal representatives, expressly waive any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including but not limited to section 1542 of the California Civil Code, which provides:

> A General Release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

33

In addition to the foregoing, by operation of entry of the Order and Final Judgment, Plaintiffs and each member of the Settlement Class shall be deemed to have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any foreign country, and any and all principles of common law that are similar, comparable, or equivalent in substance or intent to section 1542 of the California Civil Code.

7.3     Plaintiffs fully understand that the facts upon which the Parties have executed this Class Action Settlement Agreement may hereafter be other than or different from the facts that Plaintiffs and Class Counsel now believe to be true, and Plaintiffs nevertheless agree this Class Action Settlement Agreement shall remain effective notwithstanding any such difference in facts.

7.4     Upon the Effective Date, Defendant shall forever release and discharge all claims that could have been brought or are ever brought in the future by Defendant against Plaintiffs, in their individual capacity and as Class Representatives, against Settlement Class Members, and against Class Counsel (including known and unknown claims) in any forum in the United States (including their territories and Puerto Rico), whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation or common law, that arise out of or relate in any way to the institution, prosecution or settlement of the Claims against Defendant, except for claims relating to the enforcement of this Settlement Agreement.

7.5     Defendant agrees that the Actions were filed and litigated in compliance with Fed. R. Civ. P. 11.

7.6     To the extent the law permits, this Agreement may be pled as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this

Agreement, including but not limited to any Related Actions.

## VIII. ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

8.1    Class Counsel agrees to make, and Cumberland agrees not to oppose, an application for an award of Attorneys' Fees and Expenses in the Action that will not exceed an amount equal to $450,000. This shall be the sole aggregate compensation that Cumberland will pay Class Counsel for representing the Settlement Class. The Court shall determine the amount of the ultimate award of Attorneys' Fees and Expenses.

8.2    Cumberland agrees to wire to an account designated by Class Counsel any Court approved Attorneys' Fees and Expenses within ten days of the Effective Date.  The Parties also agree that the final order regarding Attorneys' Fees and Expenses submitted to the Court for approval shall state that the maximum amount for which Cumberland will be liable to all Plaintiff's Counsel in the Action is the amount approved by the Court, not to exceed $450,000.

8.3    Class Counsel agrees that any award of Attorneys' Fees and Expenses will be sought solely and exclusively in the Action. Class Counsel agrees that Class Counsel will not seek or accept more than $450,000 in Attorneys' Fees and Expenses.

8.4    Cumberland will not appeal from any order with respect to the award of Attorneys' Fees and Expenses provided that the order does not award Attorneys' Fees and Expenses in excess of $450,000. Cumberland shall have the right to appeal in the event of an award of Attorneys' Fees and Expenses in excess of $450,000. Cumberland shall also have the right to withdraw from the Settlement in the event of an award of Attorneys' Fees and Expenses in excess of $450,000.

8.5    Class Counsel will apply to the Court for an Incentive Award for each Plaintiffs in an amount of $3,500 each (for a total amount of $7,000) to compensate Plaintiffs for their efforts

35

in bringing the Action and achieving the benefits of this Agreement.    Class Counsel shall not request any incentive awards above this amount.  Cumberland will not object to the request so long as it does not exceed a total of $7,000.

8.6    Within 10 calendar days after the Effective Date, pursuant to Court approval, Cumberland shall pay into the Escrow Account Incentive Awards of $3,500 to Plaintiff Leslie Frohberg and $3,500 to Plaintiff Nancy Harding.

## IX.    NO ADMISSION OF LIABILITY

9.1    Cumberland has denied, and continues to deny, that the labeling, advertising, or marketing of the Stevia in the Raw Consumer Products is false, deceptive, or misleading to consumers or violates any legal requirement, including but not limited to the allegations that Cumberland engaged in unfair, unlawful, fraudulent, or deceptive trade practices, breached an express warranty, engaged in negligent misrepresentation, or was unjustly enriched. Cumberland is entering into this Class Action Settlement Agreement solely because it will eliminate the uncertainty, distraction, burden, and expense of further litigation. The provisions contained in this Class Action Settlement Agreement and the manner or amount of relief provided to Settlement Class Members herein shall not be deemed a presumption, concession, or admission by Cumberland of any fault, liability, or wrongdoing as to any facts or claims that have been or might be alleged or asserted in the Action, or in any other action or proceeding that has been, will be, or could be brought, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in any action or proceeding, whether civil, criminal, or administrative, for any purpose other than as provided expressly herein.

9.2    In the event the Court does not approve this Class Action Settlement Agreement substantially in the form submitted (or in a modified form mutually acceptable to the Parties) or

this Class Action Settlement Agreement is terminated or fails to become effective or final in accordance with its terms, Plaintiff and Cumberland shall be restored to their respective positions in the Action as of the date hereof. In such event, the terms and provisions of this Class Action Settlement Agreement shall have no further force and effect and shall not be used in the Action or in any other proceeding or for any purpose, and the Parties will jointly make an application requesting that any judgment entered by the Court in accordance with the terms of this Class Action Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

9.3     By entering into this Class Action Settlement Agreement, Cumberland is not consenting to or agreeing to certification of the Settlement Class for any purpose other than to effectuate the Settlement of the Action. The Parties agree that if the Court does not approve this Class Action Settlement Agreement substantially in the form submitted (or in a modified form mutually acceptable to the Parties), including, without limitation, if the Court grants a fee application that would cause the total award for Attorneys' Fees and Expenses to exceed $450,000, or if this Class Action Settlement Agreement is terminated or fails to become effective or final in accordance with its terms, the Action shall proceed as if no Party had ever agreed to the Settlement, without prejudice to the right of any Party to take any and all action of any kind in the Action.

X.     **ADDITIONAL PROVISIONS**

10.1     **Permitted Language.** If Cumberland chooses to use the phrase "natural ingredients" on packages or labels of Stevia In The Raw products, Cumberland will place an asterisk after the phrase with a reference to the following language or substantially similar language located near the package's list of ingredients: "For more information about our ingredients and how they are prepared, go to the FAQ section of www.intheraw.com."   If

Cumberland chooses to use  the phrase "natural ingredients" in Cumberland's  advertising or marketing materials for Stevia In The Raw products other than on a package, Cumberland will place an asterisk after the phrase with a reference to the following language or substantially similar language near the bottom of the page on which the asterisk appears: "For more information about our ingredients and how they are prepared, go to the FAQ section of www.intheraw.com." If "natural ingredients" is used on the packages, labels, advertising or marketing materials of its Stevia In The Raw products, Cumberland will include the following language or substantially similar language in the FAQ (frequently asked questions) section of the www.intheraw.com web site:

Q. What are the ingredients in Stevia In The Raw?

A. Stevia leaf extract and a bulking (diluting) agent, either dextrose or maltodextrin.

Q. What is stevia leaf extract, and how is it obtained?

A. The leaf of the stevia plant contains a sweetening agent (stevia rebaudiana Bertoni) that is about 300 times sweeter than cane sugar. That component of the stevia leaf is extracted from the stevia leaves through a process in which the leaves are soaked in aqueous solutions, purified using separation processes, filtered, crystallized and dried to a yield a powder form at the end of the extraction and purification process."

Q. What are dextrose and maltodextrin, and why are they added?

A. Dextrose and maltodextrin are carbohydrates derived from corn starch.  They  are  used to dilute the stevia leaf extract because the extract is so sweet that it would not be practical to measure or use the extract if it were not diluted. The stevia leaf extract is blended with the dextrose or maltodextrin.

Q. Does stevia in the raw contain genetically modified organisms?

A. Some of the corn from which the dextrose and maltodextrin used in Stevia In The Raw was derived probably contained modified genetic material because most of the corn grown in the United States comes from seeds containing modified genetic material. However, the dextrose and maltodextrin used in Stevia In The Raw contain no detectible genetically modified material.

10.2    Plaintiffs and the Settlement Class agree that the use of the language set forth in Section 10.1 is sufficient to ensure that the use of the phrase "natural ingredients" in the labels, packaging, advertising and marketing materials for Cumberland's Stevia In The Raw products is not misleading or deceptive.  Additionally, Cumberland will be permitted to label, market, and advertise Stevia In The Raw products using the phrases set forth below or substantially similar phrases:

naturally gluten free food, naturally sweeter than sugar, grows naturally in the Americas, naturally sweet, (contains) natural sweetener, natural sweetener from a leaf (or plant), made with/from natural sweeteners, natural zero calorie sweetener, naturally zero calorie, naturally calorie free, (made from/with) natural stevia extract, natural, from nature, ingredients found in nature, sweetness born from the leaves of  a/the stevia plant, pure sweet extract from a/the stevia plant, nothing artificial,  natural sweetness without (all) the sugar, ingredients from nature, naturally sourced sweetener(s), and a/the natural choice.

10.3    In the event that there are any changes to either state or federal laws or regulations that indicate the phrases "all natural," "100% natural" or "natural ingredients" may be used without the restrictions set forth in this Agreement, then Cumberland's agreement to comply

with those restrictions shall be terminated.

10.4     The Parties agree that Federal Rule of Evidence 408 protects the information and documents they exchanged when negotiating this Settlement Agreement. No Party may reveal any such confidential information or documents for any purpose other than effectuating this Settlement. This Paragraph does not apply, however, to publicly-available information or documents.

10.5     The Parties agree to return or dispose of all confidential documents and information they exchanged in negotiating this Settlement Agreement within 15 calendar days of the Effective Date. This Paragraph does not apply, however, to publicly-available information or documents.

10.6     The Parties agree they negotiated the terms of this Class Action Settlement Agreement at arm's length and in good faith. The Parties agree the terms of this Class Action Settlement Agreement reflect a Settlement that the Parties reached voluntarily after consultation with experienced legal counsel.

10.7     The Parties, Class Counsel, and Defense Counsel agree to use their best efforts and to cooperate fully with one another (i) in seeking Preliminary Approval and Final Approval of this Settlement and (ii) in effectuating the full consummation of the Settlement provided for herein.

10.8     Each counsel or other person executing this Class Action Settlement Agreement on behalf of any Party hereto warrants that he, she, or it has the authority to do so.

10.9     This Class Action Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument. Executed counterparts shall be deemed valid if delivered

by mail, courier, electronically, or by facsimile.

10.10   This Class Action Settlement Agreement shall be binding upon, and inure to the benefit of, the settling Parties (including all Settlement Class Members), their respective agents, attorneys, insurers, employees, representatives, officers, directors, partners, divisions, subsidiaries, affiliates, associates, assigns, heirs, successors in interest, and shareholders, and any trustee or other officer appointed in the event of a bankruptcy, as well as to all Released Persons as defined in Paragraph 2.40 of this Settlement Agreement. The waiver by any Party of a breach of this Class Action Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of this Class Action Settlement Agreement.

10.11   This Class Action Settlement Agreement and any exhibits attached to it constitute the entire agreement between the Parties hereto and supersede any prior agreements or understandings, whether oral, written, express, or implied between the Parties with respect to the Settlement.

10.12   No amendment, change, or modification of this Class Action Settlement Agreement or any part thereof shall be valid unless in writing, signed by all Parties, Class Counsel, and Defense Counsel, and approved by the Court.

10.13   The Parties to this Class Action Settlement Agreement each represent to the other that they have received independent legal advice from attorneys of their own choosing with respect to the advisability of making the Settlement provided for in this Class Action Settlement Agreement and with respect to the advisability of executing this Class Action Settlement Agreement, that they have read this Class Action Settlement Agreement in its entirety and fully understand its contents, and that each is executing this Class Action Settlement Agreement as a free and voluntary act.

10.14   Except as otherwise provided herein, all notices, requests, demands, and other communications required or permitted to be given pursuant to this Class Action Settlement Agreement shall be in writing and shall be delivered personally, by facsimile, by email, or by overnight mail, to the undersigned counsel for the Parties at their respective addresses.

10.15   The titles and captions contained in this Settlement Agreement are inserted only as a matter of convenience and for reference, and they shall in no way be construed to define, limit, or extend the scope of this Settlement Agreement or the intent of any of its provisions. This Settlement Agreement shall be construed without regard to its drafter and shall be construed as though the Parties participated equally in the drafting of this Settlement Agreement.

10.16   The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement, and the Parties to the Settlement Agreement submit to the jurisdiction of the Court for those purposes.

**IN WITNESS THEREOF**, Leslie Frohberg and Nancy Harding, individually and on behalf of all others similarly situated, and Cumberland Packing Corp. intending to be legally bound hereby, have duly executed this Class Action Settlement Agreement as of the date set forth below.

Date: _____     By: _____
                                    Defendant Cumberland Packing Corp.

Date: October 9, 2015 _____     By: _____
                                    Melissa Wolchansky
                                    Halunen Law
                                    Attorneys for Plaintiffs Nancy Harding and
                                    Leslie Frohberg

Date: October 9, 2015 _____     By: _____
                                    Michael R. Reese
                                    Reese LLP
                                    Attorneys for Plaintiffs Nancy Harding and
                                    Leslie Frohberg

Date: _____     By: _____
                                    Plaintiff Leslie Frohberg

Date: October 9, 2015 _____     By: _____
                                    Plaintiff Nancy Harding

43

**IN WITNESS THEREOF**, Leslie Frohberg and Nancy Harding, individually and on behalf of all others similarly situated, and Cumberland Packing Corp. intending to be legally bound hereby, have duly executed this Class Action Settlement Agreement as of the date set forth below.

Date: October 8, 2015      By: _____
                                     Defendant Cumberland Packing Corp.

Date: _____    By: _____
                                     Melissa Wolchansky
                                     Halunen Law
                                     Attorneys for Plaintiffs Nancy Harding and Leslie Frohberg

Date: _____    By: _____
                                     Michael R. Reese
                                     Reese LLP
                                     Attorneys for Plaintiffs Nancy Harding and Leslie Frohberg

Date: _____    By: _____
                                     Plaintiff Leslie Frohberg

Date: _____    By: _____
                                     Plaintiff Nancy Harding

43

**IN WITNESS THEREOF**, Leslie Frohberg and Nancy Harding, individually and on behalf of all others similarly situated, and Cumberland Packing Corp. intending to be legally bound hereby, have duly executed this Class Action Settlement Agreement as of the date set forth below.

Date: _____     By: _____
                                  Defendant Cumberland Packing Corp.


Date: _____     By: _____
                                  Melissa Wolchansky
                                  Halunen Law
                                  Attorneys for Plaintiffs Nancy Harding and
                                  Leslie Frohberg


Date: _____     By: _____
                                  Michael R. Reese
                                  Reese LLP
                                  Attorneys for Plaintiffs Nancy Harding and
                                  Leslie Frohberg


Date: _10/7/2015_____   By: _____
                                  Plaintiff Leslie Frohberg


Date: _____     By: _____
                                  Plaintiff Nancy Harding

43

# EXHIBIT A

*Frohberg, et al. v. Cumberland Packing Corp.*

| CLAIM FORM | | |
|---|---|---|
| **Must be <u>received online</u> or <u>postmarked </u> no later than [DATE].** | **STEVIA IN THE RAW SETTLEMENT C/O DAHL ADMINISTRATION PO BOX 3614 MINNEAPOLIS MN 55403-0614**<br><br>Toll-Free: 1-XXX-XXX-XXXX<br><br>Website: <u>www.xxxxxxxxxxxxxxx.com</u> | This is a two-sided Claim Form.  All four Sections of the Claim Form must be completed. |

**You can also file a claim online at:** <u>www.xxxxxxxxxxxxxxx.com</u>.

| Section I - Class Member Information |
|---|

**Claimant Name:**

**Street Address:**

**City:**                                   **State:**        **Zip Code:**

**Email:**

**Preferred Phone Number:**

| Section II – Stevia in the Raw Consumer Products Included in this Settlement |
|---|

Settlement Class Members are eligible to obtain up to $2 for each package of the Stevia In The Raw brand baker's bags or Stevia In The Raw brand sachet packets (of any size) containing the words "natural," "all natural" or "100% natural" that was purchased by a Class Member between October 9, 2009 and July 1, 2014, up to a maximum of 8 packages.  The maximum cash payment is $16 per Class Member.  However, the actual amount paid to individual claimants will depend upon the number of valid claims made. Only products sold under the "Stevia In The Raw" brand may be counted for this claim.



The products must have been purchased in the United States by a United States resident for his or her household use or personal consumption, and not for resale or distribution.

*[Please continue on the reverse side.]*

1

| Section III – Purchase and Product Information – List each package separately | | |
|---|---|---|

| Approximate Date Purchased | Product Type | Location of Purchase (Store and City) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

*Note:*

| Section IV – Required Affirmation |
|---|

**With my signature below I declare, under penalty of perjury, that the information in this Claim Form is true and correct to the best of my knowledge, and that I purchased the Stevia in the Raw Consumer Products claimed above between October 9, 2009 and July 1, 2014 for personal or household use and not for resale or distribtion. I understand that my Claim Form may be subject to audit, verification, and Court review.**

SIGNATURE: _____     DATE: _____

*Note: The Settlement Administrator has the right to request verification or more information regarding the claimed purchase of Stevia in the Raw products for purposes of preventing fraud. If the Class Member does not timely comply or is unable to produce documents or information to substantiate the Claim Form and the Claim is otherwise not approved, the Settlement Administrator may disqualify the Claim.*

**All Claim Forms must be postmarked if mailed or electronically submitted online by [DATE], to:**

**STEVIA IN THE RAW SETTLEMENT**          **OR**     www.xxxxxxxxxxxxxxxxxxxxxxx.com
**C/O DAHL ADMINISTRATION**
**PO BOX 3614**
**MINNEAPOLIS MN 55403-0614**

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**Frohberg, et al. v. Cumberland Packing Corp.**
**Case 1:14-cv-00748-KAM-RLM**

**NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT**

**YOU MAY BE ENTITLED TO A CASH PAYMENT OF UP TO $16.**

*THIS NOTICE MAY AFFECT YOUR RIGHTS.*

*A Federal Court authorized this notice.*
*This is not a solicitation from a lawyer.*

**PLEASE READ THIS NOTICE AND THE ENCLOSED CLAIM FORM CAREFULLY.**

- Two plaintiffs have filed a lawsuit alleging that the use of the phrases "natural," "all natural" and "100% natural" on packages of Cumberland Packing Corp.'s ("Cumberland" or "Defendant") Stevia In The Raw brand Consumer Products is misleading (the "Litigation") in the Eastern District of New York (the "Court"). Plaintiffs have brought these claims on behalf of all consumers who purchased Stevia In The Raw brand Consumer Products containing these phrases in the United States between October 9, 2009 and July 1, 2014. Cumberland denies that these phrases are inaccurate or misleading. The parties recently entered into a settlement agreement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing. The Court has not ruled on the merits of Plaintiffs' claims.

- Your rights may be affected by the Settlement, and you may be entitled to obtain the benefits of the settlement agreement if you purchased at least one Stevia in the Raw brand Consumer Product containing the phrases "natural," "all natural" or "100% natural" in the United States between October 9, 2009 and July 1, 2014, for household use or personal consumption and not for resale or distribution. If you meet these criteria, you are considered a member of the class of consumers on whose behalf the lawsuit is brought ("Class Member") unless you request that you be excluded from the class. Anyone who is a board member, officer, or attorney of Cumberland may not participate in the Settlement.

**What Can I Get From the Settlement?**

- You may be eligible for a cash payment if you qualify and timely submit a valid Claim Form.  Class Members may be eligible to receive a cash payment of up to $2 for each package of Stevia In The Raw brand Products they purchased during the designated time period, up to a maximum of 8 packages. The maximum potential payment is $16 per household.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a cash payment.  Postmark or submit your Claim Form by [DATE]. |
| **DO NOTHING** | If you are a Class Member and do nothing, you will not receive a cash payment, and the settlement will preclude you from seeking compensation for the allegedly misleading labeling and advertising of Stevia In The Raw Products. |

| **EXCLUDE YOURSELF** | Get no settlement benefits.  You may choose to be excluded from both the settlement and the lawsuit.  Postmark your exclusion request by [DATE]. |
|---:|---|
| **OBJECT** | You may write to the Court about why you don't like the settlement.  File and serve your objection by [DATE]. |
| **GO TO A HEARING** | You may ask to speak in Court about the fairness of the settlement. |

- Your rights and options — and the deadlines to exercise them — are explained in this notice.

- The Court in charge of this litigation still has to decide whether to approve the settlement of this case. Distribution of settlement benefits will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

QUESTIONS?  CALL 1-8xx-xxx-xxxx TOLL-FREE, OR VISIT www.xxxxxxxxxxxxx.com.

- 2 -

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ....................................................................................................................**4**
  1.  What is this lawsuit about?
  2.  Who is included in the Settlement Class?

**THE SETTLEMENT BENEFITS – WHAT YOU MAY GET** .......................................................**4**
  3.  Cash from the claim process.

**HOW YOU GET A CASH PAYMENT – SUBMITTING A CLAIM FORM**.......................... **4-5**
  4.  How can I get a payment?
  5.  How do I send in a claim?
  6.  When is the Claim Form due?
  7.  Who decides my claim?
  8.  When would I get my payment?
  9.  What if the fund is too small?
  10.  What happens if I do nothing at all?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ......................................................... **5-6**
  11. How do I get out of the settlement?

**THE LAWYERS REPRESENTING YOU** ................................................................................**6**
  12. Do I have lawyers in this case?
  13. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .................................................................................. **6-7**
  14. How do I tell the Court that I do not like the settlement?
  15. What is the difference between objecting and excluding?

**RELEASE OF CLASS MEMBERS' CLAIMS AND DISMISSAL OF LAWSUIT** ....................**7**
  16. In return for these benefits, what am I giving up?

**THE FINAL APPROVAL HEARING** .................................................................................... **7-8**
  17. When and where will the Court decide whether to approve the settlement?
  18. Do I have to come to the hearing?
  19. May I speak at the hearing?

**GETTING MORE INFORMATION** .........................................................................................**8**
  20. Are there more details about the settlement?

QUESTIONS?  CALL 1-8xx-xxx-xxxx TOLL-FREE, OR VISIT www.xxxxxxxxxxxx.com.

- 3 -

## BASIC INFORMATION

### 1.   What is this lawsuit about?

A proposed settlement has been reached in a class action lawsuit about the labelling, marketing, and advertising of Cumberland's Stevia in the Raw brand Consumer Products.  The two plaintiffs who filed the lawsuit allege the Stevia in the Raw brand Consumer Products are not "natural," "all natural" or "100% natural" and are inaccurately and deceptively labeled as so. Cumberland denies that its marketing, advertising, and/or labeling of the Stevia in the Raw Consumer Products is false, deceptive, or misleading to consumers or violates any legal requirement.

### 2.   Who is included in the Settlement Class?

You are a member of the Class of consumers on behalf of whom the Lawsuit was filed (a "Class member") if you purchased at least one Stevia in the Raw brand product containing the phrases "natural," "all natural" or "100% natural" in the United States between  October 9, 2009, and July 1, 2014.  Settlement Class Members must have both resided in the United States and purchased the product in the United States for their household use or personal consumption and not for resale or distribution.

The following persons are excluded from the Settlement Class: (a) Cumberland's board members, executive-level officers, and attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

## THE SETTLEMENT BENEFTIS – WHAT YOU MAY GET

### 3.   Cash from the claims process.

Cumberland will create a fund of up to $1,547,000 to pay Class Members' Claims, certain administrative costs, attorneys' fees and expenses, incentive awards, and other costs.  You may obtain a cash payment of up to $2 for each package of a Stevia in the Raw brand Consumer Product containing the phrases "natural," "all natural" or "100% natural" that you purchased between October 9, 2009 and July 1, 2014, up to a maximum of 8 packages.  The maximum cash payment is $16 per claimant.  The amount of your payment will depend on the statements in your Claim Form.  These awards may be subject to *pro rata* downward adjustment depending on the number of claims approved.  Details appear below.

## HOW YOU GET A CASH PAYMENT – SUBMITTING A CLAIM FORM

### 4.   How can I get a payment?

You must return a Claim Form to get a cash payment.  A copy of the Claim Form is included in this Notice Package.  Claim Forms may be filed online at www.xxxxxxxxxxxxxxxxxxxxxxxxxx.com or you may request a Claim Form by calling 1-8xx-xxx--xxxx.

### 5.   How do I send in a claim?

The Claim Forms are simple and easy to complete.

The Claim Form requires that you provide:

1.        Your name and mailing address;

---

QUESTIONS?  CALL 1-8xx-xxx-xxxx TOLL-FREE, OR VISIT www.xxxxxxxxxxxxx.com.

- 4 -

2.      The number and type(s) of Stevia in the Raw brand products you purchased, and the location(s) and approximate dates of your purchase(s); and

3.      Your signature affirming that the information provided is true and correct.

***Returning a Claim Form is the only way to receive a cash payment from this settlement.  Only one Claim Form is permitted for each household, and two or more claimants may not submit Claim Forms for the same alleged damage.***

The Claim Administrator may request verification or additional information if the Claim Form is insufficient to process your claim.  Failure to provide any requested documentation may result in the denial of your claim and may limit the remedy you receive.

### 6. When is the Claim Form due?

If you mail your Claim Form, it must be postmarked no later than [DATE].

If you submit your Claim Form on the settlement website at www.xxxxxxxxxxxxxxxxxxx.com, it must be submitted no later than [DATE].

### 7.   Who decides my claim?

The Claim Forms will be reviewed by an independent Settlement Administrator according to criteria agreed to by the parties.

The Settlement Administrator may contact you or other persons listed in your Claim Form if he or she needs additional information or otherwise wants to verify information in your Claim Form.

### 8.   When would I get my payment?

The Court will hold a Final Fairness Hearing at ____ a.m./p.m. on _____ in _____, New York to decide whether to approve the settlement.  If the Court approves the settlement, after that there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  If there are no appeals or other delays, you should be sent your cash payment in approximately 60 days.

### 9.   What if the fund is too small?

If the total amount of timely and valid claims, is more than $880,000, the payments to Settlement Class Members will be reduced *pro rata* such that each claimant would receive proportionally less than the amount he or she claimed.

### 10. What happens if I do nothing at all?

You must return a Claim Form to receive a cash payment.  If you are a Class Member and you do nothing, you will get no money from the settlement, and, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Cumberland about the legal issues in this case.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 11. How do I get out of the settlement?

If you do not wish to be included in the Class and receive settlement benefits, you must send a letter to the Settlement Administrator stating that you want to be excluded from this lawsuit.  Be sure to include your name

and address and your signature.  You must mail your exclusion request post-marked no later than [DATE] to:

STEVIA IN THE RAW SETTLEMENT
c/o Dahl Administration
P.O. Box 3614
Minneapolis, MN 55403-0614

If you asked to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit.  You may be able to sue (or continue to sue) Cumberland in the future.

If you have a pending lawsuit against Cumberland, speak to your lawyer immediately.  You may need to exclude yourself from this lawsuit in order to continue your own lawsuit.  Remember, the exclusion date is [DATE].

**THE LAWYERS REPRESENTING YOU**

**12. Do I have lawyers in this case?**

The Court appointed the law firms of Reese LLP and Halunen Law to represent you and other class members.  These lawyers are called Class Counsel.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**13. How will the lawyers be paid?**

Class Counsel will ask the Court to award them attorneys' fees and expenses.  Cumberland has agreed to pay attorney's fees and expenses awarded by the Court up to $450,000.

The two plaintiffs will also ask the Court to award them an amount not to exceed $3,500 each for their time and effort acting as plaintiffs and for their willingness to bring this litigation and act on behalf of consumers.  These amounts, if approved by the Court, will be paid from the Settlement Fund.

The costs to administer the settlement, to review Claim Forms, and notify Class Members about this Settlement will be paid out of the Settlement Fund, up to $210,000.

**OBJECTING TO THE SETTLEMENT**

**14. How do I tell the Court that I do not like the settlement?**

If you are a Class Member, you can object to the settlement if you do not like any part of it and the Court will consider your views.  To object, you must file an objection with the Court saying that you object to the settlement in *Frohberg, et al. v. Cumberland Packing Corp.*, No. 1:14-cv-00748-KAM-RLM (E.D.N.Y.).  The written objection must include: (a) your name, address, email address, and phone number, or the address and phone number of any attorney you have hired; (b) a clear and concise statement of your objection, the facts supporting your objection, and the legal grounds for your objection; and (c) documents to establish your standing as a Settlement Class Member, such as (i) a signed declaration with language similar to that included in the Claim Form you purchased at least one Stevia in the Raw product during the Class Period; or (ii) receipt(s) reflecting such purchase(s).  Objections must also include a detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous 5 years.

If an objecting Settlement Class Member chooses to appear at the hearing, no later than 15 days before the Fairness Hearing, a Notice of Intention to Appear must be filed with the Court and list the name, address and telephone number of the attorney, if any, who will appear.

The objection must be filed with the Court and served on Class Counsel no later than [DATE].  Send your objection to:

Civil Action No. 1:14-cv-00748-KAM-RLM
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Michael R. Reese
Reese LLP
100 West 93rd Street, 16th Floor
New York, New York 10025

Melissa W. Wolchansky
Halunen Law
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Richard R. Spirra
Gordon & Rees Scully Mansukhani
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **15.** | **What is the difference between objecting and excluding?** |
|---|---|

Objecting is telling the Court that you do not like something about the settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you do not want to be part of the Class or the lawsuit.  You cannot request exclusion **and** object to the settlement.  If you exclude yourself, you have no basis to object because the case no longer affects you.

**RELEASE OF CLASS MEMBERS' CLAIMS AND DISMISSAL OF LAWSUIT**

| **16.** | **In return for these benefits, what am I giving up?** |
|---|---|

If the Court approves the proposed Settlement, and you do not request to be excluded from the Class, you will be deemed to have  released (given up) all claims that are subject to the Releases contained in Section VII of the Class Action Settlement Agreement.  **If you remain in the Class, you may not assert any of those claims in any other lawsuit or proceeding.  This includes any other lawsuit or proceeding already in progress.**

**THE FINAL APPROVAL HEARING**

QUESTIONS?  CALL 1-8xx-xxx-xxxx TOLL-FREE, OR VISIT www.xxxxxxxxxxxxx.com.

- 7 -

| **17.** | **When and where will the Court decide whether to approve the settlement?** |

The Judge will hold a Final Approval Hearing at [TIME] on [DATE] at the United States District Court for the Eastern District of New York, [COURT ADDRESS].  At this hearing, the Judge will consider whether the settlement is fair, reasonable and adequate.  If there are objections, the Judge will consider them. The Judge will listen to people who have asked to speak at the hearing.  After the hearing, the Judge will decide whether to approve the settlement.  We do not know how long this decision will take.

| **18.** | **Do I have to come to the hearing?** |

No.  Class Counsel will answer questions the Judge may have.  But, you are welcome to come at your own expense.  If you submit an objection, you do not have to come to the Court to talk about it.  As long as you deliver your written objection on time, the Judge will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

| **19.** | **May I speak at the hearing?** |

You may ask the Court for permission to speak at the Final Approval Hearing.  To do so, you must file with the Court a "Notice of Intention to Appear in *Frohberg, et al. v. Cumberland Packing Corp.*, No. 1:14-cv-00748-KAM-RLM (E.D.N.Y.)." Be sure to include the name, address and telephone number of the attorney, if any, who will appear.  Your Notice of Intention to Appear must be filed with the Court no later than [DATE].

## GETTING MORE INFORMATION

| **20. Are there more details about the settlement?** |

This notice summarizes the proposed settlement.  More details are in the Class Settlement Agreement.  You can get a copy of the Class Action Settlement Agreement by writing to the Settlement Administrator or online at www.xxxxxxxxxxxxx.com.

If you have questions about how to complete a Claim Form, you can call the Claim Administrator at 1-8xx-xxx-xxxx.


**PLEASE DO NOT CALL OR WRITE TO THE COURT FOR INFORMATION OR ADVICE.**



/s/ [JUDGE'S NAME]


BY ORDER OF THE U.S. DISTRICT COURT
DATED:                                                    EASTERN DISTRICT OF NEW YORK

_____

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LESLIE FROHBERG, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

CUMBERLAND PACKING CORP.,

Defendant.

Case No. 1:14-cv-00748-KAM-RLM

## AFFIDAVIT OF JEFFREY D. DAHL WITH RESPECT TO SETTLEMENT NOTICE PLAN

I, Jeffrey D. Dahl, being duly sworn and deposed, say:

1.     I am over 21 years of age and am not a party to this action.   This affidavit is based on my personal knowledge, information provided by the staff of Dahl Administration, LLC ("Dahl"), and information provided by Dahl's media partners.  If called as a witness, I could and would testify competently to the facts stated herein.

2.     I am Founder and a Principal of Dahl, which has been retained as the Notice Administrator and Settlement Administrator for the above-captioned action. I am a nationally-recognized expert with over 22 years of experience in class action settlement administration.  I have provided claims administration services and notice plans for more than 500 class actions involving securities, product liability, fraud, property, employment and discrimination.  I have experience in all areas of

1

settlement administration including notification, claims processing and distribution. I have also served as a Distribution Fund Administrator for the U.S. Securities and Exchange Commission.

3.     A true and correct copy of Dahl's firm background is attached hereto as Exhibit 1.

4.     I designed the Notice Plan for the Settlement in the above-captioned action. I am responsible for directing Dahl's execution of the Notice Plan.

5.     This affidavit describes (a) the methodology used to create the proposed Notice Plan; (b) the proposed Notice Plan; (c) the Notice design; (d) the direct mailed Notice; (e) the web-based Notice; (f) the web-based Notice targeted using keyword search terms; (g) the web-based Notice targeted using social media interest areas; (h) earned media; (i) the toll-free helpline; and (j) the Settlement website.

## METHODOLOGY

6.     Working with our media partner, FRWD, I designed a Notice Plan that utilizes mail, print, and web-based media to reach Settlement Class Members. In formulating the Notice Plan, we took account of the powerful data showing that individuals now spend far more time seeking and consuming information on the Internet than from print sources, and we will employ sophisticated methods of reaching and exposing Settlement Class Members to the Notice that are available to marketers in the digital, online sphere.

7.     A true and correct copy of the Affidavit of John Grudnowski, the founder and CEO of FRWD, is attached hereto as Exhibit 2.

8.     The Affidavit of John Grudnowski in Support of the Settlement Notice Plan provides detailed information regarding online advertising in general and describes in detail the digital media technologies that are integral to the design and execution of the proposed Notice Plan.

9.     The proposed Notice Plan uses methods that have been and are currently used by the nation's largest advertising media departments to target and place billions of dollars in advertising.  These methods include the sophisticated targeting capabilities of digital marketing technologies to meet and reach Settlement Class Members at the websites they visit most frequently.

## PROPOSED NOTICE PLAN

10.     The objective of the proposed Notice Plan is to provide notice of the Proposed Settlement to members of the Proposed Settlement Class ("Settlement Class Members" or "Class") that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

11.     I understand that the Settlement Class Members generally are persons residing in the United States who made a purchase of Stevia in the Raw products in the United States for their household use or personal consumption and not for resale or distribution during the Class Period.  It is not possible to determine the exact Settlement Class size because no mechanism exists to track exactly how many households have purchased Stevia in the Raw products. Defendant estimates that

there are approximately two million consumers who purchased Stevia in the Raw during the class period.  Estimates from GfK MRI indicate that the total consumer target audience matching the demographic profile of Stevia in the Raw consumers numbers 40 million persons.  Research also indicates that the population of core sweetener consumers in the United States numbers 17 million persons.

12.     Thus, the best ballpark estimate for the size of the target audience that includes the members of the Settlement Class is approximately 17 million persons.

13.     Demographically, the Settlement Class is estimated to be 70% female and 30% male.  Sixty percent (60%) of the Settlement Class are age 45 or older.  Forty-two percent (42%) have an annual household income of $60,000 or higher, 41% are not employed, and 84% are Caucasian.  In terms of media consumption behavior, 66.7% show moderate to high internet usage, 86% use search engines frequently, and 63% are active Facebook users.  Using the demographic and psychographic information above, we have designed this Notice Plan to target a selection of websites, relevant search interest keywords, and specific social media interest areas that match the characteristics of the Settlement Class.  Dahl will seek to meet with Cumberland Packaging Corp. ("Cumberland") representatives to confirm the characteristics of the Settlement Class, based upon known characteristics of Stevia in the Raw purchasers and known locations of purchases.  This Notice Plan will be aligned with any relevant targeting information provided by Cumberland for the Stevia in the Raw brand.

14.     We have designed a Notice Plan that includes seven elements:

4

a.      Direct mail or email Notice to any potential Settlement Class Members that can be identified from Cumberland's records;

b.      Web-based Notice using paid banner ads on targeted websites;

c.      Additional web-based Notice using "keyword" searches displaying banner ads;

d.      Social media ads and postings targeting relevant interest areas;

e.      National earned media through the issuing of a press release distributed nationwide through PR Newswire;

f.      A dedicated, informational website through which Settlement Class Members can obtain more detailed information about the Settlement and access the Notice and case documents; and

g.      A toll-free telephone helpline by which Settlement Class Members can obtain additional information about the Settlement and request a copy of the Notice.

15.     The Notice Plan has been designed to obtain over 68 million individual digital impressions targeted to approximately 17 million persons in order to achieve sufficient scale and impression frequency to target Settlement Class Members.  Coverage and exposure will be further increased by the earned media campaign, the website, and the toll-free helpline.

16.     Dahl and FRWD estimate that the Notice Plan will effectively reach 75% of the projected 17 million target audience of core sweetener users at 3.0x-4.0x frequency.

5

17.     At the conclusion of the Notice Plan, Dahl will provide a final report verifying implementation of the Notice Plan and provide the final reach and frequency results.

## NOTICE DESIGN

18.     Rule 23(c)(2) of the Federal Rules of Civil Procedure requires that class action notices be written in "plain, easily understood language."  The proposed Notices have been designed to be noticed, read, and understood by potential Settlement Class Members.  Both the Summary Notice and the Long Form Notice, which will be available to those who call the toll-free helpline or visit the website, contain substantial, easy-to-understand descriptions containing all key information about the Settlement and Settlement Class Members' rights and options.  A copy of the proposed Summary Notice is attached to the Settlement Agreement as Exhibit D.   A copy of the proposed Long Form Notice is attached to the Settlement Agreement as Exhibit B.

## DIRECT MAILED NOTICE

19.     Upon Preliminary Approval, Cumberland will provide Dahl with the names and addresses or email addresses for approximately 200 persons who are potential Settlement Class Members for whom contact information is available. Dahl will mail a Long-Form Notice and Claim Form or email a Summary Notice to each of these individuals.

## WEB-BASED NOTICE

20.     To reach as many of Settlement Class Members as possible, a web-based notice campaign utilizing banner-style notices with a link to the Settlement website will supplement the print notice.  Banner notices measuring 728 x 90 pixels and 300 x 250 pixels will appear on a subset of two groups of websites known as the FRWD Foodie Channel and Reach Channel.  The Reach Channel provides placements across the top 2,000 most trafficked websites, and provides the ability to reach the Settlement Class.  The Foodie Channel provides placement across the top food, recipe, and related websites and provides higher-impact and more contextually-relevant placements with regard to this Settlement Class.  The banner notices will run on websites when the site's demographics match our target audience.

21.     A true and correct list of the website domains that are included in the FRWD Reach Channel and Foodie Channel and will be utilized in this Notice campaign is attached hereto as Exhibit 3.

22.     True and correct samples of the banner ads that will be placed are attached hereto as Exhibit 4.

23.     The Grudnowski Affidavit attached as Exhibit 2 provides more detailed information about the technologies and methods that we will use to implement and track this component of the Notice Plan.

## USING KEYWORD SEARCH TERMS

24.     The proposed Notice Plan will include banner ads targeted to display in response to the entry of specific keywords related to Stevia in the Raw products and other similar products and interests on major search engine websites, including the keywords "Stevia Class Action," "Stevia Case," "Stevia in the Raw," "Stevia Lawsuit," "Stevia in the Raw Settlement," and other similar terms.

## USING SOCIAL MEDIA INTEREST AREAS

25.     The proposed Plan will include banner ads that will be displayed to users of the Facebook social media network.  These banner ads will appear on Facebook web pages displayed to Facebook users who have previously expressed interest using Facebook "Likes" and otherwise in areas such as  "Stevia," and in sweetener brands such as "Truvia," "Sweet & Low," "Equal," etc.  In previous consumer product class action settlement notification plans, this method of targeting has led to significant increases in overall claims.

## EARNED MEDIA

26.     The proposed Notice Plan will also include earned media to supplement the paid media portion of the Plan and will be targeted to a national audience.  "Earned media" refers to promotional efforts outside of direct, paid media placement.  The earned media efforts will provide additional notice of the Settlement to potential Settlement Class Members, though the effect is not measurable as it is with the impressions accumulated with the paid media portion of the Notice campaign.

8

27.     Concurrent with the launch of the online Notices, Dahl will release a national press release via PR Newswire.  The press release will be distributed by PR Newswire to 5,815 newspapers, television stations, radio stations and magazines. In addition, PR Newswire will send the press release to approximately 5,400 websites and online databases, including all major search engines.

28.     A true and correct copy of the text of the proposed press release is attached hereto as Exhibit 5.

## TOLL-FREE HELPLINE

29.     Prior to the launch of the print and web-based media campaigns, Dahl will also establish a toll-free Settlement helpline to assist potential Settlement Class Members and any other persons seeking information about the Settlement.  The helpline will be fully automated and will operate 24 hours per day, seven days per week.  Callers will also have the option to leave a message in order to speak with the Settlement Administrator.

30.     The toll-free helpline will include a voice response system that allows callers to listen to general information about the Settlement, listen to responses to frequently asked questions ("FAQs"), or request a Long-Form Notice.

31.     Dahl will work with Counsel to prepare responses to the FAQs to provide accurate answers to anticipated questions about the Settlement.

## SETTLEMENT WEBSITE

32.     Prior to the launch of the print and web-based media campaigns, Dahl will coordinate and integrate into the Notice Plan a Settlement website at www.SteviaInTheRawSettlement.com.

33.     Dahl will work with Counsel to develop the content for the Settlement website.   The website will provide Settlement Class Members with general information about the Settlement, answers to frequently asked questions, a means to submit an electronic Claim Form or download a Claim Form, important dates and deadline information, a summary of Settlement benefits, a means by which to review and print copies of certain Settlement documents (including the Long Form Notice), and a link to contact the Settlement Administrator via email.

## CONCLUSION

34.     The objective of the Notice program is to reach the highest possible percentage of potential Class Members, provide them with meaningful information to help them understand their legal rights and options under the terms of the settlement and provide a simple, open and easy method for them to file claims for settlement benefits.

35.     It is my opinion that the proposed Notice Plan, by producing more than 68 million digital impressions that are targeted using methods universally employed in the advertising industry at persons that match characteristics of Earth Friendly Product purchasers – and thus the Settlement Class – provides sufficient Notice to the members of the Settlement Class.

36.     It is also my opinion that the proposed Notice Plan is fully compliant with Rule 23 of the Federal Rules of Civil Procedure and meets the notice guidelines established by the Federal Judicial Center's Manual for Complex Litigation, 4th Edition (2004), as well the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), and is consistent with notice programs approved previously by both State and Federal Courts.

## **EXHIBITS**

37.     Attached hereto are true and correct copies of the following exhibits:

Exhibit 1:     Background information on Dahl Administration

Exhibit 2:     Affidavit of John Grudnowski in Support of the Settlement Notice Plan

Exhibit 3:     List of Websites on which Banner Ads may be placed

Exhibit 4:     Sample Banner Ads

Exhibit 5:     Press Release text

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.  Executed this 7th day of October, 2015 in Minneapolis, Minnesota.

_____

Jeffrey D. Dahl
Founder and Principal
Dahl Administration, LLC

Sworn to and Subscribed before me this ___ day of October, 2015.

_____
Notary Public



JOANNA ARTIG
Notary Public
State of Minnesota
My Commission Expires
January 31, 2019

11

# EXHIBIT 1



# Firm Information
# and Selected References

**P 952.562.3600** • 6465 Wayzata Boulevard Suite 420 • Minneapolis MN 55426 • **www.dahladministration.com**

# OUR FIRM



**OUR FIRM**

## OUR HISTORY

After more than 15 years of experience managing hundreds of settlements and distributing billions in settlement benefits, Jeff and Kristin returned to their roots as hands-on administrators providing innovative and cost-effective solutions. They created Dahl Administration to provide responsible, accountable, and transparent settlement administration services, and to become a trusted resource for class action counsel nationwide.

Dahl Administration has a history that stretches back to the beginnings of the class action settlement administration industry. Jeff Dahl was a founding partner of Rust Consulting and Kristin Dahl was Rust's second employee. During their time with Rust, the firm managed over 2,000 class action settlements.

Jeff and Kristin built Dahl Administration from the ground-up to provide the kind of service and expertise that complex claims administration projects demand, something that is too often lost within the corporate overhead and "turn-key solutions" that come with very large administrators. To do this, Dahl Administration combines advanced claims processing technology with expert project teams that are 100% focused on meeting client needs. This project team approach eliminates departmental "silos" that lack overall understanding of a client's project needs and lose the ability to communicate effectively when issues arise.

To focus on client needs, Jeff and Kristin created an organization that produces truly custom solutions, where project managers and principals actually answer their phones and emails, employees are empowered to resolve issues, and team members proactively communicate with clients to eliminate unwelcome surprises. The same people that consult and generate project proposals also attend weekly project update meetings and actively manage project work. This continuity ensures that project execution and costs meet or exceed the standards set in the proposal.

Dahl Administration is a full-service provider, with a staff of professionals experienced in class action administration, direct and media notice, process development, document and script development, data and image capture, claims processing, quality control review, accounting, project management, software development, and distribution. We also have sophisticated technology resources in place to implement solutions of any size and any level of complexity.

We are committed to managing successful projects that are completed on time, on budget, and with the highest level of quality in the industry.



**OUR FIRM**

**OUR PHILOSOPHY**

## Dahl's 6 Key Principles:

**Accountable**
We are experts at what we do. When you hire us the work is done correctly and we stand behind it. No exceptions.

- **Immediate Resolution**
  When issues arise, we fix them. Dahl principals are actively involved in day-to-day client support and project management.

- **Project Team Responsibility**
  Our project managers are empowered to make decisions and resolve issues directly, guided by Dahl principals who actively monitor every project.

- **True Real-time Quality Assurance**
  We perform quality reviews continuously within the project processing cycle, not through a generic, detached auditing function.

**Responsive**
Nothing is more frustrating than having issues arise and no one will answer the phone or respond to an email. Our managers and principals are required to answer their phone and check their email 24/7. We want you to call our mobile numbers in an emergency, that's why we give them to you. You can always call our president and he will be happy to assist you. We don't just say this, we do it.

- **Online, All the Time**
  We answer the telephone. We know your time is money, so when you have an issue, you can call or email your project manager, your project principal, or the company president to get it resolved promptly – day or night.

- **Empowered, Knowledgeable Staff**
  We don't forward you to different departments or park your issue with a ticketing system. Your assigned project manager is knowledgeable and empowered to provide solutions on your project. If they don't know the answer, they will get it – promptly and willingly.

- **Client Relationships Drive Our Business**
  We are about you. We strive to develop a long-term, successful partnership with you.



**OUR FIRM**

**Technology-Driven**

Sometimes it takes a custom technology solution to meet a unique settlement administration challenge. We have a dedicated information technology staff and a full menu of technology services to offer our clients. Whether you need a secure web-based claims submission portal, a custom IVR phone solution, innovative web-based class notice, or anything else, we will work with you to build the solution that works for your settlement and your budget.

- **Advanced Capabilities**
  We offer advanced print and mail solutions, custom IVR phone technology, online filing, "Quick Site" claim image access for clients, high-speed scanning, and flexible fund distribution alternatives.

- **Data Security**
  We provide secure physical facilities, proven technical infrastructure, and information-handling procedures to protect sensitive data.

- **Custom Technical Solutions**
  We custom configure solutions for each project, so you get innovative claims processing workflow that fits your needs.

- **Capacity and Sophistication**
  We have dedicated information technology staff and a high-capacity technology environment to support any size or type of case.

**Affordable**

In today's economic times, price is always a factor. At Dahl, we have eliminated a lot of unnecessary overhead by focusing our staffing on project-based needs. Dahl employees work on projects. This allows us to keep rates low and stay focused on our clients.

- **Best Service at the Best Price**
  We provide innovative and efficient services designed to administer your project correctly and cost-effectively.

- **Nimble and Right Sized**
  We have project-based teams focused on your case solutions. All of our employees do project work, eliminating non-essential corporate overhead.



**OUR FIRM**

## Custom Solutions

We don't provide 'turn-key' processing solutions. Over the years, we have found that our clients expect more from us. We customize our solutions to meet our clients' varied expectations and do it at a 'turn-key' price.

- **True Customization**
  We deploy our expertise and tools to fit your project's needs.

- **Your Project Your Way**
  We don't force your project into our process, we adjust our process to meet your requirements.

- **Adjustable and Adaptable**
  We are nimble and proactive, enabling us to make real-time processing changes to meet your deadlines and requirements.

## No Surprises

You should not have to deal with missed deadlines or surprise invoices that far exceed proposed costs. We anticipate issues and stay on top of your settlement schedule for you. Weekly processing updates and monthly budget updates eliminate unpleasant surprises. Clients tell us that their "no surprises" experience with Dahl is what keeps them coming back again and again.

- **Every Project Every Day**
  We anticipate issues. Our "every project, every day" philosophy means our project team is on top of your schedule and proactively addressing any issues.

- **Consistent Reporting**
  We deliver weekly processing updates and monthly budget updates on every project.

- **Active Communication**
  Our principals and project managers proactively track changes in project dynamics and communicate any issues to you



**OUR FIRM**

## OUR SERVICES

Dahl provides project management and settlement distribution services to attorneys, distribution agents, special masters, governmental agencies, and the courts.

Our services include:

- Settlement Administration Planning and Design
- Management Team
- Project Management
- Cost Analysis
- Pre-Settlement Consultation
- Claimant Notification
- Innovative Notice Planning and Execution
- Claim Document Development and Layout
- Website and Call Center Services
- Claimant Communication
- CAFA Notice
- Document Imaging and Data Capture
- Claim Evaluation and Processing
- Reporting
- Quality Assurance Review
- Problem Identification and Resolution
- Distribution Management



**OUR FIRM**

**INNOVATIVE NOTICE PLANNING AND EXECUTION**

Change in the media landscape is accelerating and it is imperative that class action notification planning and execution reflect these changes. More people are now consuming news media via Internet sources than are reading even the most recognized print publications. Given this sea change, it no longer makes sense for class action notification plans to reflexively purchase print advertisements in the same leading national or regional print publications without considering the reality of where class members are directing the bulk of their attention. Print publication still has its place, often as a supplementary notice tactic, but that place will be less and less as the primary method of reaching unidentified class members.

With over 22 years of experience in class action notice and claims administration, Jeff Dahl recognized that class action notice plans were insufficiently utilizing the newly-available tools from the Internet marketing and communications industry. To fill this gap, Dahl Administration reached out to a leading digital marketing agency, FRWD, to develop best practices in applying digital media strategies and execution programs to the class action notification arena. The premise is simple:  reach class members using the same digital media tools that FRWD's clients—brands such as 3M, Coca-Cola, Best Buy, Proctor & Gamble, General Mills and more—use to reach their own customers. In planning to provide "the best notice that is practicable under the circumstances" it is no longer acceptable to ignore the digital sphere where class members are now spending the bulk of their media consumption time and attention.

Dahl has deep experience in class action notification, and Dahl handles individual notice planning and execution more efficiently than anyone in the industry. Whether the case involves direct postal mail or email, Dahl will handle the data cleansing, returned mail and tracing, and other standard or custom procedures such that as many of the reasonably identifiable class members get notice of the litigation as possible.

When it comes to publication notice, the Dahl-FRWD approach diverges from the rest of the class action notification industry.

- We reach class members using the same strategies and tactics that leading advertisers would use to reach the same target audience as customers.

- Where feasible, we meet with marketing staff from the defendant(s) along with plaintiff and defense counsel to determine customer demographic and psychographic profiles.
- The logic is unassailable:  where defendants have developed highly sophisticated knowledge about their customers and prospective customers, the class action notice process should seek out this knowledge and put it to use.



**OUR FIRM**

- Too often, this approach is overlooked in favor of the same print publication placements and, sometimes, a scattershot web banner ad campaign directed only by the broadest of demographic profiles.

## Targeting

First, we validate targeting parameters and align media buying with all parties.  This process includes hand selecting specific website domains, print publications, geographic targeting, audience interest targeting, and more.  By bringing the parties into the process, we are able to align more specifically on targeting needs and expectations in notification.

## Technology

Second, we begin technology systems alignment.  In delivering a modern notification plan, multiple technical systems must be aligned. This is done to ensure accuracy in delivery of media as well as verifying that delivery met expectations. In typical notification planning Dahl-FRWD will leverage data collection, ad serving, and verification technologies.  In parallel with finalizing media, Dahl-FRWD will install and set up all needed technology.  In a recent matter where U.S. nationwide notification was required, we structured 50 unique campaigns to ensure proper distribution and verification of notice in each U.S. state.  This often overlooked step is vital to ensuring proper notification as Dahl-FRWD can verify reach by state, country, and region.  Any notification plan overlooking this step is simply not leveraging available technology to the best practices level.

## Execution

The Dahl-FRWD approach involves much more than the mere use of "industry-standard methodology" for the placement of web banner ads.  In fact, class action notice "experts" often settle for buying blocks of surplus banner ads from wholesalers.  Our goal is to use the same targeting and execution methodology that leading brands use to reach their own customers when we seek to reach those same persons in their capacity as class members.  Our methodology of media planning and buying leads to greater accuracy, quality and control of media. The cost advantage is typically 20% to 30%, meaning we can typically reach 20% to 30% greater population base at the same media cost as traditional media notice plans.

# OUR PEOPLE

## CHRISTOPHER LONGLEY
President

Chris is President of Dahl Administration. A former practicing attorney for the Minneapolis law firm of Hessian, McKasy & Soderberg, Chris has spent the last 25 years in the business sector.

Prior to joining Dahl, Chris was Managing Director and Vice President at SRS|Acquiom, a leading professional shareholder representative firm located in Denver and San Francisco. Prior to SRS Chris spent many years within Thomson Reuters running a global team focused on Mergers and Acquisitions.

A successful entrepreneur, Chris was part of the founding team of 10 start-up companies, and spent 11 years as Vice President of Business Development at a mid-size private equity firm in Minneapolis, where he ran sales and marketing operations for various portfolio companies from Florida to Ankara, Turkey.

Chris graduated from William Mitchell College of Law, and the University of St. Thomas. He is admitted to practice in Minnesota, The 8th circuit and the United States Supreme Court.

## JEFF DAHL
Founder and Principal

Jeff co-founded Dahl Administration, LLC in early 2008 and was previously a founding partner and co-owner at Rust Consulting, Inc., one of the two largest class action claims administration firms in the country.

Jeff is a noted expert in all areas of settlement administration including notification, claims processing and distribution.  He is known for providing innovative solutions to resolve complex project issues.

Jeff was the court-appointed Neutral Expert tasked with providing final claim determinations for a $176 million settlement in Rhode Island, involving over 300 victims of a 2003 nightclub fire.

He served as the distribution agent for the U.S. Securities and Exchange Commission's $350 million settlement with Fannie Mae.

During Jeff's 19-year career with Dahl and Rust Consulting, his firms provided claims administration services for over 2,000 class action and regulated settlements including the $1.1 billion Microsoft California settlement; the $950 million PB Pipe settlement; the $850 million Masonite siding and roofing settlement; and they distributed over $2 billion from U.S. Securities & Exchange Commission Fair Funds.

Jeff graduated from Concordia College-Moorhead with a Bachelor of Arts degree in Business Administration and is a Certified Public Accountant.

**JOHN GRUDNOWSKI**
Media Expert

In May 2009, John founded FRWD. He brings 18 plus years of PR and digital marketing services experience that he gained over the course of his career at Accenture, General Mills, Carmichael Lynch and Vail Resorts.  John has developed digital strategies, provided expert training, counseled and advised marketing executives, led internal client innovation teams and led execution teams for a variety of Fortune 1,000 clients including: American Express, Discovery, 3M, General Mills, Deluxe, Target, Best Buy, Sony Pictures, Dairy Queen, Starz Entertainment and Ameriprise.

Prior to founding FRWD, John founded and led the modern media practice at space150, a Twin-Cities based ad agency, as well as led agency business development supporting revenue growth from under $1MM to over $12MM in four years. John has also co-founded the Minneapolis-based i612 media organization, and has served on multiple digital-based start-up boards of directors.

**KRISTIN DAHL**
Principal

Kristin co-founded Dahl Administration, LLC and leads the project management group.

She has worked on three U.S. Securities and Exchange Commission settlements including the $432 million Global Research Analyst Settlement, the $100 million HealthSouth Securities settlement, and the $26 million Banc of America Securities settlement on behalf of Distribution Fund Administrator Francis E. McGovern.

Kristin has eighteen years of project management experience solely in the field of class action claims administration.  In her career at both Dahl and Rust Consulting, she was the active project manager on over 150 settlements, including the groundbreaking Denny's race discrimination settlement during which over 1 million phone calls were answered and over 150,000 claims were processed.

Kristin holds a Bachelor of Science degree from the University of Wisconsin-River Falls.

**JEFF HOUDEK**
Director of Operations

Jeff Houdek is a Principal at Dahl and serves as Dahl's Director of Operations.  Among his duties is the management of the tax reporting function for Dahl's Qualified Settlement Funds.  A former Big 4 Auditor, he's built his career helping organizations develop effective and scalable accounting and operational systems to enable organizational growth while serving the needs of their customers.

Having worked in a number of heavily regulated industries, where both privacy and cost-effectiveness are paramount, he has helped with the design and development of several technology platforms and reporting applications.

Jeff is a graduate of St. John's University in Collegeville, Minnesota with Bachelor of Arts in Accounting.  A Certified Fraud Examiner, Jeff has also previously held CPA, Securities (FINRA) and Insurance licenses.

**NANCY BAKER**
Principal

Nancy is a Project Manager with over nine years' experience in securities and class action claims management. Prior to joining Dahl, Nancy was a project manager for Rust Consulting specializing in securities cases.  Nancy manages a variety of settlements for Dahl including property, insurance and consumer cases.  She also drafts notice documents, call scripts and other claimant communications for the firm's projects, handles our published notice campaigns, and coordinates special projects for clients. Nancy graduated with honors from Augsburg College with a Bachelor of Arts degree.

**KELLY KRATZ**
Principal

Kelly is a Senior Project Manager at Dahl with experience in the mortgage and financial services industries and more than eight years of Big 4 Public Accounting experience, including six years of consulting and project management, and two years of operations and resource management.  Prior to joining Dahl, Kelly worked as a tax consultant at Deloitte in the National Federal Tax Services Group managing numerous complex high-profile client engagements for several Fortune 100 companies, providing related project IRS audit defense, and preparing tax memorandums.

Kelly holds her Bachelor of Arts with a concentration in Financial Management from the University of St. Thomas.

**MARK FELLOWS**
Principal

Mark is an attorney whose work is focused on notice planning and project initialization for large or complex matters. He has particular expertise in drafting plain language notice and related documentation to comply with applicable legal standards. He also is experienced in working with counsel to create hybrid notice strategies using electronic media to meet due process standards in challenging situations.

He has more than ten years of experience serving as Legal Counsel and Manager of Legal Research and Education for a large claims adjudication and processing organization. Mark previously worked as a consultant in the data analytics and business intelligence industry. Mark earned his law degree from William Mitchell College of Law and his B.S. from Lewis and Clark College.

**DAN LEGIERSKI**
Principal

Dan Legierski is a Principal at Dahl who works closely with other Principals, Project Managers, and the Operations Team to ensure that our clients' needs are met. His professional experience includes over twenty years of effectively leveraging technology to better process legal, regulatory, and consumer claims.

Dan has spent time directing Finance/Accounting, Technology, and Operations Departments so he truly understands all aspects of claims processing and how the various functions work together to ensure quality and efficiency. During his tenure at Dahl, he has led the design and development of two major technology platforms that manage the administration of class action cases, promoting quality, accuracy, and cost effectiveness.

Dan graduated from the graduate Software Systems Program at the University of St. Thomas, and from St. Cloud State University with a Bachelors of Science in both Finance and Economics.

**DAVID HOFFMAN**
Vice President of Business Development

David Hoffman is National Director of Business Development at Dahl and is responsible for leading Dahl's efforts to provide expert consulting to aid clients in structuring the notice and claims administration processes. He has more than ten years of experience in providing consulting solutions to attorneys engaged in high-impact litigation. David takes pride in structuring engagement proposals for Dahl clients and prospective clients that accomplish settlement requirements as efficiently and reliably as possible. David studied Behavioral Science & Law at the University of Wisconsin at Madison and has actively pursued continuing education in client services and business development approaches from Miller-Heiman, FranklinCovey, Dale Carnegie, and others.

**BRYN BRIDLEY**

Project Initialization Manager

Serving as a Project Manager for more than five years, Bryn recently transitioned to the role of Project Initialization Manager. Bryn was a project manager for Rust Consulting prior to joining Dahl and has over nine years of experience in the claims administration industry. Bryn is responsible for the setup of each new Dahl project. After a thorough review of each project's case documents, she establishes a project timeline and works directly with Plaintiff and Defense Counsel to finalize notice documents, drafts telephone and website contents, cleanses data files for mailing, and transitions the project to the Dahl claims management team after notice is mailed.

Bryn graduated with honors from the University of Minnesota-Duluth with a Bachelor of Arts degree.

**SEAN COMBS**

Project Manager

Sean is a Project Manager with over eleven years' experience in consumer class action claims management. Prior to joining Dahl, Sean was a Project Coordinator for Rust Consulting, specializing in high volume claims processing and quality assurance.  Sean also has several years' experience in providing CAFA notice mailings.

**MAI O'BRION**

Project Manager

Mai became joined the team at Dahl Administration with over ten years of Project and Account Management experience in various industries from Translations and Marketing to Print and Manufacturing. Mai is experienced in quality control implementation and has worked with both ISO standards and Lean Six Sigma for over six years. She enjoys working on large, complex projects with Dahl and believes in an interactive project management style in which client communication and responsiveness is a key element in the success of the project.

Mai was a double major in Biology and English at the University of Minnesota where she was also the President of the student organization AASCC from 2000-2001.

**CARRIE O'CONNELL**
Project Manager

Carrie O'Connell joined the Dahl team after working for seven years as a Supervisor in a high-volume legal claim processing organization.   Carrie has eight years of experience in legal case management and quality control, which enables her to oversee a variety of settlements for Dahl and to lead our quality assurance team. Carrie earned a Bachelor of Science degree in History from Iowa State University and she received her Paralegal Certificate in 2004.

**ANN LINTON**
Project Manager

Ann joined Dahl after working for five years in the distribution business and was involved in chamber of commerce and a neighborhood business group. Previous to that she spent seven years working with juvenile delinquents at a day treatment program.

Ann earned a Masters in Social Work from Augsburg College and a Bachelors of Social Work from University of St. Thomas.

**JOHN SNYDER**
Director of Information Technology

John is the architect of Dahl's online claims portal, which allows parties to view and process cases over the internet using paperless workflow capabilities. He has over six years of information technology experience in legal claims processing and nearly 15 years of experience with information technology in general.

John possesses an MBA from the University of Minnesota Carlson School of Business and a law degree from the University of Wisconsin.

**GENNADIY KATSNELSON**
Web Interface/Custom Development

Gennadiy is a Software Developer and focuses primarily on web interface and custom software development.  He has more than 20 years of top-level website development, design and architecture experience.  His prior experience includes project management, website architecture, website design and hands-on development in which he successfully delivered large-scale systems to the market in a number of industries, including legal.  Gennadiy has knowledge and practical expertise in a wide range of software platforms and technologies. Gennadiy obtained a Masters Degree in Mathematics and Computer Science from Belarusian State University, Minsk, Belarus.

# OUR REFERENCES



**OUR REFERENCES**

### DEFENSE COUNSEL

| **JOHN F. WARD, JR.** | **MICHAEL T. BRODY** | **NEIL M. BAROFSKY** |
|---|---|---|
| Partner, Jenner & Block LLP | Partner, Jenner & Block LLP | Partner, Jenner & Block LLP |

John Ward and Michael Brody are Defense counsel for the Hertz/ATS/PlatePass settlement (Ward) and the Hertz Equipment Rental Corporation LDW settlement (Brody). Neil Barofsky is Defense counsel representing CashCall in settlements between individual states and a consumer lender and related entities.

Jenner & Block
353 N. Clark Street
Chicago, IL  60654-3456

Jenner & Block
919 Third Avenue
New York, NY  10022-3908

John F. Ward, Jr.
Work: (312) 923-2650
jward@jenner.com

Michael T. Brody
Work: (312) 923-2711
mbrody@jenner.com

Neil M. Barofsky
Work: (212) 891-1675
nbarofsky@jenner.com

---

**BRIAN R. ENGLAND**
Special Counsel, Sullivan & Cromwell LLP

Defense counsel for Philips BPA settlement and Philips TV settlement.

Sullivan & Cromwell LLP
1888 Century Park East
Los Angeles, CA 90067-1725

Brian R. England
Work: (310) 712-6672
englandb@sullcrom.com

---

| **MARCI A. EISENSTEIN** | **PAULA J. MORENCY** |
|---|---|
| Partner, Schiff Hardin LLP | Partner, Schiff Hardin LLP |

Marci Eisenstein is Defense counsel in the Twin City Fire Insurance/Hartford Insurance settlement. Paula Morency is Defense counsel in the Suave 30-Day Smoothing Kit settlement.

Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606-6473

Marci A. Eisenstein
Work: (312) 258-5545
meisenstein@schiffhardin.com

Paula J. Morency
Work: (312) 258-5549
pmorency@schiffhardin.com



**OUR REFERENCES**

**DEFENSE COUNSEL, CONTINUED**

**BRYAN O. BALOGH**
Partner, Burr & Forman LLP

Defense counsel in the Janoka v. Veolia Environmental Services settlement.

Burr & Forman LLP                          Bryan Balogh
420 North 20th Street                      Work: (205) 458-5469
Suite 3400                                 bbalogh@burr.com
Birmingham, AL 35203


**WHITTY SOMVICHIAN**
Partner, Cooley LLP

Defense counsel representing eBay in the eBay Mobile and eBay Featured Plus settlements.

Cooley LLP                                 Whitty Somvichian
101 California Street                      Work: (415) 693-2061
5th Floor                                  wsomvichian@cooley.com
San Francisco, CA 94111-5800


**ELIZABETH B. McREE**
Partner, Jones Day

Defense counsel representing Verizon in the Coie v. Verizon settlement.

Jones Day                                  Liz McRee
77 West Wacker                             Work: (312) 269-4374
Chicago, IL  60601-1692                    emcree@jonesday.com



**OUR REFERENCES**

**PLAINTIFF COUNSEL**

### JOE KRONAWITTER
Partner, Horn Aylward & Bandy, LLC

Plaintiff counsel for the In Re: Motor Fuel Sales Practices Litigation settlements.

Horn Aylward & Bandy, LLC                    Joe Kronawitter
2600 Grand Boulevard, Suite 1100             Work: (816) 421-0700
Kansas City, MO 64108                        jkronawitter@hab-law.com

### RALPH K. PHALEN                          MITCHELL L. BURGESS

Class co-counsel in numerous settlements administered by Dahl Administration.

Ralph K. Phalen, Esquire
Burgess & Lamb PC
1000 Broadway Street
Suite 400
Kansas City, MO 64105

Ralph K. Phalen                              Mitchell L. Burgess
Work: (816) 787-1626                         Work: (816) 471-1700
phalenlaw@yahoo.com                          mitch@burgessandlamb.com

### MARK S. MANDELL
Partner, Mandell, Schwartz & Bosclair, Ltd.

Lead Plaintiff Counsel for the Station Nightclub Fire settlement.

Mandell, Schwartz & Boisclair, Ltd.          Mark S. Mandell
One Park Row                                 Work: (401) 273-8330
Providence, RI 02903                         msmandell@msn.com



**OUR REFERENCES**

**PLAINTIFF COUNSEL, CONTINUED**

**STEVEN JAFFE**
Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.

Class Counsel in the Appel v. Liberty American Insurance Company settlement.

Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.     Work: (214) 231-0555
425 North Andrews Avenue
Fort Lauderdale, FL 33301

**CHRISTOPHER S. POLASZEK**
Morgan & Morgan

Class Counsel in the Suave 30-Day Smoothing Kit settlement.

Morgan & Morgan                          Chris Polaszek
201 N. Franklin Street                   Work: 813-223-5505
7th Floor                                cpolaszek@forthepeople.com
Tampa, Florida 33602

**MICHAEL COREN**
Cohen, Placitella & Roth, PC

Class Counsel in the Bower v. MetLife settlement.

Cohen, Placitella & Roth, PC             Michael Coren
Two Commerce Square                      Work: 215-567-3500
Suite 2900                               mcoren@cprlaw.com
Philadelphia, PA  19103

# SELECTED CASES



**OUR CASES**

---

### STATION NIGHTCLUB FIRE SETTLEMENT - $176 MILLION

Dahl staff provided onsite claim evaluation services at 11 law firms in Providence, Rhode Island to determine claim validity and final claim values for over 300 death and personal injury claims. The review included analysis of authority documents and medical records by a staff of Registered Nurses and senior level project managers.  Jeff Dahl is the court-appointed Neutral Expert responsible for final determinations of all claims for this settlement.

Lead Counsel:  Mark S. Mandell, Law firm of Mandell, Schwartz & Boisclair, Providence, RI

---

### VEOLIA CLASS SETTLEMENT - 1.2 MILLION COMPLEX DATA RECORDS PROCESSED

Dahl was selected to provide Class Notice and Distribution for the Janoka v. Veolia Environmental Services class action.  Dahl analyzed and processed over 1.2 million complex data records, mailed notice to over 900,000 potential class members, and processed incoming correspondence and opt outs.  Dahl then managed complex claims processing procedures, including detailed analysis of class member invoices and other supporting documentation, and distributed settlement funds to eligible class members.

Plaintiff Counsel:  James M. Terrell, McCallum, Methvin & Terrell, P.C., Birmingham, AL

Defense Counsel:  Rik S. Tozzi and Brian O. Balogh, Burr Forman LLP

---

### METLIFE CLASS SETTLEMENT - NEARLY 1 MILLION CLASS MEMBER CHECKS DISTRIBUTED

Dahl was selected to provide Class Notice, Settlement, Notice, and Distribution for the Bower v. MetLife class action.  Dahl mailed notice to over 900,000 potential class members, and processed incoming correspondence and opt outs.  Dahl distributed nearly one million checks to eligible class members and handled all requests for re-issued checks.  Dahl implemented innovative, cost-effective solutions to manage the distribution process.

Plaintiff Counsel:  Steven R. Jaffe, Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L., Fort Lauderdale, FL;  Stephen A. Dunn, Emanuel & Dunn PLLC, Raleigh, NC; and Michael Coren, Cohen, Placitella & Roth, P.C, Philadelphia, PA

Defense Counsel:  Ross Bricker and John F. Ward, Jr., Jenner & Block LLP and Robert D. Friedman and Scott H. Moskol, Burns & Levinson LLP



**OUR CASES**

---

### HERTZ PLATEPASS SETTLEMENT - 1.6 MILLION NOTICES MAILED

Dahl was selected to provide Class Notice, Claims Processing, and Distribution for the Doherty and Simonson v. Hertz, ATS, and PlatePass class action.  Dahl mailed notice to over 1.6 million potential class members, administered an efficient online claim filing procedure, and processed incoming correspondence and opt outs.  Dahl processed incoming claims and distributed nearly 100,000 checks to eligible class members.

Plaintiff Counsel:  Jeffrey Goldenberg, Goldenberg Schneider LPA, Cincinnati, OH and Brian Dershaw, Beckman Weil Shepardson LLC, Cincinnati, OH

Defense Counsel:  James Comodeca, Dinsmore & Shohl LLP and James Griffith, Jr., Akin Gump Strauss Hauer & Feld LLP

---

### URBAN ACTIVE FITNESS SETTLEMENT - 600,000 CLASS MEMBERS

Dahl was the Settlement Administrator for the Urban Active Fitness class action settlement and was responsible for the distribution of mailed notice to more than 600,000 class members, implementation of a published notice campaign, extensive data processing, online claim filing, and complex claims processing.

Plaintiff Counsel:  Thomas N. McCormick, Vorys Sater Seymour and Pease LLP, Columbus, OH

Defense Counsel:  V. Brandon McGrath, Bingham Greenebaum Doll PLLC, Cincinnati, OH

---

### RODENBAUGH V. CVS PHARMACY SETTLEMENT - 400,000 CLASS MEMBERS

Dahl is the Settlement Administrator for the Rodenbaugh v. CVS Pharmacy class action settlement and was responsible for the distribution of mailed notice to more than 400,000 class members, implementation of a published notice campaign, operation of an informational phone line, processing of claim forms and correspondence submitted by class members, and providing claim review services.

Defense Counsel:  Roman Wuller, Thompson Coburn LLP, St. Louis, MO and Edward Hardin Jr., Burr & Forman LLP, Birmingham, AL

Plaintiff Counsel:  John Edgar, Edgar Law Firm LLC, Kansas City, MO and Carles McCallum III and R. Brent Irby, McCallum, Hoaglund Cook & Irby LLP, Vestavia Hills, AL



**OUR CASES**

---

### COIE v. VERIZON WIRELESS SETTLEMENT- CUSTOM DIRECT NOTICE PROGRAM

Dahl distributed the Class Notice and Opt-In Form to a large employment class, including a custom outer envelope including a "QR" matrix barcode which directed Class Members to the mobile-optimized settlement website when scanned by a mobile device. Dahl implemented a comprehensive tracing and re-mail program to maximize the reach of the direct notice program. Dahl managed a live telephone helpline that responded to thousands of phone calls, processed filed claims, and successfully distributed the settlement funds.

Defense Counsel:  Elizabeth McRee, Jones Day, Chicago, IL

Plaintiff Counsel:  Ilan Chorowsky, Progressive Law Group, Chicago, IL

---

### APPEL v. LIBERTY SETTLEMENT - COMPLEX CLAIM PROCESSING

Dahl was the Settlement Administrator for the Appel v. Liberty settlement involving insurance coverage limits for mobile and manufactured homes suffering wind damage in Florida. Dahl implemented a direct notice program, implemented a settlement website and live call center including Spanish-speaking representatives, processed received claims, implemented complex claim processing procedures, and distributed the settlement fund.

Defense Counsel:  Amy L. Brown, Squire Sanders, Washington D.C.

# OUR CASE EXPERIENCE



**CASE CITES**

## CURRENT CASES – DAHL

### CONSUMER

**Aguiar v. Merisant Co.,** No. 2:14-CV-00670 (C.D. Cal.)

**Applewhite v. Capital One Bank,** No. 4:06-CV -69 (N.D. Miss.)

**Avalishvili v. Reussille Law Firm, LLC,** No. 3:12-CV-02772-TJB (D. N.J.)

**Banner v. Law Offices of David J. Stern,** No. 9:11-CV-80914 (S.D. Fla.)

**In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.,** No. 4:08-MD-1967 (W.D. Mo.)

**Boewer v. Chris Auffenberd Kirkwood Mitsubishi,** No. 09SL-CC05382 (Mo. Cir. Ct. St. Louis County)

**Bradley v. Sears, Roebuck & Co.,** No. 06-L-0095 (Ill. Cir. Ct. St. Clair County)

**Brandon v. Van Chevrolet-Cadillac, Inc.,** No. 1031-CV14654 (Mo. Cir Ct. Greene County)

**Brannon v. Capital One,** No. 3:07-CV -1016 (M.D. Fla.)

**Brewer v. Missouri Title Loans, Inc.,** No. 0722-CC-00015 (Mo. Cir. Ct. St. Louis County)

**Briggs v. Fletcher Auto. No. 7, LLC,** No. 10AO-CC003331 (Mo. Cir. Ct. Jasper County)

**Brown v. Suntrup Ford, Inc.,** No. 08SL-CC05103 (Mo. Cir. Ct. St. Louis County)

**Brown v. Zeiser Motors,** No. 0811-CV04298 (Mo. Cir. Ct. St. Charles County)

**Brunner v. Head Motor Co.,** No. 0811-CV04298 (Mo. Cir. Ct. Boone County)

**Bryant v. Motors Liquidation Co.,** No. 09-50026 (Bankr. S.D.N.Y.)

**Budeprion XL Mktg. & Sales Practices Litig.,** No. 2:09-CV-2811 (E.D. Pa.)

**Busby v. RealtySouth,** No. 2:04-CV -2799 (N.D. Ala.)

**Bush v. Cyber Asset Recovery, LLC,** No. MID-L-005132-10 (N.J. Middlesex County Ct.)

**Carlile v. Murfin Drilling Co., Inc.,** No. 13-CV-61 (Kan. Dist. Ct. Seward County)

**Charron v. Pinnacle Group, N.Y.,** No. 1:07-CV -6316 (S.D.N.Y.)

**Chulsky v. Hudson Law Offices, P.C.,** No. 3:10-CV-3058-FLW (D.N.J.)

**Conderman v. Jim Trenary Chevrolet, Inc.,** No. 0811-CV-11388 (Mo. Cir. Ct. St. Charles County)

**Cornett v. Samson Ress. Co.,** No. CJ-09-81 (Okla. Dist. Ct. Dewey County)

**Cox v. Max Motors II, LLC,** No. 09BS-CC00078 (Mo. Cir. Ct. Bates County)

**Cullan and Cullan, LLC, v. M-Qube, Inc.,** No. 8:13-CV-00172 (D. Ne.)

**Custom LED, LLC v. eBay Inc.,** No. 3:12-CV-00350 (N.D. Cal.)

**Davis Landscape, LTD. v. Hertz Equip. Rental Corp.,** No. 06-3830 (D.N.J.)

**DKW Constr., Co., Inc. & Brian Wood v. Southtown Dodge, Inc.,** No. 08SL-CC05106 (Mo. Cir. Ct. St. Louis County)



**CASE CITES**

## CONSUMER - CONTINUED

**Dobson v. Dave Cross Motors, Inc.,** No. 1016-CV-26853 (Mo. Cir. Ct. Jackson County)

**Doherty v. The Hertz Corp.,** No. 1:10-CV-00359 (D. N.J.)

**Dugan v. Lloyds TSB Bank, PLC,** No. 3:12-CV-02549 (N.D. Cal.)

**Farno v. Ansure Mortuaries of Indiana, LLC,** No. 41C01-0910-PL-7 (Ind. Cir. Ct. Johnson County)

**Friess v. Layne Energy, Inc.,** No. 11-CV-57 (Kan. Dist. Ct. Wilson County)

**Fritzinger v. Angie's List, Inc.,** No. 1:12-CV-1118 (S.D. Ind.)

**Frost v. Ohio E. Express, Inc.,** No. 3:12-CV-3016 (N.D. Ohio)

**Gaffney v. Autohaus West, Inc.,** No. 09SL-CC00430 (Mo. Cir. Ct. St. Louis County)

**Gascho v. Global Fitness Holdings, LLC,** No. 2:11-CV-436 (S.D. Ohio)

**Gentry v. Reliable Auto., Inc.,** No. 0831-CV06073 (Mo. Cir. Ct. Greene County)

**Grant v. Onyx Acceptance Corp.,** No. 07-20315 (Fla. Cir. Ct. Broward County)

**Green v. American Cleaners and Laundry Co., Inc.,** No. 12SL-CC03095 (Mo. Cir. Ct. St. Louis County)

**Green v. Major Infiniti, Inc.,** No. 1116-CV09583 (Mo. Cir. Ct. Jackson County)

**Gregg v. Check Into Cash of Missouri, Inc.,** No. 11-CV-368 (W.D. Mo.)

**Gumm v. Joe Machens Ford, Inc.,** No. 08BA-CV03153 (Mo. Cir. Ct. Boone County)

**Hamilton v. Cash Am. of Missouri, Inc.,** No. 1216-CV-10576 (Mo. Cir. Ct. Jackson County)

**Heien v. Archstone Communities, LLC,** No. 1:12-CV-11079-RGS (D. Mass.)

**Hermida v. ASN Reading LLC,** No. 10-CV-12083-WGY (D. Mass.)

**Herrera v. Check 'n Go of California, Inc.,** No. CGC-07-4627790 (Cal. Super. Ct. San Francisco County)

**Hershey v. ExxonMobil Oil Corp.,** No. 6:07-CV-01300 (D. Kan.)

**Hewitt v. Law Offices of David J. Stern,** No. 50-2009-CA-036046 (Fla. Cir. Ct. Palm Beach County)

**Hollins v. Capital Solutions Invs., Inc.,** No. 11SL-CC04216 (Mo. Cir. Ct. St. Louis County)

**Hooper v. Suntrup Buick-Pontiac-GMC Truck, Inc.,** No. 0811-CV10921 (Mo. Cir. Ct. St. Charles County)

**Hopler v. Sapaugh Motors, Inc.,** No. 09JE-CC00146 (Mo. Cir. Ct. Jefferson County)

**Horn v. Commercial Lending Capital, Inc.,** No. RIC10019819 (Cal. Super. Ct. Riverside County)

**Howerton v. Cargill, Inc.,** No. 1:13-CV-00336 (D. Haw.)

**In the Matter of Xacti LLC,** No. 13C20192 (Or. Cir. Ct. Marion County)

**Janicki v. Jeffrey L. Rosen and Trustmark Recovery Serv. Inc.,** No. 1:13-CV-06759 (N.D. Ill.)

**Janoka v. Veolia Envtl. Servs. N. Am. Corp.,** No. 69-CV-2011-900056 (Ala. Cir. Ct. Barbour County)

**Johnson v. Washington Univ.,** No. 2:10-CV-4170 (W.D. Mo.)

**Jones v. Wells Fargo, N.A.,** No. BC337821 (Cal. Super. Ct. L.A. County)



**CASE CITES**

## CONSUMER - CONTINUED

**Jones v. W. County BMW, Inc.,** No. 08SL-CC05222-01 (Mo. Cir. Ct. St. Louis County)

**Keirsey v. eBay, Inc.,** No. 12-Cv-01200-JST (N.D. Cal.)

**Khweye v. Leaders Fin. Co.,** No. ESX-L-5584-10 (N.J. Super. Ct. Essex County)

**Kreilich v. JL Autos, Inc.,** No. 09SL-CC0172 (Mo. Cir. Ct. St. Louis County)

**Lagas v. Verisma Sys., Inc.,** No. 4:13-CV-01082 (W.D. Mo.)

**Ledterman v. James Perse Enter., Inc.,** No. BC480530 (Cal. Super. Ct L.A. County)

**LeFever v. Am. Ear Hearing Aid & Audiology,** No. 11-CV-0832 (Ohio Comm. Pl. Licking County)

**Lewellen v. Reliable Imports and RV, Inc.,** No. 1031-CV11926 (Mo. Cir. Ct. Greene County)

**Lippert v. Edison Motor Cars, Inc.,** No. MID-L-6599-10 (N.J. Super. Ct. Middlesex County)

**Livingston v. Capital One,** No. 3:07-CV-266 (M.D. Fla.)

**Love v. LendingTree Claims Admin.,** No. 2009CV009598 (Wis. Cir. Ct. Milwaukee County)

**Lucero v. Love, Beal & Nixon, P.C.,** No. 4:12-CV-659 (N.D. Okla.)

**Lundsford v. Woodforest Nat'l Bank,** No. 1:12-CV-103-CAP (N.D. GA.)

**Lundy v. Check Into Cash of Missouri, Inc.,** No. 1216-CV10150 (Mo. Cir. Ct. Jackson County)

**Lundy v. Mid-America Credit, Inc.,** No. 1116-CV02060 (Mo. Cir Ct. Jackson County)

**Mayfield v. Thoroughbred Ford of Platte City, Inc.,** No. 08AE-CV00467 (Mo. Cir Ct. Platte County)

**Metcalf v. Marshall Ford Sales, Inc.,** No. 0811-CV11381 (Mo. Cir. Ct. St. Charles County)

**Mikale v. John Bommarito Oldsmobile-Cadillac, Inc.,** No. 08SL-CC05223 & 09SL-CC00167 (Mo. Cir. Ct. St. Louis County)

**Miller v. Capital One Bank,** No. 3:07-CV-265 (M.D. Fla.)

**Miller v. Nat'l Enter. Sys., Inc.,** No. 13 C 1720 (N.D. Ill.)

**Motor Fuel Temperature Sales Practices,** No. 07-MD-1840-KHV (D. Kan.)

**Mortgage Store, Inc. v. LendingTree Loans**, No. 06CC00250 (Cal. Super. Ct. Orange County)

**Moy v. Eltman, Eltman & Cooper, P.C.,** No. 12-CV-02382 (E.D.N.Y.)

**Naes v. Tom Pappas Toyota, Inc.,** No. 0711-CV09005 (Mo. Cir. Ct. St. Charles County)

**Neese v. Lithia Chrysler Jeep of Anchorage, Inc.,** No. 3AN-06-4815 (Alaska Super. Ct. Anchorage)

**North Star Capital Acquisitions v. King,** No. 3:07-CV-264 (M.D. Fla.)

**Omar v. 950 B14 DE, LLC,** No. CGC-13-530203 (Cal. Super. Ct. San Francisco County)

**Omohundro v. Glendale Chrysler-Jeep, Inc.,** No. 2107CC-03927 (Mo. Cir. Ct. St. Louis County)

**Padberg v. Dish Network, LLC,** No. 11-4035 (W.D. Mo.)

**Painter v. Ackerman Motor Company, Inc.,** No. 1022-CC10135 (Mo. Cir. Ct. City of St. Louis)



**CASE CITES**

## CONSUMER - CONTINUED

**Perkins v. Philips Oral Healthcare, Inc.,** No. 12-CV-1414H BGS (S.D. Cal.)

**Petersen v. Central Jersey Pool,** No. MON-L-4044-11 (N.J. Super. Ct. Monmouth County)

**In re Philips/Magnavox Television Litig.,** No. 2:09-CV-3072 (D. N.J.)

**Powers v. Fifth Third Mortg. Co.,** No. 1:09-CV-2059 (N.D. Ohio)

**Redd v. Suntrup Hyundai, Inc.,** No. 09SL-CC00173 (Mo. Cir. Ct. St. Louis County)

**Reid v. Unilever United States, Inc.,** No. 12-CV-6058 (N.D. Ill.)

**Rhodenbaugh v. CVS Pharmacy, Inc.,** No. 0916-CV09631 (Mo. Cir. Ct. Jackson County)

**Richards v. Lou Fusz Auto. Network, Inc.,** No. 08SL-CC04594 (Mo. Cir. Ct. St. Louis County)

**Richardson v. Weber Chevrolet Co.,** No. 09SL-CC00170 (Mo. Cir Ct. St. Louis County)

**Riley v. Northland Group, Inc.,** No. 2:12-CV-00950 (E.D. Wis.)

**Rizzo v. Hendrick Auto. Group.,** No. 4:08-CV-137 (W.D. Mo.)

**Roberts v. Source for Public Data,** No. 2:08-CV -4167 (W.D. Mo.)

**Robinson v. J & C Auto Outlet, LLC,** No. MID-L-1961-13 (N.J. Super. Ct. Middlesex County)

**S37 Management, Inc. v. Advance Refrigeration Co.,** No. 06-CH-20999 (Ill. Cir. Ct. Cook County

**Sams v. Adams Auto Corp.,** No. 0916-CV1521 (Mo. Cir. Ct. Jackson County)

**Seekamp v. It's Huge, Inc.,** No. 1:09-CV-00018 (N.D. N.Y)

**Serochi, Jr. v. Bosa Dev. Cal. II, Inc.,** No. 37-2009-00096686-CU-BT-CTL (Cal Super. Ct. San Diego County)

**Schuster v. Machens Enters., Inc.,** No. 11BA-CV01269 (Mo. Cir. Ct. Boone County)

**Shaffer v. Royal Gate Dodge,** No. 07SL-CC00949 (Mo. Cir Ct. St. Louis County)

**Sherrell v. Great S. Bank,** No. 1131-CV02280 (Mo. Cir. Ct. Greene County)

**Shirley v. Reliable Chevrolet, Inc.,** No. 0831-CV06082 (Mo. Cir Ct. Greene County)

**Silverberg v. Hotels.com, LP,** No. 12-01819 (Tex. Dist. Ct.)

**Sims v. Rosedale Cemetery Co.,** No. 03-C-506 (W. Va. Cir. Ct. Berkeley County)

**Soper v. American Traffic Solutions, Inc.,** No. CACE 10-046095 (17th Cir. Ct. Broward County)

**Stasko v. City of Chicago**, No. 09-CH17167 (Ill. Cir. Ct. Cook County)

**State of Texas v. Bluehippo,** No. D-1-GV-10-000102 (Tex. Dist. Ct. Travis County)

**State of Texas v. Cristo Vive,** No. D-1-GV-12-001092 (Tex. Dist. Ct. Travis County)

**Steiner v. Rawlings Sporting Goods Co., Inc.,** No. 2:12-CV-02531 (D. N.J.)

**Stevens v. Bommarito Nissan, Inc.** No. 09SL-CC00167 (Mo. Cir. Ct. St. Louis County)

**Strickland v. Fletcher Auto., No. 9,** No. 09AP-CC00091 (Mo. Cir. Ct. Jasper County)

**In re Surewest Comm'ns Shareholder Litig.,** No. SCV-0030665 (Cal. Super Ct. Placer County)



**CASE CITES**

## CONSUMER - CONTINUED

**Swires v. Glaxosmithkline,** No. 11-L-587 (Ill. Cir. Ct. St. Clair County)

**Thomas v. Tenet Healthsystems SL, Inc.,** No. 12SL-CC01811 (Mo. Cir. Ct. St. Louis County)

**Tortora v. Guardian Protection Servs., Inc.,** No. MID-L-1041-10 (N.J. Super. Ct. Middlesex County)

**Valley v. Johnny Londoff Chevrolet, Inc.,** No. 10SL-CC00523 (Mo. Cir. Ct. St. Louis County)

**Van Loo v. Capitol City Chrysler-Nissan, Inc.,** No. 11AC-CC00324 (Mo. Cir. Ct. Cole County)

**In re Voluntary Dissolution of Nexus Fiduciary Trust Corp.,** No. 29D03-1003-CC-323 (Ind. Super. Ct. Hamilton County)

**Wade v. Thoroughbred Ford, Inc.,** No. 10AE-CV04323 (Mo. Cir. Ct. Platte County)

**Walczak v. ONYX Acceptance Corp.,** No. 03 CH 0693 (Ill. Cir. Ct. Lake County)

**Wallace B. Roderick Revocable Living Trust, Trustee Amanda Roderick v. Noble Energy, Inc.,** No. 2009CV2 (Kan. Dist. Ct. Kearny County)

**Wallace B. Roderick Revocable Living Trust, Trustee Amanda Roderick v. Osborn Heirs Co., Ltd.,** No. 2009CV15 (Kan. Dist. Ct. Kearny County)

**Welsh v. John Youngblood Motors, Inc.,** No. 0931-CV14259 (Mo. Cir. Ct. Greene County)

**Westman v. Rogers Family Funeral Home, Inc.,** No C 98-03165 (Cal. Super. Ct. Contra Costa County)

**Wenger v. South Brunswick Furniture, Inc.,** No. MID-L-000479-12 (N.J. Middlesex County Ct.)

**Wiles v. S.W. Bell Tel. Co.,** No. 2:09-CV-4236 (W.D. Mo.)

**Wogoman v. Worth Harley Davidson N., Inc.,** No. 09CY-CV9090 (Mo. Cir. Ct. Clay County)

**Wood v. Plaza Tire Servs.,** No. 11SL-CC01507 (Mo. Cir. Ct. St. Louis County)

**Woods v. QC Fin.l Servs., Inc.,** No. 11-148-01395-09 (Am. Arb. Ass'n)

**Woodward v. Ozark Kenworth, Inc.,** No. 1031-CV02203 (Mo. Cir Ct. Greene County)

**Yarde v. Ed Napleton St. Louis Imports, Inc.,** No. 09SL-CC00171 (Mo. Cir. Ct. St. Louis County)

**Zaromb v. SSM Health Care Corp.,** No. 12SL-CC00654 (Mo. Cir. Ct. St. Louis County)

## INSURANCE

**Abrahams-Goullub v. United Servs. Auto. Assoc.,** No. 3AN-09-6693CI (Alaska Super. Ct. Anchorage)

**Appel v. Liberty Am. Ins. Co.,** No. 1:08-CV-20385 (S.D. Fla.)

**Besecker v. Peerless Indem. Ins. Co.,** No. 2:09-CV-05513-TJS (E.D. Pa.)

**Bower v. MetLife,** No. 1:09-CV-351 (S.D. Ohio)

**Casey v. Coventry Health Care of Kansas, Inc.,** No. 4:08-cv-201 (W.D. Mo.)

**Childs v. Unified Life Ins. Co.,** No. 4:10-CV-23 (N.D. Okla.)



**CASE CITES**

## INSURANCE - CONTINUED

**Cressy v. Fidelity & Guaranty Life Ins. Co.,** No. BC514340 (Cal. Super. Ct. L.A. County)

**Douglass v. Am. United Life Ins. Co.,** No. 29D03-9810-CP-00568 (Ind. Super. Ct. Hamilton County)

**Holling-Fry v. Coventry Health Care of Kansas, Inc.,** No. 4:07-CV-0092 (W.D. Mo.)

**Lujan v. Hallmark Ins. Co.,** No. D-101-CV-2012-01429 (N.M. Santa Fe County)

**Martin v. Twin City Fire Ins. Co.,** No. 3:08-CV-5651 (W.D. Wash.)

**Newendorp v. United Servs. Auto. Assoc.,** No. CJ-04-195S (Ok. Dist. Ct. Cleveland County)

**Poutsch v. USAA Cas. Ins. Co.,** No. CV-2011-01210 (N.M. Dist. Ct. Bernalillo County)

**Scott v. United Servs. Auto. Assoc.,** No. 2:11-CV-01422-JCC (U.S. Dist. Ct. W.D. Wash.)

**San Allen v. Stephan Buehrer, Admin. of Ohio BWC,** No. CV-07-644950 (Ohio C.P. Cuyahoga County)

**Walker v. Life Ins. Co. of the Sw.,** No. 10-CV-9198-JVS (C.D. Cal.)

**Waterman v. USAA Cas. Ins. Co.,** No. 10-5016-TJS (E.D. Pa.)

**Welschmeyer v. St. Luke's Health Sys., Inc.,** No. 1316-CV19250 (Mo. Cir. Ct. Jackson County)

## EMPLOYMENT

**Agatep v. Forest Lawn Mortuary**, No. BC433744 (Cal. Super. Ct. L.A. County)

**Alexander v. Chevron Stations,** No. C11-00896 (Cal. Super. Ct. Contra Costa County)

**Anzaldo v. The Original Mowbray's Tree Serv., Inc.,** No. S-1500-CV-274897 WDP (Cal. Super. Ct. Kern County)

**Ayon v. Cintas Corp., Inc.,** No. BC310696 (Cal. Super. Ct. L.A. County)

**Balderas v. Massage Envy Franchising, LLC,** No. 3:12-CV-06327 (N.D. Cal.)

**Barbosa v. Cargill Meat,** No. CV F 11-00275 SKO (E.D. Cal.)

**Bayard v. Veruzon W. Va., Inc.,** No. 1:11-CV-00132 (N.D. W. Va.)

**Bedoya v. Rubio's Rests.,** No. BC463799 (Cal. Super. Ct. L.A. County)

**Bell v. Delta Air Lines, Inc.,** No. 4:13-CV-01199 (N.D. Cal.)

**Bendana v. Custom Air Trucking, Inc.,** No. BC456055 (Cal. Super. Ct. L.A. County)

**Berg v. Zumiez Inc.,** No. BC408410 (Cal. Super. Ct. L.A. County)

**Binissia v. ABM Indusies., Inc.,** No. 13-CV-1230 (N.D. Ill.)

**Bonilla v. Agri-Empire,** No. RIC1209556 (Cal. Super. Ct. Riverside County)

**Borja v. TNT Plastic Molding,** No. 30-2012-00423018-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Bradley v. Networkers, Inc.,** No. GIC 862417 (Cal. Super. Ct. San Diego County)



**CASE CITES**

## EMPLOYMENT - CONTINUED

**Brooks v. U.S. Bank, N.A.,** No. 12-CV-4935 EMC (N.D. Cal.)

**Brown v. Abercrombie & Fitch Co.,** No. 2:14-CV-01242 (C.D. Cal.)

**Bult-Ito v. Univ. of Alaska,** No. 3AN 09-7875CI (Alaska Super. Ct. Anchorage)

**Burden v. SelectQuote,** No. C10-05966 SBA (N.D. Cal.)

**Bustos v. Massage Envy Spa - Mission Valley,** No. 37-2012-00104022-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Byard v. Verizon W. Va., Inc.,** No. 1:11-CV-132 (N.D. W. Va.)

**Calhoun v. Gen. Petroleum Corp.,** No. BC425216 (Cal. Super. Ct. L.A. County)

**Caracoza v. Ephonamation.com, Inc.,** No. 30-2013-006892690-CU-CR-CXC (Cal. Super. Ct. Orange County)

**Cardenas v. Crothall Healthcare,** No. 11-4145 (C.D. Cal.)

**Carothers v. Lawry's The Prime Rib, Inc.,** No. 12-CV-10048 (N.D. Ill.)

**Cassidy v. Aldo U.S., Inc.,** No. 1:13-CV-04858 (N.D. Ill.)

**Castro v. Seaton, LLC,** No. BC516824 (Cal. Super. Ct. L.A. County)

**Chambers v. Chase Bank USA,** No. 1:11-CV-6014 (N.D. Ill.)

**Chavez v. Hat World, Inc.,** No. 1:12-CV-05563 (N.D. Ill.)

**Cherry v. Mayor and City Council of Baltimore,** No. 1:10-CV-01447 (D. Md.)

**Cioe v. Verizon Wireless,** No. 1:11-CV-1002 (N.D. Ill.)

**Cisneros v. Oasis South Ins. Servs.,** No. 37-2012-00103109-CU-OE-CTL (Cal. Super Ct. San Diego County)

**Clarke v. Insight Global, Inc.,** No. 3:13-CV-00357 (S.D. Cal.)

**Copi v. Brainfuse,** No. 11-CV-05195 (S.D.N.Y.)

**Crosby v. California Healthcare Medical Billing, Inc.,** No. 37-2011-00087583-CU-OE-CTL (Cal. Super Ct. San Diego County)

**D'Ambrosia v. Claro Italian Mkts.,** No. BC497301 (Cal. Super. Ct. L.A. County)

**Deliz v. Miller's Ale House, Inc.,** No. 13-CA-005176 (Fla. 13th Cir. Ct. Hillsborough County)

**Diaz v. Alco Iron & Metal Co.,** No. HG10517616 (Cal. Super. Ct. Alameda County)

**Diego v. JMS Prop. LLC,** No. 37-2013-00056177-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Dilts v. Penske Logistics, LLC,** No. 3:08-CV-00318 (S.D. Cal.)

**Dunlap v. Universal Sec. Corp.,** No. 10 CH 18197 (Ill. Cir. Ct. Cook County)

**Echeverria v. Adir Int'l,** No. BC395380 (Cal. Super. Ct. L.A. County)

**Epton v. AIS Servs., LLC,** No. 3:11-CV-00856-JM-POR (S.D. Cal.)

**Erickson v. QSP & TI Media Solutions, L.A.S.C.,** No. BC469830 (Cal. Super. Ct. L.A. County)



CASE CITES

## EMPLOYMENT - CONTINUED

**Escoto-Miranda v. Evans Tire & Serc. Cents., Inc.,** No. 37-2012-00103102-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Fabela v. Micro World Corp.,** No. BC509643 (Cal. Super. Ct. L.A. County)

**Fischer v. Nat'l Distrib. Ctr. LP,** No. RIC1114952 (Cal. Super. Ct. Riverside County)

**Fitts v. Designed Metal Connections, Inc.,** No. TC027097 (Cal. Super. Ct. L.A. County)

**Flournoy v. 3S Network, Inc.,** No. C09-00113 (Cal. Super. Ct. Contra Costa County)

**Garner v. Primedia, Inc.,** No. 30-2012-00619014-CU-06-CXC (Cal. Super. Ct. Orange County)

**Gonzales v. Downtown LA Motors LP,** No. BC350769 (Cal. Super. Ct. L.A. County)

**Gonzalez v. RC Packing, LLC,** No. M108764 (Cal. Super. Ct. Monterey County)

**Grant v. Convergys Corp.,** No. 4:12-cv-000496-CEJ (E.D. Mo.)

**Haro v. Cotti Foods Corp.,** No. BC407056 (Cal. Super. Ct. L.A. County)

**Hobbs v. Ace Industrial Supplies, Inc.,** No. BC466122 (Cal. Super. Ct. L.A. County)

**Holsted v. R.J. Noble Co.,** No. 30-2010-00379770 (Cal. Super. Ct. Orange County)

**Jones v. TNT Self-Storage Mgmt., Inc.,** No. 30-2011-00513903-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Kavousy v. The Western and Southern Life Ins. Co.,** No. 8:12-CV-2109 AG (C.D. Cal.)

**Kay v. Asian Rehabilitation Servs. Inc.,** No. BC442795 (Cal. Super. Ct. L.A. County)

**Khweye v. Leaders Fin. Co.,** No. ESX-L-5584-10 (N.J. Super. Ct. Essex County)

**King v. Build.com, Inc.,** No. 159985 (Cal. Super. Ct. Butte County)

**Kinney v. Harvest Al Mgmt. Sub, LLC,** No. 2:12-CV-02716-TLN-CKD (E.D. Cal.)

**Kulvicki v. Pick-N-Pull Auto Dismantlers,** No. RG11560441 (Cal. Super. Ct. Alameda County)

**Las v. ABM Indus. Inc.,** No. 1:11-CV-05644 (N.D. Ill.)

**Las v. District Towing, Inc.,** No. 12-CV-5538 (N.D. Ill.)

**Lopez v. Pioneer Med. Group, Inc.,** No. BC496710 (Cal. Super. Ct. L.A. County)

**Macias v. Sun Grown Organic Distrib., Inc.,** No. 37-2012-00095817-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Magee v. Am. Residential Servs., LLC,** No. BC423798 (Cal. Super. Ct. L.A. County)

**Martinez v. John Morrell & Co.,** No. 1-11-CV-198307 (Cal. Super. Ct. Santa Clara County)

**Myart v. AutoZone, Inc.,** No. 05CC03219 (Cal. Super. Ct. Orange County)

**Neponoceno v. El Puerto Berry Farms, LLC,** No. 56-2014-00451373-CU-OE-VTA (Cal. Super. Ct. Ventura County)

**Nimely v. Randstad Gen. Partner (US), LLC,** No. 1:12-CV-10431 (N.D. Ill.)



**CASE CITES**

## EMPLOYMENT - CONTINUED

**O'Brien v. Cathy Jean, Inc.,** No. 37-2011-00085539-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Office of Fed. Contract Compliance Programs, U.S. Dep't of Labor v. Cargill Meat Solutions Corp.,** No. 2012-OFC-00001 (DOLOALJ)

**Ortiz v. CVS Caremark Corp.,** No. 12-CV-05859-EDL (N.D. Cal.)

**Park v. Staples the Office Superstore LLC,** No. BC449815 (Cal. Super. Ct. L.A. County)

**Pina v. Con-way Freight,** No. C10-00100 (N.D. Cal.)

**Recendez v. Tidwell,** No. 56-2011-00404761-CU-OE-VTA (Cal. Super. Ct. Venture County)

**Robinson v. Defender Sec. Co.,** No. RG10505016 (Cal. Super. Ct. Alameda County)

**Rocha v. Royal Oaks,** No. 5:12-CV-01303 (N.D. Cal.)

**Rodriguez v. Fred Loya Ins.,** No. BC491770 (Cal. Super. Ct. L.A. County)

**Roque v. Pick-N-Pull Auto Dismantlers,** No. 34-2012-00118782 (Cal. Super. Ct. Sacramento County)

**Rosero v. East L.A. Doctors Hosp., LP,** No. BC505483 (Cal. Super. Ct. L.A. County)

**Rothberg v. Crunch LLC,** No. CGC 12-519740 (Cal. Super. Ct. San Francisco County)

**Russell v. EF International Language Schs,** No. BC481435 (Cal. Super. Ct. L.A. County)

**Saba Mungaray v. Corovan Moving & Storage Co.,** No. 30-2012-00618398-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Sano v. Southland Mgmt. Group, Inc.,** No. BC489112 (Cal Super. Ct. L.A. County)

**Salazar v. Adir Int'l,** No. BC398402 (Cal. Super. Ct. L.A. County)

**Salgado v. Shik Do Rak, Inc.,** No. BC432841 (Cal. Super. Ct. L.A. County)

**Sanchez v. St. Mary Med. Ctr.,** No. CIVDS 1304898 (Cal. Super. Ct. San Bernardino County)

**Scaglione v. M.O. Dion & Sons, Inc.,** No. BC425216 (Cal. Super. Ct. San Bernardino County)

**Schmaltz v. O'Reilly Automotive Stores, Inc.,** No. 4:12-CV-01056 (E.D. Mo.)

**Scott v. RailCrew Xpress, LLC,** No. 10C-000546 (Kan. Dist. Ct. Shawnee County)

**Shackleford v. Cargill,** No. 12-CV-4065-FJG (W.D. Mo.)

**Solorio v. Angelica Textile Servs, Inc.,** No. 5:12-CV- 03569 (N.D. Cal.)

**Sotelo v. Universal Indus. Finishing, Inc.,** No. 1-13-CV-239771 (Cal. Super. Ct. Santa Clara)

**Sparks v. FPI Mgmt., Inc.,** No. BC465773 (Cal. Super. Ct. L.A. County)

**Stevenson v. Falcon Critical Care Transp.,** No. CIVMSC09-00862 (Cal. Super. Ct. Contra Costa County)

**Studley v. Alliance Healthcare Servs., Inc.,** No. 8:10-CV-00067-CJC-AN (C.D. Cal)

**Tapia v. Pro's Ranch Mkts.,** No. S-1500-CV-274898 (Cal. Super. Ct. Kern County)

**Tula v ABM Indus. Inc.,** No. 1:12-CV-054-LY (W.D. Tex.)



**CASE CITES**

## EMPLOYMENT - CONTINUED

**Tuter, Bauer v. King's Seafood Co.,** No. 37-2011-00084756-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Vaca v. Famarock, Inc.,** No. BC494504 (Cal. Super. Ct. L.A. County)

**Valencia v. Mobile Mini. Inc.,** No. RG-13-684308 (Cal. Super. Ct. Alameda County)

**Valencia v. SCIS Air Sec. Corp.,** No. BC421485 (Cal. Super. Ct. L.A. County)

**Valenzuela v. United Natural Foods W., Inc.,** No. BC450168 (Cal. Super. Ct. L.A. County)

**Veliz v. Cintas Corp.,** No. 5:03-CV-1180 (N.D. Cal.)

**Villarreal v. Source Refrigeration & HVAC, Inv.,** No. 1:12-CV-00243 (W.D. Tex.)

**Vincent v. Cent. Purchasing, LLC,** No. BC458544 (Cal. Super. Ct. L.A. County)

**Warren v. SCS-Chicago,** No. 10 CH 8380 (Ill. Cir. Ct. Cook County)

**Williams v. Ill. Title Loans, Inc.,** No. 13 CH 24303 (Ill. Cir. Ct. Cook County)

**Wilson v. Continental Vending, Inc.,** No. 30-2012-00585315-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Wynn v. Express, LLC,** No. 1:11-CV-04588 (N.D. Ill.)

**Zaniewski v. PRRC Inc.,** No. 3:11-CV-01535 (D. Conn.)


## BELAIRE-WEST PRIVACY NOTICE MAILINGS

**Alegria v. Student Transp. Of America, Inc.,** No. RIC1209792 (Cal. Super. Ct. Riverside County)

**Anderson v. Gulf S. Safety Consultants, LLC,** No. BC537452 (Cal. Super. Ct. L.A. County)

**Angeles v Hofs Hut Rests. Inc.,** No. BC495624 (Cal. Super. Ct. L.A. County)

**Barajas v. WHM, LLC,** No. BC491045 (Cal. Super. Ct. L.A. County)

**Bradley v. Networkers, Inc.,** No. GIC 862417 (Cal. Super. Ct. San Diego County)

**Brueske v. DHSE, Inc.,** No. RIC1205382 (Cal. Super. Ct. Riverside County)

**Castellanos v. Faro Serv. Inc.,** No. BC509830 (Cal. Super. Ct. L.A. County)

**Davis v. St. Jude Hospital,** No. 30-2012-00602596-CU-OE-CXC (Cal. Super. Ct. Orange County)

**East v. Aces,** No. 11CECG04226 (Cal. Super. Ct. Fresno County)

**Erickson v. QSP & TI Media Solutions, L.A.S.C.,** No. BC469830 (Cal. Super. Ct. L.A. County)

**Fitts v. Designed Metal Connections, Inc.,** No. TC027097 (Cal. Super. Ct. L.A. County)

**Franco v. Flight Line Products, Inc.,** No. BC497382 (Cal. Super. Ct. L.A. County)

**Gonzales v. Corsair Elec. Connectors, Inc.,** No. 30-2012-00594399-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Gutierrez v. Commerce Casino,** No. BC360704 (Cal. Super. Ct. L.A. County)

**Huizar v. Newport Serv. Corp.,** No. 30-2010-00430372-CY-OE-CXC (Cal. Super. Ct. Orange County)



**CASE CITES**

## BELAIRE-WEST PRIVACY NOTICE MAILINGS - CONTINUED

**Jaramillo-Tabar v. Nakase Bros. Wholesale Nursery,** No. 30-2012-00587417 (Cal. Super. Ct. Orange County)

**Krajec v. Mission Hospital Regional Medical Cent.,** No. 30-2012-00602596-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Linares v. PCAM, LLC,** No. BC487188 (Cal. Super. Ct. L.A. County)

**Murray v. Ralph's Grocery Co.,** No. RIC1105977 (Cal. Super. Ct. Riverside County)

**Navarro v. KJ Beck's, Inc.,** No. BC509096 (Cal. Super. Ct. L.A. County)

**Ornelas v. RVGC Partners, Inc.,** No. BC500123 (Cal. Super. Ct. L.A. County)

**Read v. Howroyd-Wright Emp't Agency, Inc.,** No. BC449744 (Cal. Super. Ct. L.A. County)

**Robinson v. Airgas On-Site Safety Servs., Inc.,** No. BC523502 (Cal. Super. Ct. L.A. County)

**Rodriguez v. E.M.E., Inc.,** No. BC518692 (Cal. Super. Ct. L.A. County)

**Rodriguez v. Equinox Holdings, Inc.,** No. BC437283 (Cal. Super. Ct. L.A. County)

**Sanchez v. CPG Foods, LLC,** No. BC487187 (Cal. Super. Ct. L.A. County)

**Scott-George v. PVH Corp.,** No. 13-CV-00441-TLN-DAD (E.D. Cal.)

**Serrano v. Triumph Structures-Los Angeles, Inc.,** No. BC507112 (Cal. Super. Ct. L.A. County)

**Shiferaw v. Sunrise Senior Living Mgmt., Inc.,** No. 2:13-CV-02171-JAK-PLA (C.D. Cal.)

**Smith v. Space Exploration Technologies Co., Inc.,** No. BC486776 (Cal. Super. Ct. L.A. County)

**Vagle v. Archstone Cmtys., LLC,** No. 2:13-CV-9044 RGK (C.D. Cal)

**Vidales v. Windset Farms (Cal.), Inc.,** No. 1456106 (Cal. Super. Ct. Santa Barbara County)

**Walsh v. Pacific Bell Tel. Co.** No. 30-2011-00498062-CY-OE-CXC (Cal. Super. Ct. Orange County)

**Wilson v. Rock-Tenn Co., Inc.,** No. BC488456 (Cal. Super. Ct. L.A. County)

**Zamora v. Cardenas Markets, Inc.,** No. BC505451 (Cal. Super. Ct. L.A. County)

## GOVERNMENT

**Lopez-Venegas v. Jeh Johnson,** No. 2:13-CV-03972 (C.D. Cal.)

## PRIVACY

**Avery v. Boyd Bros. Transp., Inc.,** No. 4:13-CV-00579 (W.D. Mo.)

**Caffarello v. ADS Logistics Co., LLC,** No. 1:12-CV-08300 (N.D. Ill.)

**Diparvine v. A.P.S, Inc. d/b/a Car Quest Auto Parts,** No. 11-CV-6116 (N.D. Ill.)

**Edwards v. Impairment Res., LLC,** No. 112CV220583 (Cal. Super. Ct. Santa Clara County)



**CASE CITES**

## PRIVACY - CONTINUED

**Fun Servs. of Kansas City, Inc. v. Hertz Equip. Rental Corp.,** No. 08-CV-03944 (Kan. Dist. Ct. Johnson County)

**Gordon v. Feinstein Raiss Kelin & Booker, LLC,** No. 3:13-CV-00089 (D. N.J.)

**Johnson v. Midwest Logistics Systems, Ltd.,** No. 2:11-CV-1061 (S.D. Ohio)

**Schulz v. Rushmore Service Center, LLC,** No. 2:13-CV-00105 (E.D. Wis.)

**Yaakoby v. EagleRider,** No. 1:09-CV-5772 (N.D. Ill.)

## ANTITRUST

**Kansas City Urology Care, PA, v. Blue Cross Blue Shield of Kansas City, Inc.,** No. 0516-CV-04219 (Mo. Cir. Ct. Jackson County)

## SECURITIES

**Capgrowth v. Franklin Elec. Publishers, Inc.,** No. BUR-C-043-09 (N.J. Super. Ct. Ch. Div. Burlington County)

**Waterford Twp. General Emps. Ret. System v. Bankunited Fin. Corp.,** No. 1:08-CV-22572-MGC (S.D. Fl.)

**Williams v. Colonial Prop. Trust,** No. 01-CV-2013-902416.00 (Ala. Cir. Ct. Jefferson County)

## PERSONAL INJURY

**Gray v. Derderian,** No. 1:04-CV-312 (D. R.I.)



**CASE CITES**

## PREVIOUS CASES – JEFF AND KRISTIN DAHL

### CONSUMER

Aks v. Southgate Trust Co., No. 92-2193-L (D. Kan.)

Alachua Gen. Hosp. v. Greene, No. 90-3359-CA (Fla. Cir. Ct. Alachua County)

Gray v. Derderian, No. 04-312L (D. R.I.)

Arscott v. Humana Hosp. Daytona Beach, No. 91-2478-CI-CI (Fla. Cir. Ct. Volusia County)

Benacquisto v. Am. Express Fin. Corp., No.00-1980 DSD (D. Minn.)

Bokusky v. Edina Realty, Inc., No. 3-92--223 (D. Minn.)

Bonilla v. Trebol Motors Corp., No. 92-1795(JP) (D. P.R.)

Bunch v. Rent-A-Center, Inc., No. 00-0364-CV-W-3 (W.D. Mo.)

Burney v. Thorn Ams., Inc., No. 97-CV.-1596 (Wis. Cir. Ct. Racine County)

Circle Plumbing v. Ferguson, No. 92-036478 (Tex. Dist. Ct. Harris County)

Cook v. LADA, No. 94-1730 (W.D. La.)

Crocker v. Sunshine Corp., No. 93-2224-H/A (W.D. Tenn.)

Dismuke v. Edina Realty, Inc., No. 92-8716 (Minn. Dist. Ct. Hennepin County)

Dyson v. Flagstar Corp., No. DKC93-1503 (D. Md.)

Fed. Trade Comm'n v. Mylan Labs., Inc., No. 1:98-CV-3114 (TFH) No. 990276 (TFH/JMF)

Garcia v. Houston Nw. Medical Ctr., Inc., No. H-94-2276, (S.D. Tex.)

George v. BancOhio Nat'l Corp., No. C2-92-314 (S.D. Ohio)

Gutterman v. Am. Airlines, Inc., No. 95 CH 982 (Ill. Cir. Ct. Cook County)

Hartings v. Am. Express Co., No. 88-0744 (W.D. Pa.)

Hinton v. ColorTyme Inc., No. 94-CV. 5198 (Wis. Cir. Ct. Milwaukee County)

In re Compact Disc Minimum Advertised Price Antitrust Litig., No. 1361 (D. Me.)

In re Toys R Us Antitrust Litig., No. 98 M. D. L. 1211 (NG) (JLC) (E.D. N.Y.)

LaMontagne v. Hurley State Bank, No. 97-30093-MAP (D. Mass.)

Nitti v. Edina Realty, Inc., No. 3-92--386 (D. Minn.)

Ridgeway v. Denny's California, No. C93-20202 JW (PV.T) (N.D. Cal.)

Rowland v. Goldkist, Inc., No. CV. 94-106 (Ala. Cir. Ct. Walker County)

Sparano v. Southland Corp., No. 04 C 2098 (N.D. Ill.)

Connecticut v. Mylan Labs., Inc., No. 1:98-CV-3115 (TFH) Misc. No. 990276 (TFH/JMF) (D.D.C.)

Thomas v. Charles Schwab & Co., Inc., No. 66,7000 (La. Dist. Ct. Natchitoches Parish)



**CASE CITES**

## CONSUMER - CONTINUED

Toledo Fair Hous. Ctr. v. Nat'l Mut. Ins. Co., No. 93-1685 (Ohio C.P. Lucas County)

U.S. v. Am. Family Mut. Ins., No. 90-C-0759 (E.D. Wis.)

Weiss v. Washington, No. 99-2-11807-3 KNT (Wash. Super. Ct. King County)

Weissberg v. Delta Air Lines, Inc., No. 88 CH 4846 (Ill. Cir. Ct. Cook County)

Whitson v. Heilig-Meyers Furniture Co., No. CV. 94-PT-0309-E (N.D. Ala.)

Wolens v. Am. Airlines, Inc., No. 88CH 7554 (Ill. Cir. Ct. Cook County)

Woosley v. California, No. CA 000499 (Cal. Super. Ct. L.A. County)

Yoel v. N.J. Nat'l Bank, No. 94-4675 (MLP) (D. N.J.)

## EMPLOYMENT

Allen v. Thorn Ams., Inc., Case No. 97-1159-CV.-W-SOW (W.D. Mo.)

Babbitt v. Albertson's Inc., No. C92-1883 WHO (N.D. Cal.)

Berquist v. Am. Family Mut. Ins. Co., No. 96CV (Wis. Cir. Ct. St. Croix County)

Borja v. Wal-Mart Stores, Inc., No.98-CV-119 (Colo. Dist. Ct. Las Animas County)

Brunson v. City of New York, No. 94 Civ. 4507 (LAP) (S.D.N.Y.)

Forbush v. J. C. Penney Co., No. 3:90-2719-X, No. 3:92-0109-X (N.D. Tex.)

Hofer v. Capitol Am. Life Ins. Co., No. 336 (Wyo. Dist. Ct. Goshen County)

Hoffman v. Sbarro, Inc., No. 982 F. Supp. 249 (S.D.N.Y.)

Khan v. Denny's Holdings, Inc., No. BC 177254 (Cal. Super. Ct. L.A. County)

Merk v. Jewel Foods, No. 85 C 7876 (N.D. Ill.)

OCAW v. Am. Home Prods., No. 92-1238 (JP) (D.P.R.)

Stender v. Lucky Stores, Inc., No. 88-1467 (N.D. Cal.)

Taylor v. O' Charley's, No. 3-94-0489 (M.D. Tenn.)

Wooten v. Dillard's Inc., No. 99-0990-CV-W-3-ECF (W.D. Mo.)



**CASE CITES**

## INSURANCE

Barnicle v. Am. Gen. Corp., No. EC 011 865 (Cal. Super. Ct. San Diego County)

Beavers v. Am. Gen. Fin., Inc., No. CV.-94-174 (Ala. Cir. Ct. Walker County)

Blanke v. Lincoln Nat'l Life Ins. Co., No. 512,048 Div. K (La. Dist. Ct. Jefferson Parrish)

Bussie v. Allmerica, No. 97-40204 (D. Mass.)

Danko v. Erie Ins. Exch., No. 298 1991 G.D. (Pa. C.P. Fayette County)

Elkins v. Equitable Life Ins. Co. of Iowa, No. 96-296-CIV.-T-17B (M.D. Fla.)

Garst v. Franklin Life Ins. Co., No. 97-C-0074-S (N.D. Ala.)

Green v. Metro. Ins., No. 969547 (Cal. Super. Ct. S.F. County)

Hearth v. First Nat'l Life Ins. Co. of Am., No. 95-818- T-21A (M.D. Fla.)

In re Lutheran Bhd. Variable Ins. Prods. Co., No. 99-MD-1309 (PAM/JGL)

In re Metro. Life Ins. Co., No. 96-179 MDL No. 1091 (W.D. Pa.)

In re Nat'l Life Ins. Co., No. 2-97-CV.-314 (D. Vt.)

Jordan v. State Farm Life Ins., No. 97 CH 11 (Ill. Cir. Ct. McLean County)

Kolsrud v. Equitable Life Ins. Co. of Iowa, No. 320838 (Ariz. Super. Ct. Pima County)

Kreidler v. W.-S. Life Assurance Co., No. 95-CV-157 (Ohio C.P. Erie County)

Lee v. USLIFE Corp., No. 1:97CV. -55-M (W.D. Ky.)

Levin v. Am. Gen. Life Ins. Co., No. 3-98-0266 (M.D. Tenn.)

Ludwig v. Gen. Am. Life Ins. Co., No. 4:97CV.18920 CDP (E.D. Mo.)

McNeil v. Am. Gen. Life & Accident Co., No. 3-99-1157 (M.D. Tenn.)

Reyes v. Country Life Ins. Co., No. 98 CH 16502 (Ill. Cir. Ct. Cook County)

Thompson v. Metro. Life Ins. Co., No. 00 Civ. 5071 (HB) Also applies to No.00 Civ., 9068, No.01-2090 & No. 01 Civ. 5579 (U.S. Dist. Ct. S.D. N.Y.)

Woodley v. Protective Life Ins. Co., No. CV. 95-005 (Ala. Cir. Ct. Fayette County)



**CASE CITES**

## PRODUCT LIABILITY

**Ahearn v. Fibreboard, No. 6:93cv.526 (E.D. Tex.)**

**Cox v. Shell Oil Co., No. 18,844 (Tenn. Ch. Ct. Obion County)**

**Garza v. Sporting Goods Props. Inc., No. SA 93-CA-1082 (W.D. Tex.)**

**Hart v. Central Sprinkler Corp., No. BC176727 (Cal.Super. Ct. L.A. County)**

**In re Louisiana-Pacific Corp. Inner-Seal Oriented Strand Bd. Trade Practices Litig., No. C96-2409 VRW (Mellett), No. C96-2468 VRW (Stewart) No. C95-3178 VRW(Aguis)**

**In re Rio Hair Naturalizer Prods. Liab. Litig., No. 1055 (E.D. Mich.)**

**Ruff v. Parex, Inc., No. 96-CV.-500-59 (E.D.N.C.)**

**Salah v. Consolidated Indus., Inc., No. CV 738376 (Cal. Super. Ct. Santa Clara County)**

## PROPERTY

**Anderson v. Cedar Grove Composting, Inc., No. 97-2-22820-4SEA (Wash. Super. Ct. King County)**

**Black v. Fag Bearings Corp., No. CV.396-264CC (Mo. Cir. Ct. Newton County)**

**Branin v. Asarco, Inc., No. C93-5132 (B) WD (W.D. Wash.)**

**Brighton v. Cedar Grove Composting, No. 97-2-21660-5 SEA (Wash. Super. Ct. King County)**

**Campbell v. Paducah & Louisville Ry., Inc., No. 93-CI-05543 (Ky. Cir. Ct. Jefferson County)**

**Comfort v. Kimberly-Clark Corp., No. DV. -90-616 (Ala. Cir. Ct. Shelby County)**

**Vicwood v. Skagit, No. 00-2-00665-6 (Wash. Super. Ct. Thurston County)**

## BANKRUPTCY

**In re Celotex Corp., No. 90-10016-8B1, 90-10017-8B1 (M.D. Fla.)**

**In re Raytech Corp., Case No. 89-00293 (Bankr. Ct. Conn.)**

**In re the Babcock & Wilcox Co., No. 00-0558 Bankr Case No. 00-10992 Sect: "R" (5) (U.S. Dist. Ct. E.D. La.)**

**In re U.S. Brass Corp., No. 94-40823S (Bankr. Ct. E.D. Tex.)**

**In re W.R. Grace & Co., No. 01-01139 (Bankr. Ct. Del.)**



**CASE CITES**

## SECURITIES

**Eilers Furs of Rapid City v. US West Commc'ns, Inc., No. 92-5121 (D.S.D.)**

**Finucan v. Egghead, Inc., No. C93-1268WD (W.D. Wash.)**

**Global Research Analyst Settlement, (M.D. N.Y.)**

**In re Chambers Dev. Corp. Sec. Litig., No. 982 (W.D. Pa.)**

**United States Sec. Exch. Comm'n v. HealthSouth Corp., No. CV-03-J-06515S (N.D. Ala.)**

**In re Banc of America Sec. LLC, File No. 3-12591 (Secs. Exch. Comm'n)**

**United States Sec. Eexch. Comm'n v. MBIA, No. 07Civ. 658 (LLS)  (S.D.N.Y.)**

**United States Sec. Exch. Comm'n v. Fed. Nat'l Mortg. Assoc., No. 1:06-CV-00959 (RJL) (D.D.C.)**

## BELAIRE-WEST PRIVACY NOTICE MAILINGS

**Berg v. Zumiez, Inc., No. BC408410 (Cal. Super. Ct. L.A. County)**

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LESLIE FROHBERG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CUMBERLAND PACKING CORP.,<br><br>Defendant. | Case No. 1:14-cv-00748-KAM-RLM |

## AFFIDAVIT OF JOHN GRUDNOWSKI IN SUPPORT OF SETTLEMENT NOTICE PLAN

I, John Grudnowski, being duly sworn and deposed, say:

1.      I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

2.      I am Founder and CEO of FRWD Co. ("FRWD"), a digital marketing firm based in Minneapolis, Minnesota.  My firm has been asked by Dahl Administration, LLC ("Dahl") to partner in the design and execution of the Notice Plan for the settlement in the above-captioned action (the "Settlement").

3.      I have more than 18 years of experience in marketing and public relations. In the past 13 years, I have focused exclusively on digital media.  In addition to founding FRWD in 2009, I co-founded a Minneapolis-based media organization, i612, which provides educational content to the Minneapolis/St. Paul marketing community.  I also

1

serve as an Adjunct Professor in Digital Marketing at the University of Minnesota's Carlson School of Management.

4.      My work has involved designing, executing, and validating traditional and digital media advertising and communications campaigns.  The technologies and tools described herein are well-accepted, leading practices in the digital advertising world and are directly transferable and applicable to the execution of an effective class action notice plan.

5.      This affidavit describes advertising industry trends and practices as well as the media approach and methodology for the Notice Plan for the Settlement.

6.      FRWD and Dahl constructed the Notice Plan to be consistent with, and to take advantage of, how individuals consume media and locate information today. Specifically, we are leveraging digital components including desktop web banners, mobile web banners, and social media, as described in the Affidavit of Jeffrey D. Dahl. Leveraging how today's consumer accesses media enables us to construct a more robust, action-oriented notification plan.  In addition, we will align the Notice Plan with any additional demographic information provided by Defendants specific to their customer base.  Specifically, our Notice efforts will target a nationwide audience of 17 million care sweetener users. This audience was selected based on demographic information, detailed audience purchase information provided by Nielsen Catalina Solution as well as through tools provided by Gfk MRI, comScore and Google. Between the online components of the Notice Plan, our tools indicate we will produce over 66 million impressions that are targeted to reach an audience with the characteristics of the Settlement Class. I estimate

2

that the Notice Plan will effectively reach 75% of the projected 17 million core sweetener users at a projected frequency of 3.0x-4.0x.

## FRWD BACKGROUND

7.      Over the past six years, my company has planned, managed, executed, and reported on thousands of individual digital & traditional (TV, Print, Radio, Out of Home (OOH)) executions for some of the world's largest brand advertisers and business-to-business organizations.   FRWD clients have included American Express, L'Oreal, Proctor & Gamble, Best Buy, Disney, General Mills, Colgate, and 3M.

8.      "Digital media executions" are advertising, communications, or marketing activities directed at the online audience.  Digital media executions can be a single event or a more coordinated, long-term campaign, and are done using online advertising tactics such as paid search, display, video, social media, and other forms of paid media.  Each of these approaches is designed to reach a defined target audience in the online spaces where people increasingly seek and obtain information. In executing this Notice Plan, FRWD will employ display tactics—specifically, placing banner advertisements on specific websites—to reach our intended audience.

9.      In my past six years as CEO of FRWD, and in my previous twelve years in marketing, I have overseen all aspects of digital & traditional media executions, ranging from strategic and creative design, to planning, to identification of technology partners, to integration of technology, to media buying, to optimizations of media executions. I have personally managed more than $120 million in digital and traditional media executions.  I have been hired by Fortune 500 clients to train their internal teams on digital media

3

technology and management. I have hired and trained more than 100 employees and personally integrated third-party, industry-leading technologies such as DoubleClick DFA, comScore, Terminal One, Nielsen and others which enable greater control of reach/frequency management, audience targeting, and verification, all of which will be applied in this case to implement an effective class action Notice Plan. In addition to digital media executions, I have personally overseen advertising programs that included digital and print as well as and digital and television. In 1999-2000, I personally managed newspaper and Outdoor advertising placements for Northwest Airlines. This experience at all stages of a media campaign, from planning through execution and training, provides a solid foundation of experience that informs my work on this Notice Plan.

10.     As part of FRWD's execution of multimedia campaigns, we have planned, designed, built, placed, and reported on thousands of individual web-based creative assets such as banner ads, websites, keyword search ads, Facebook landing pages, and other forms of content development.

11.     Areas of special expertise and focus for FRWD include local (city and state level) and national advertising focused on achieving specific reach and frequency targets. We use all of the digital tactics listed above. Over the past six years, FRWD has completed more than 1,000 individual digital media campaigns focused on a specific locale (geo-footprint), combined with audience targeting and very specific reach and frequency goals. We have done so for brands including Cheerios, Wheaties, Yoplait, Covergirl, Olay, Charmin, and Colgate.

## ADVERTISING TRENDS

12.     In the past decade, and specifically within the past few years, consumers have significantly shifted their consumption of media from print-based consumption to online-based consumption.   In response to this consumer shift in consumption, advertisers have shifted their spending from print-based to online-based advertising.

13.     The major driver behind these shifts is technology and its impact on consumers' time with media each day.  As reported by eMarketer,[1] U.S. adults in 2008 spent a combined 63 minutes every day reading magazines and newspapers.[2]  In 2011, that number had declined to 44 minutes per day, a decline in usage of 30%. In 2015, that number has declined to 21 minutes, a decline of 109% in the last 4 years alone.[3] During that same time period (from 2011 to 2015), daily time spent on digital media (online and mobile) has increased from 232 minutes per day to 338 minutes per day, a 50% increase. Thus, the average U.S. adult in 2015 now spends 16 times more time each day consuming media and information online than reading newspapers and magazines.

---

[1] eMarketer aggregates more than 4,000 sources of digital marketing and media research and publishes objective analysis of internet market trends.  For more than a decade, leading brands and agencies have relied on eMarketer as a recognized resource for data, analysis, and insights on digital marketing, media, and commerce.  eMarketer clients include Google, General Motors, and Kimberly Clark.  FRWD is also a client.
[2] eMarketer, Dec., 2011.
[3] eMarketer, April, 2015.

| Average Time Spent per Day with Major Media by US Adjults, 2011-2015 *hrs:mins and CAGR* | | | | | | |
|---|---|---|---|---|---|---|
| | 2011 | 2012 | 2013 | 2014 | 2015 | CAGR (2011-2015) |
| **Digital** | **3:40** | **4:20** | **4:51** | **5:15** | **5:38** | **11.4%** |
| —Desktop/laptop* | 2:33 | 2:27 | 2:19 | 2:22 | 2:22 | -1.8% |
| —Mobile (nonvoice) | 0:48 | 1:35 | 2:16 | 2:34 | 2:51 | 37.2% |
| —Other connected devices | 0:18 | 0:18 | 0:17 | 0:19 | 0:25 | 7.8% |
| **TV**** | **4:34** | **4:38** | **4:31** | **4:22** | **4:15** | **-1.8%** |
| **Radio**** | **1:34** | **1:32** | **1:30** | **1:28** | **1:27** | **-2.0%** |
| **Print**** | **0:44** | **0:38** | **0:32** | **0:26** | **0:21** | **-17.0%** |
| —Magazines | 0:18 | 0:16 | 0:14 | 0:12 | 0:10 | -13.5% |
| —Newspapers | 0:26 | 0:22 | 0:18 | 0:14 | 0:11 | -19.8% |
| **Other**** | **0:39** | **0:38** | **0:31** | **0:26** | **0:24** | **-11.7%** |
| **Total** | **11:11** | **11:46** | **11:55** | **11:57** | **12:04** | **1.9%** |

*Note: ages 18+; time spent with each medium includes all time spent with that medium, regardless of multitasking; for example, 1 hour of multitasking on desktop/laptop while watching TV is counted as 1 hour for TV and 1 hour for desktop/laptop; \*includes all internet activities on desktop and laptop computers; \*\*excludes digital*
*Source: eMarketer, April 2015*

188127                                                                  www.eMarketer.com

14.    The data on the total percentage of the average U.S. adult's interaction with media are similar.  Time online (mobile and traditional Internet) in 2010 made up 33.3% of the average person's total media consumption each day. In 2015 time online is now 44.6%. In 2010, time with newspapers and magazines combined for 8.2% of the average person's consumption, down from 10.8% in 2008.[4] In 2015, time spent with newspapers and magazines is at 1.7%.

15.    This shift in consumer consumption of media has led to widespread adoption of online advertising and a concurrent decline in reliance on print media. Industry-wide, this impact is evident from another eMarketer study.  In the year 2000, advertisers spent a collective $72.68 billion on magazine and newspaper advertising.[5] In

---

[4] *Id.*
[5] ZenithOptimedia, Apr. 7, 2010; provided to eMarketer by StarcomMediaVest Group, June 1, 2010.

2005, this number increased to $74.14 billion.   It has since been on a significant and steady decline, totaling $51.54 billion in 2009 and projecting to $31.6 billion in 2015.[6]

16.    Unsurprisingly, advertisers have shifted their expenditures to meet consumers where they are: online.  In 2000, advertisers spent $6.0 billion online.  In 2005, that number increased to $10.0 billion.   In 2009, the amount dedicated to online advertising reached $20.3 billion.[7]  In 2012, the amount dedicated to online advertising reached $36.8 billion and is projected to reach $52.5 billion in 2015.[8]

| US Total Media Ad Spending, by Media, 2011-2017 billions | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
| TV | $60.7 | $64.5 | $66.4 | $68.5 | $70.0 | $73.1 | $75.3 |
| Digital | $32.0 | $36.8 | $42.3 | $47.6 | $52.5 | $57.3 | $61.4 |
| —Mobile | $1.6 | $4.4 | $8.5 | $13.1 | $18.6 | $24.7 | $31.1 |
| Print | $35.8 | $34.1 | $32.9 | $32.2 | $31.6 | $31.3 | $31.2 |
| —Newspapers* | $20.7 | $18.9 | $17.8 | $17.1 | $16.6 | $16.2 | $16.1 |
| —Magazines* | $15.2 | $15.2 | $15.1 | $15.1 | $15.1 | $15.1 | $15.2 |
| Radio** | $15.2 | $15.4 | $15.6 | $15.9 | $16.0 | $16.0 | $16.1 |
| Outdoor | $6.4 | $6.7 | $7.0 | $7.2 | $7.4 | $7.6 | $7.8 |
| Directories* | $8.2 | $7.5 | $6.9 | $6.4 | $5.9 | $5.5 | $5.3 |
| Total | $158.3 | $165.0 | $171.0 | $177.8 | $183.4 | $190.9 | $197.0 |

Note: eMarketer benchmarks its US newspaper ad spending projections against the NAA, for which the last full year measured was 2012, and its US outdoor ad spending projections against the OAAA, for which the last full year measured was 2011; numbers may not add up to total due to rounding; *print only; **excludes off-air radio & digital
Source: eMarketer, Aug 2013

161679                                                          www.eMarketer.com

17.    I have personally participated in this evolution from print to digital advertising and understand advantages that digital media tools offer.  It is my opinion that using digital advertising in this Notice Plan offers an effective route to reach Settlement Class Members and inform them about the Settlement.

---

[6] eMarketer, April, 2015.
[7] Internet Advertising Bureau Revenue Report, http://www.iab.net/AdRevenueReport.
[8] eMarketer ,April, 2015.

## DEFINITION OF TARGET: AUDIENCE TARGETING AND VERIFICATION

18.     Online advertising affords multiple options to reach and verify that the Settlement Class Members were exposed to the Notice.  In the course of targeting, FRWD worked with Dahl to balance targeting and efficiency in reaching Settlement Class Members most effectively.

19.     We have the ability to target individuals according to specific demographic and psychographic (lifestyle and interest) characteristics.  This is done by focusing our notification advertising on specific websites (domains) which index highly against our core target.  As indicated in Paragraph 6 above, this notification plan is focused primarily on a nationwide audience of core sweetener users.  Leveraging industry leading digital tools such as comScore and Google, FRWD has selected hundreds of websites on which our audience visits at a rate of 50% greater than the typical Internet population.  These custom lists are a best practice in consumer advertising and will further strengthen our ability to provide notice to Settlement Class Members in this plan.   In this case, control of the websites that show the Notice, and where the Notice banner will appear on those websites, provides a higher likelihood of successfully exposing Settlement Class Members to the Notice.

20.     A full list of specific website domains on our list of potential targets is included as Exhibit 4 to the Affidavit of Jeffrey D. Dahl.

21.    In addition to selecting specific websites, we are leveraging Facebook Interest Targeting[9] which provides the opportunity to reach Settlement Class Members based on information they have added to their Facebook timelines.   This considers information such as the Facebook Pages they like, apps they use, and other information they have added to their timelines.

## CONNECTION TO THE NOTICE WEBSITE

22.    All digital communication in the form of web-based banners, social media digital notice advertisements, and keyword search ads will be connected to our notice website.   This tactic will provide the ability to connect Settlement Class Members directly to online content providing greater detail on this Settlement.   Specifically, our banner advertisements will list the Settlement website, and users who click on our banner advertisements will be routed directly to the Settlement website, where they will find information in greater detail.   This combination of reaching our audience and connecting to greater detail via the Settlement website provides us with a comprehensive and effective approach to reaching Settlement Class Members.

23.    In addition, FRWD will leverage Google Analytics [10] ("GA") on the Settlement website.   By using GA, FRWD can showcase reporting on the engagement of the Settlement Class Members on our Settlement website.   Specifically, GA will measure

---

[9] Facebook, https://www.facebook.com/help/131834970288134/.
[10] Google Analytics is a service offered by Google that generates detailed statistics about the visitors to a website.   GA can track visitors from all referring websites, including search engines, display advertising, pay-per-click networks, email marketing, and other traffic sources.

the most highly trafficked content and the total number of Settlement Class Members performing specific actions, such as the number of visitors, the number of pages viewed, the time spent, and the number of documents downloaded by type.

## **CONCLUSION**

24.    Based on my experience in designing and executing digital outreach and marketing plans, as well as industry best practices, it is my opinion that the digital media component of the Notice Plan will effectively reach Settlement Class Members.

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.  Executed this ___07___ day of October, 2015 in Minneapolis, Minnesota.

John Grudnowski
CEO
FRWD Co.

Sworn to and Subscribed before me
this _____ day of October, 2015.

Notary Public

JOANNA ARTIG
Notary Public
State of Minnesota
My Commission Expires
January 31, 2019

10

# EXHIBIT 3

**FOODIE CHANNEL**

101COOKBOOKS.COM
247MOMS.COM
5DOLLARDINNERS.COM
9JAFOODIE.COM
A-CROCK-COOK.COM
ADDAPINCH.COM
AFAMILYFEAST.COM
AFEWSHORTCUTS.COM
AGAINSTALLGRAIN.COM
ALANSKITCHEN.COM
ALICIASRECIPES.COM
ALLCOOKINGANDRECIPES.COM
ALLDAYIDREAMABOUTFOOD.COM
ALLMENUS.COM
ALLRECIPES.COM
ALLRECIPESTRIED.COM
AMANDASCOOKIN.COM
AMANDATHEVIRTUOUSWIFE.COM
AMAZINGRECIPEZ.COM
AMAZINGRIBS.COM
AMBITIOUSKITCHEN.COM
AMEESSAVORYDISH.COM
ANNIESRECIPES.COM
AROUNDMYFAMILYTABLE.COM
BACKTOHERROOTS.COM
BBQ-BRETHREN.COM
BEAUTYANDBEDLAM.COM
BEFOODSMART.COM
BESTFONDUE.COM
BETTERRECIPES.COM
BHG.COM
BIGGIRLSSMALLKITCHEN.COM
BIGREDKITCHEN.COM
BLESSTHISMESSPLEASE.COM
BONAPPETIT.COM
BUDGETBYTES.COM
BUDGETGOURMETMOM.COM
BUDGETSAVVYDIVA.COM
BUNSINMYOVEN.COM
CAFEMOM.COM
CDKITCHEN.COM
CELEBRATING-FAMILY.COM

CHAOSINTHEKITCHEN.COM
CHEAPCOOKING.COM
CHEFTALK.COM
CHOW.COM
CHRISTINACOOKS.COM
CHRISTINESRECIPES.COM
CLOSETCOOKING.COM
COLLEGERECIPES.COM
COOKBOOK-RECIPES.ORG
COOKEATDELICIOUS.COM
COOKEATSHARE.COM
COOKFOODEAT.COM
COOKINGCACHE.COM
COOKINGCHANNELTV.COM
COOKINGCLUB.COM
COOKINGLIGHT.COM
COOKINGRECIPECENTRAL.COM
COOKPAD.COM
COOKS.COM
COOKSINFO.COM
COOKSRECIPES.COM
COOKYOURFOOD.ORG
COOLMOMPICKS.COM
CRAZYFOOD.NET
CREATIVEKIDSNACKS.COM
CROCKINGIRLS.COM
CROCKPOTLADIES.COM
CRYSTALANDCOMP.COM
CULINARYADVENTURESINTHEKITCHEN.COM
CUPCAKERECIPES.COM
CUTEFOODFORKIDS.COM
DAMNDELICIOUS.NET
DAYDREAMKITCHEN.COM
DEDEMED.COM
DELIAONLINE.COM
DELISH.COM
DELISHMISH.COM
DETOXINISTA.COM
DEVILEDEGGS.COM
DINEANDDISH.NET
DINERESTAURANTCOM.COM
DINNERSDISHESANDDESSERTS.COM
DISCUSSCOOKING.COM

DISHTIP.COM
DIVASCANCOOK.COM
DIYPINTEREST.COM
DWELLONJOY.COM
EASY-COOKBOOK-RECIPES.COM
EASY-FRENCH-FOOD.COM
EATATHOMECOOKS.COM
EATBETTERAMERICA.COM
EATBYDATE.COM
EATDRINKBETTER.COM
EATDRINKEAT.COM
EAT-DRINK-LOVE.COM
EATER.COM
EATGOOD4LIFE.COM
EATING-MADE-EASY.COM
EATINGWELL.COM
EATLIVERUN.COM
EATSALEM.COM
EAT-YOURSELF-SKINNY.COM
EATYOURWORLD.COM
ELLENSKITCHEN.COM
EMERIL.COM
ENDLESSAPPETIZERS.COM
EPICMEALTIME.COM
EPICURIOUS.COM
FABULOUSFOODS.COM
FAMILYCOOKBOOKPROJECT.COM
FAMILYCORNER.COM
FAMILYFRESHMEALS.COM
FAMILYOVEN.COM
FATFREEVEGAN.COM
FAUZIASKITCHENFUN.COM
FEASTIE.COM
FINECOOKING.COM
FINEDININGS.COM
FINGERLICKINRECIPES.COM
FOOD-4TOTS.COM
FOODANDWINE.COM
FOODBANTER.COM
FOODBUZZ.COM
FOODBYCOUNTRY.COM
FOODCHANNEL.COM
FOOD.COM

FOODEPIX.COM
FOODGAWKER.COM
FOODIEPORTAL.COM
FOODISTA.COM
FOODLOVESWRITING.COM
FOODLVE.COM
FOODNDRECIPE.COM
FOODNETWORK.COM
FOODNETWORKFANS.COM
FOODNETWORKGOSSIP.COM
FOODONTHETABLE.COM
FOODPANTRIES.ORG
FOODPICSTIME.COM
FOODRANDOM.COM
FOODREPUBLIC.COM
FOODSUBS.COM
FOODTERMS.COM
FOODVANNET.COM
FOODVEE.COM
FORTHELOVEOFCOOKING.NET
FOURMARRSONEVENUS.COM
FREEFOOD.ORG
FUNANDFOODCAFE.COM
GASTRONOMYBLOG.COM
GIMMESOMEOVEN.COM
GIRLMAKESFOOD.COM
GLOBALGOURMET.COM
GOODRECIPESONLINE.COM
GOURMANDIA.COM
GOURMETSLEUTH.COM
GREATPARTYRECIPES.COM
GREAT-SALSA.COM
GROCERYBUDGET101.COM
GROCERYSMARTS.COM
GROUPRECIPES.COM
GWENS-NEST.COM
HALFHOURMEALS.COM
HEALTHIERHABITS.NET
HEALTHY-DELICIOUS.COM
HEALTHYFOODHOUSE.COM
HEANDSHEEATCLEAN.COM
HEATHERSDISH.COM
HELPWITHCOOKING.COM

HILLBILLYHOUSEWIFE.COM
HOLYCOWVEGAN.NET
HOMEMADESIMPLE.COM
HOWDOESSHE.COM
HOWSWEETEATS.COM
HUNGRYHEALTHYHAPPY.COM
HUNGRYMONSTER.COM
ICE-CREAM-RECIPES.COM
ICHEF.COM
IFOOD.TV
INMAMASKITCHEN.COM
INNATTHECROSSROADS.COM
IOWAGIRLEATS.COM
JAMIEOLIVER.COM
JDANIEL4SMOM.COM
JEANETTESHEALTHYLIVING.COM
JUSTAPINCH.COM
JUSTFRUITRECIPES.COM
JUSTGETOFFYOURBUTTANDBAKE.COM
JUSTHERFOOD.COM
JUSTVEGETABLERECIPES.COM
KATHEATS.COM
KHANAPAKANA.COM
KIDSKUBBY.COM
KIDSSTUFFWORLD.COM
KITCHENDAILY.COM
KITCHENMEETSGIRL.COM
KITCHENTREATY.COM
KRAFTRECIPES.COM
KUALI.COM
LAURAINTHEKITCHEN.COM
LIFESAMBROSIA.COM
LILLUNA.COM
LISASDINNERTIMEDISH.COM
LIVEMOREDAILY.COM
LIVING-FOODS.COM
LORISCULINARYCREATIONS.COM
LOVEFOODIES.COM
LOVINGMYNEST.COM
LYNNSKITCHENADVENTURES.COM
MAKEDINNEREASY.COM
MAMASLEBANESEKITCHEN.COM
MANJULASKITCHEN.COM

MEALPLANNING101.COM
MEALPLANNINGMAGIC.COM
MEALSFORYOU.COM
MEALTRAIN.COM
MELSKITCHENCAFE.COM
MIDWESTLIVING.COM
MINIMALISTBAKER.COM
MODERNMOM.COM
MODERNPARENTSMESSYKIDS.COM
MOMSCONFESSION.COM
MONTHLYMEALPLANNER.COM
MOSTLYHOMEMADEMOM.COM
MRFOOD.COM
MYFRIDGEFOOD.COM
MYHEALTHYDISH.COM
MYHONEYSPLACE.COM
MYRECIPEMAGIC.COM
MYRECIPES.COM
MYWEBGROCER.COM
NANCYSKITCHEN.COM
NAVYWIFECOOK.COM
NOMNOMPALEO.COM
NOOBCOOK.COM
OCHEF.COM
ONCEUPONACHEF.COM
PACHAKAM.COM
PANLASANGPINOY.COM
PARTYPINCHING.COM
PARTY-RECIPES-AND-IDEAS.COM
PETITCHEF.COM
PLAINCHICKEN.COM
POCKETCHANGEGOURMET.COM
PORTUGUESEDINER.COM
PREVENTIONRD.COM
QUICK-AND-EASY-DINNER.COM
RACHAELRAYMAG.COM
RACHAELRAYSHOW.COM
RAWFOODSUPPORT.COM
REALCAJUNRECIPES.COM
REALMOMKITCHEN.COM
REALSIMPLE.COM
RECIPAGE.COM
RECIPE4ALL.COM

RECIPE4LIVING.COM
RECIPEBEST.COM
RECIPEBYPHOTO.COM
RECIPECHART.COM
RECIPECIRCUS.COM
RECIPE.COM
RECIPEGIRL.COM
RECIPEHUB.COM
RECIPEKEY.COM
RECIPELINK.COM
RECIPERECOMMENDATIONS.COM
RECIPEREHAB.COM
RECIPES4CAKES.COM
RECIPESECRETS.NET
RECIPESGAWKER.COM
RECIPESOURCE.COM
RECIPETIPS.COM
RELISH.COM
RICARDOCUISINE.COM
ROADFOOD.COM
RUNNINGTOTHEKITCHEN.COM
SAHARRESTAURANT.COM
SANDRALEE.COM
SANJEEVKAPOOR.COM
SAVEUR.COM
SAVORYSWEETLIFE.COM
SECONDCHANCETODREAM.COM
SEMIHOMEMADE.COM
SERIOUSEATS.COM
SHRINKINGKITCHEN.COM
SIMPLYRECIPES.COM
SIXSISTERSSTUFF.COM
SKINNYMOM.COM
SKINNYMS.COM
SKINNYTASTE.COM
SLENDERKITCHEN.COM
SLOWANDSIMPLE.COM
SMILECOOKING.COM
SNACK-GIRL.COM
SORTEDFOOD.COM
SOUTHERNLIVING.COM
SPENDWITHPENNIES.COM
STACEYSNACKSONLINE.COM

STACYMAKESCENTS.COM
SUPERCOOK.COM
SUPERHEALTHYKIDS.COM
SUREFOODSLIVING.COM
SUSIEQTPIESCAFE.COM
SWEETIEPIESS.COM
TABLEFEAST.COM
TAMMYSRECIPES.COM
TASTEOFHOME.COM
TASTESPOTTING.COM
TASTINGPOLAND.COM
TASTYTREAT.ORG
TEXASCOOKING.COM
THATSMYHOME.COM
THEENDLESSMEAL.COM
THEFRESHLOAF.COM
THEGRACIOUSPANTRY.COM
THEHUNGRYMOUSE.COM
THE-ITALIAN-FOOD.COM
THEKITCHN.COM
THEMARATHONMOM.COM
THEMEDITERRANEANKITCHEN.ORG
THENIBBLE.COM
THERECIPECRITIC.COM
THESLOWROASTEDITALIAN.COM
THEWORLDWIDEGOURMET.COM
THRIVINGHOMEBLOG.COM
TITLISBUSYKITCHEN.COM
TOPDINNERRECIPES.NET
TOPINSPIRED.COM
TOPSECRETRECIPES.COM
TRADITIONAL-FOODS.COM
TWOPEASANDTHEIRPOD.COM
VAHREHVAH.COM
VERYCULINARY.COM
VIETNAMESE-RECIPES.COM
WEARYCHEF.COM
WEBEKITCHEN.COM
WEEKLY-DINNER-IDEAS.COM
WELLCOOKED.NET
WHATS4EATS.COM
WHATSCOOKINGAMERICA.COM
WHATSFORDINNER.NET

WOMENWORLDBLOG.COM
YESIWANTCAKE.COM
YUMMLY.COM
YUMMYHEALTHYEASY.COM
YUMSUGAR.COM

**REACH CHANNEL**
1-800-FLOWERS.COM
9NEWS.COM
AAA.COM
AARP.ORG
ABC.COM
ABC7CHICAGO.COM
ABCNEWS.COM
ABOUT.COM
ACADEMY.COM
ACCESSHOLLYWOOD.COM
ACCUWEATHER.COM
ACER.COM
ACESHOWBIZ.COM
ACROBAT.COM
ACTIVE.COM
ACTSTUDENT.ORG
ADDICTINGGAMES.COM
ADDICTIVETIPS.COM
ADSUPPLY.COM
ADULTSWIM.COM
AE.COM
AETV.COM
AGAME.COM
AIM.COM
AJC.COM
AL.COM
ALIBABA.COM
ALLEGIANTAIR.COM
ALLMENUS.COM
ALLMUSIC.COM
ALLPOSTERS.COM
ALLRECIPES.COM
ALLVOICES.COM
ALOT.COM
ALTERNET.ORG
ALWAYSDOWNLOADS.COM

AMAZON.CO.UK
AMAZON.COM
AMCTHEATRES.COM
AMCTV.COM
AMD.COM
AMERICANFAMILY.COM
AMERICANGREETINGS.COM
AMERICANIDOL.COM
AMERICANLISTED.COM
AMERICANPROFILE.COM
AMERICANTOWNS.COM
ANCESTRY.COM
ANDERSONCOOPER.COM
ANDROIDCENTRAL.COM
ANDROIDFORUMS.COM
ANGIESLIST.COM
ANGRYBIRDS.COM
ANNUALCREDITREPORT.COM
ANSWERBAG.COM
ANSWERS.COM
AOL.COM
AOLANSWERS.COM
AP.ORG
APARTMENTFINDER.COM
APARTMENTGUIDE.COM
APARTMENTHOMELIVING.COM
APARTMENTRATINGS.COM
APARTMENTS.COM
APPLES4THETEACHER.COM
AQ.COM
ARCADEWEB.COM
ARCHIVE.ORG
ARCHIVES.COM
ARCOT.COM
AREACONNECT.COM
ARMORGAMES.COM
ARMY.MIL
ARSTECHNICA.COM
ART.COM
ARTICLESBASE.COM
ASK.CO.UK
ASK.COM
ASKMEFAST.COM

ASKMEHELPDESK.COM
ASKMEN.COM
ASOS.COM
ASSOCIATEDCONTENT.COM
ASUS.COM
ATT.COM
ATT.NET
ATTRAKT.COM
AUDIBLE.COM
AUTHORIZE.NET
AUTO-PRICE-FINDER.COM
AUTOANYTHING.COM
AUTOBLOG.COM
AUTODESK.COM
AUTOPARTSWAREHOUSE.COM
AUTOTRADER.COM
AUTOZONE.COM
AVAST.COM
AVCLUB.COM
AVERY.COM
AVG.COM
AVIS.COM
AVON.COM
AVS4YOU.COM
AVVO.COM
AZCENTRAL.COM
AZLYRICS.COM
BABBLE.COM
BABIESRUS.COM
BABYCENTER.COM
BABYLON.COM
BACKCOUNTRY.COM
BACKPAGE.COM
BADOO.COM
BAIDU.COM
BALTIMORESUN.COM
BANANAREPUBLIC.COM
BANDCAMP.COM
BANKRATE.COM
BARBIE.COM
BARNESANDNOBLE.COM
BARRONS.COM
BARSTOOLSPORTS.COM

BASEBALL-REFERENCE.COM
BASSPRO.COM
BATHANDBODYWORKS.COM
BBB.ORG
BBC.CO.UK
BBT.COM
BEACHBODY.COM
BEAUTYOFTHEWEB.COM
BECOME.COM
BEDBATHANDBEYOND.COM
BEEMP3.COM
BEESQ.NET
BEHANCE.NET
BELK.COM
BERRIES.COM
BESO.COM
BEST-DEAL.COM
BESTBUY.COM
BESTWESTERN.COM
BET.COM
BETTYCROCKER.COM
BHG.COM
BHPHOTOVIDEO.COM
BIBLE.CC
BIBLEGATEWAY.COM
BIGCARTEL.COM
BIGFISHGAMES.COM
BIGLOTS.COM
BILLBOARD.COM
BILLMATRIX.COM
BILLMELATER.COM
BING.COM
BIOGRAPHY.COM
BITBERRYUPDATES.COM
BITRHYMES.COM
BITSHARE.COM
BITSNOOP.COM
BITTORRENT.COM
BIZJOURNALS.COM
BIZRATE.COM
BJS.COM
BKSTR.COM
BLACKBERRY.COM

BLACKBOARD.COM
BLACKPLANET.COM
BLASTRO.COM
BLEACHERREPORT.COM
BLEKKO.COM
BLINKX.COM
BLISS.COM
BLIZZARD.COM
BLOCKBUSTER.COM
BLOCKSHOPPER.COM
BLOGGER.COM
BLOGS.COM
BLOGSPOT.CA
BLOGSPOT.CO.UK
BLOGSPOT.IN
BLOGTALKRADIO.COM
BLOOMBERG.COM
BLOOMINGDALES.COM
BLS.GOV
BLUEHOST.COM
BLUEMOUNTAIN.COM
BLUESHELLGAMES.COM
BOARDREADER.COM
BOATTRADER.COM
BODYBUILDING.COM
BOINGBOING.NET
BOOKING.COM
BOOKINGBUDDY.COM
BOOKIT.COM
BOOKRAGS.COM
BOOSTMOBILE.COM
BORED.COM
BOSSIP.COM
BOSTON.COM
BOSTONGLOBE.COM
BOSTONHERALD.COM
BOX.COM
BOX10.COM
BOXOFFICEMOJO.COM
BRADFORDEXCHANGE.COM
BRADSDEALS.COM
BRAINYQUOTE.COM
BRASSRING.COM

BRAVOTV.COM
BREAK.COM
BREITBART.COM
BRIGHT.COM
BRIGHTHUB.COM
BRITANNICA.COM
BROTHERSOFT.COM
BUDGET.COM
BUFFALO-GGN.NET
BULBAGARDEN.NET
BUSINESSINSIDER.COM
BUSINESSWEEK.COM
BUSTEDCOVERAGE.COM
BUY.COM
BUYATOYOTA.COM
BUYCHEAPR.COM
BUZZFEED.COM
BUZZLE.COM
BUZZYA.COM
BYINTER.NET
CA.GOV
CABELAS.COM
CAFEMOM.COM
CAFEPRESS.COM
CALIBEX.COM
CALLOFDUTY.COM
CALOTTERY.COM
CAMPUSCORNER.COM
CAMPUSEXPLORER.COM
CAPITALONE.COM
CARANDDRIVER.COM
CARDOMAIN.COM
CARE.COM
CARE2.COM
CAREERBUILDER.COM
CARFAX.COM
CARGURUS.COM
CARIBBEANNEWSNOW.COM
CARID.COM
CARING.COM
CARINGBRIDGE.ORG
CARMAX.COM
CARNIVAL.COM

CARS.COM
CARSDIRECT.COM
CARSFORSALE.COM
CARTOONNETWORK.COM
CARTOWN.COM
CBC.CA
CBS.COM
CBSLOCAL.COM
CBSNEWS.COM
CBSSPORTS.COM
CCBILL.COM
CDC.GOV
CDUNIVERSE.COM
CELEBRITY-GOSSIP.NET
CELEBSPIN.COM
CELEBUZZ.COM
CENSUS.GOV
CENTURY21.COM
CENTURYLINK.COM
CENTURYLINK.NET
CHACHA.COM
CHANGE.ORG
CHARLOTTEOBSERVER.COM
CHARLOTTERUSSE.COM
CHARTER.COM
CHARTER.NET
CHASE.COM
CHATROULETTE.COM
CHEAPFLIGHTS.COM
CHEAPOAIR.COM
CHEAPTICKETS.COM
CHEATCC.COM
CHEEZBURGER.COM
CHEGG.COM
CHEVROLET.COM
CHICAGOTRIBUNE.COM
CHILDRENSPLACE.COM
CHINAFLIX.COM
CHOICEHOTELS.COM
CHOW.COM
CHRISTIANBOOK.COM
CHRISTIANPOST.COM
CHRON.COM

CIGNA.COM
CINEMABLEND.COM
CINEMARK.COM
CIRCLEOFMOMS.COM
CISCO.COM
CITI.COM
CITICARDS.COM
CITIZENSBANK.COM
CITRIXONLINE.COM
CITY-DATA.COM
CITYSEARCH.COM
CLARIDADPUERTORICO.COM
CLASSESUSA.COM
CLASSIFIEDADS.COM
CLASSMATES.COM
CLEVELAND.COM
CLIFFSNOTES.COM
CLIPARTOF.COM
CLUBPENGUIN.COM
CMT.COM
CNBC.COM
CNET.COM
CNETTV.COM
CNN.COM
CNNMONEY.COM
CNSNEWS.COM
COACH.COM
COLDWATERCREEK.COM
COLDWELLBANKER.COM
COLLEGEBOARD.COM
COLLEGECONFIDENTIAL.COM
COLLEGEHUMOR.COM
COLLIDER.COM
COMCAST.COM
COMCAST.NET
COMEDYCENTRAL.COM
COMENITY.NET
COMICBOOKMOVIE.COM
COMICVINE.COM
COMPLEX.COM
COMPUTERWORLD.COM
COMPUTING.NET
CONDUIT.COM

CONSTANTCONTACT.COM
CONSUMERAUTOSOURCE.COM
CONSUMERREPORTS.ORG
CONSUMERSEARCH.COM
CONTACTMUSIC.COM
CONTENKO.COM
CONVERGENTCARE.COM
CONVIO.COM
COOKINGLIGHT.COM
COOKS.COM
COOLMATH-GAMES.COM
COOLMATH.COM
COOLMATH4KIDS.COM
COOLROM.COM
COREL.COM
CORNELL.EDU
CORPORATIONWIKI.COM
CORTERA.COM
COSMOPOLITAN.COM
COSTCO.COM
COUPONALERT.COM
COUPONS.COM
COWBOYLYRICS.COM
COX.COM
COX.NET
CRACKED.COM
CRACKLE.COM
CRAIGSLIST.ORG
CRATEANDBARREL.COM
CRAVEONLINE.COM
CREDITKARMA.COM
CREDITONEBANK.COM
CREDITREPORT.COM
CRUNCHYROLL.COM
CRUTCHFIELD.COM
CSMONITOR.COM
CUNY.EDU
CUSTHELP.COM
CUSTOMINK.COM
CVS.COM
CWTV.COM
CYCLETRADER.COM
DAILYCALLER.COM

DAILYFINANCE.COM
DAILYGLOW.COM
DAILYKOS.COM
DAILYMAIL.CO.UK
DAILYMOTION.COM
DAILYRX.COM
DALLASNEWS.COM
DAVESGARDEN.COM
DAVIDSBRIDAL.COM
DEADLINE.COM
DEADSPIN.COM
DEALTIME.COM
DEGREELINK.NET
DELISH.COM
DELL.COM
DELTA.COM
DENVERPOST.COM
DEPOSITFILES.COM
DETNEWS.COM
DEVRY.EDU
DEXKNOWS.COM
DHGATE.COM
DICKSSPORTINGGOODS.COM
DICTIONARY.COM
DIGG.COM
DIGITALTRENDS.COM
DILLARDS.COM
DIRECTORSLIVE.COM
DIRECTV.COM
DISCOVERBING.COM
DISCOVERCARD.COM
DISCOVERMAGAZINE.COM
DISCOVERY.COM
DISCOVERYEDUCATION.COM
DISH.COM
DIVINECAROLINE.COM
DIYFASHION.COM
DIYNETWORK.COM
DMV.ORG
DOCSTOC.COM
DOCTOROZ.COM
DOGBREEDINFO.COM
DOITYOURSELF.COM

| | | |
|---|---|---|
| DOMAINTOOLS.COM | EMPOWHER.COM | FANNATION.COM |
| DOMINOS.COM | ENCYCLOPEDIA.COM | FANPOP.COM |
| DRAGONETERNITY.COM | ENGADGET.COM | FANTAGE.COM |
| DREAMJOBBER.COM | ENOTES.COM | FAQS.ORG |
| DREAMSTIME.COM | ENTERPRISE.COM | FARK.COM |
| DRUDGEREPORT.COM | ENTREPRENEUR.COM | FARMVILLE.COM |
| DRUGSTORE.COM | EONLINE.COM | FASTCOMPANY.COM |
| DSWSHOES.COM | EPA.GOV | FATWALLET.COM |
| DUMMIES.COM | EPICURIOUS.COM | FAVIM.COM |
| DVDVIDEOSOFT.COM | EPINIONS.COM | FC2.COM |
| E-REWARDS.COM | EPRIZE.NET | FEDEX.COM |
| EA.COM | EQUIFAX.COM | FIDELITY.COM |
| EARTHLINK.NET | ESPN.COM | FILE.ORG |
| EASTBAY.COM | ESPNRADIO.COM | FILEBOX.COM |
| EASYBIB.COM | ESPNSOCCERNET.COM | FILECROP.COM |
| EATINGWELL.COM | ESQUIRE.COM | FILEFACTORY.COM |
| EBAUMSWORLD.COM | ESSENCE.COM | FILEHIPPO.COM |
| EBAY.CO.UK | ESSORTMENT.COM | FILESERVE.COM |
| EBAY.COM | ETEAMZ.COM | FILESONIC.COM |
| EBAYCLASSIFIEDS.COM | ETONLINE.COM | FILESTUBE.COM |
| EBAYSTORES.COM | ETRADE.COM | FILMANNEX.COM |
| ECOLLEGE.COM | ETSY.COM | FINANCIAL-NET.COM |
| ECONOMIST.COM | EVENTBRITE.COM | FINDARTICLES.COM |
| ECRATER.COM | EVENTFUL.COM | FINDLAW.COM |
| EDIBLEARRANGEMENTS.COM | EVENUE.NET | FINDTHEBEST.COM |
| EDLINE.NET | EVERYDAYHEALTH.COM | FINDTHERIGHTJOB.COM |
| EDMODO.COM | EVITE.COM | FINECOMB.COM |
| EDMUNDS.COM | EW.COM | FINGERHUT.COM |
| EDUCATION-PORTAL.COM | EXAMINER.COM | FINISHLINE.COM |
| EDUCATION.COM | EXPEDIA.COM | FIRESTONECOMPLETEAUTOCARE.COM |
| EDUCATIONASSISTANCE.ORG | EXPERIAN.COM | FIRSTROWSPORTS.EU |
| EDUCATIONCONNECTION.COM | EXPERIENCEPROJECT.COM | FITNESSMAGAZINE.COM |
| EGOTASTIC.COM | EXPOSAY.COM | FITSUGAR.COM |
| EHARMONY.COM | EXPRESS.COM | FIXYA.COM |
| EHEALTHFORUM.COM | EZINEARTICLES.COM | FLALOTTERY.COM |
| EHOW.COM | FAB.COM | FLICKR.COM |
| ELEXPRESSO.COM | FACEBOOK.COM | FLICKRIVER.COM |
| ELLE.COM | FAILBLOG.ORG | FLIXSTER.COM |
| ELNUEVODIA.COM | FAMILY.COM | FLY.COM |
| ELNUEVODIA.COM | FAMILYBUILDER.COM | FODORS.COM |
| ELYRICS.NET | FAMOUSFOOTWEAR.COM | FOOD.COM |
| EMEDICINEHEALTH.COM | FANDANGO.COM | FOODANDWINE.COM |
| EMEDTV.COM | FANFICTION.NET | FOODNETWORK.COM |

| | | |
|---|---|---|
| FOOL.COM | GAMERCLICK.COM | GOOGLE.CA |
| FOOTLOCKER.COM | GAMES-VILLAGE.COM | GOOGLE.CO.UK |
| FORBES.COM | GAMES.COM | GOOGLE.COM |
| FORCE.COM | GAMESGAMES.COM | GOOGLE.COM.MX |
| FORD.COM | GAMESPOT.COM | GOOGLE.ES |
| FOREVER21.COM | GAMESRADAR.COM | GOOGLE.NL |
| FORLOCATIONS.COM | GAMESTOP.COM | GORILLALEAK.COM |
| FORMSPRING.ME | GAMESXITE.COM | GOSSIPCENTER.COM |
| FORUMOTION.COM | GAMETRAILERS.COM | GOSSIPCOP.COM |
| FOTOSEARCH.COM | GAMINGWONDERLAND.COM | GOTHAMIST.COM |
| FOURSQUARE.COM | GAP.COM | GOTOMEETING.COM |
| FOX.COM | GARDENGUIDES.COM | GOURMANDIA.COM |
| FOXBUSINESS.COM | GARDENWEB.COM | GOVERNMENTJOBS.COM |
| FOXNEWS.COM | GARMIN.COM | GQ.COM |
| FOXSPORTS.COM | GATHER.COM | GRADESAVER.COM |
| FOXSPORTSFLORIDA.COM | GAWKER.COM | GRAINGER.COM |
| FOXSPORTSSOUTHWEST.COM | GEICO.COM | GRANTLAND.COM |
| FOXSPORTSWEST.COM | GETGLUE.COM | GRASSCITY.COM |
| FOXSPORTSWISCONSIN.COM | GIANTBOMB.COM | GREATSCHOOLS.ORG |
| FREECAUSE.COM | GIFTS.COM | GREENDOT.COM |
| FREECREDITREPORT.COM | GIGAOM.COM | GREYHOUND.COM |
| FREECREDITSCORE.COM | GILT.COM | GRINDTV.COM |
| FREEFLYS.COM | GIRLSGOGAMES.COM | GROOVESHARK.COM |
| FREEONLINEGAMES.COM | GIZMODO.COM | GROUPON.COM |
| FREESHIPPING.COM | GLAM.COM | GROUPRECIPES.COM |
| FROMMERS.COM | GLAMOUR.COM | GSN.COM |
| FRONTIER.COM | GLASSDOOR.COM | GUAMPDN.COM |
| FROSTWIRE.COM | GLOBALGRIND.COM | GUARDIAN.CO.UK |
| FRYS.COM | GLOGSTER.COM | GUITARCENTER.COM |
| FT.COM | GMC.COM | GUYISM.COM |
| FTC.GOV | GNC.COM | HALF.COM |
| FTD.COM | GO.COM | HALLMARK.COM |
| FULLSAIL.EDU | GODADDY.COM | HAMPTON-INN.COM |
| FUNBRAIN.COM | GODVINE.COM | HARBORFREIGHT.COM |
| FUNNYJUNK.COM | GOFREE.COM | HARK.COM |
| FUNNYORDIE.COM | GOGECAPITAL.COM | HARVARD.EDU |
| FUNTRIVIA.COM | GOGOANIME.COM | HASBRO.COM |
| G4TV.COM | GOLF.COM | HAUTELOOK.COM |
| GADLING.COM | GOLFLINK.COM | HBO.COM |
| GAMEFAQS.COM | GOOD.IS | HBOGO.COM |
| GAMEFLY.COM | GOODCHOLESTEROLCOUNT.COM | HEALTH.COM |
| GAMEHOUSE.COM | GOODHOUSEKEEPING.COM | HEALTHBOARDS.COM |
| GAMEINFORMER.COM | GOODREADS.COM | HEALTHCENTRAL.COM |

| | | |
|---|---|---|
| HEALTHGRADES.COM | HOWSTUFFWORKS.COM | IMVU.COM |
| HEALTHGURU.COM | HOWTOGEEK.COM | IN.COM |
| HEALTHLINE.COM | HP.COM | IN.GOV |
| HEAVY.COM | HRDEPARTMENT.COM | INBOX.COM |
| HELIUM.COM | HRSACCOUNT.COM | INBOXDOLLARS.COM |
| HERDAILY.COM | HRW.COM | INC.COM |
| HERTZ.COM | HSBC.COM | INCREDIBAR.COM |
| HEWITT.COM | HSBCCREDITCARD.COM | INDEED.COM |
| HGTV.COM | HSN.COM | INDEPENDENT.CO.UK |
| HGTVREMODELS.COM | HTC.COM | INDIATIMES.COM |
| HHS.GOV | HUBPAGES.COM | INDYSTAR.COM |
| HIGHBEAM.COM | HUFFINGTONPOST.CA | INFO.COM |
| HILLSHIREFARM.COM | HUFFINGTONPOST.CO.UK | INFOPLEASE.COM |
| HILTON.COM | HUFFINGTONPOST.COM | INFORMER.COM |
| HISTORY.COM | HULKSHARE.COM | INGDIRECT.COM |
| HLNTV.COM | HUMORSWITCH.COM | INQUISITR.COM |
| HM.COM | HYATT.COM | INSIDERPAGES.COM |
| HOBBYLOBBY.COM | HYPSTER.COM | INSTAGR.AM |
| HODESIQ.COM | HYUNDAIUSA.COM | INSTAGRAM.COM |
| HOLIDAYINN.COM | IAMCATWALK.COM | INSTANTCHECKMATE.COM |
| HOLLISTERCO.COM | IAPPLICANTS.COM | INSTRUCTABLES.COM |
| HOLLYSCOOP.COM | IBM.COM | INSTYLE.COM |
| HOLLYWIRE.COM | IBTIMES.COM | INTEL.COM |
| HOLLYWOOD.COM | ICANHASCHEEZBURGER.COM | INTELIUS.COM |
| HOLLYWOODLIFE.COM | ICHOTELSGROUP.COM | INTELLICAST.COM |
| HOLLYWOODREPORTER.COM | ICIMS.COM | INTERIORCOMPLEX.COM |
| HOMEAWAY.COM | ICLOUD.COM | INTUIT.COM |
| HOMEDEPOT.COM | ICONTACT.COM | INVESTOPEDIA.COM |
| HOMEFINDER.COM | IEGALLERY.COM | INVESTORS.COM |
| HOMES.COM | IFOOD.TV | IO9.COM |
| HOMESTEAD.COM | IFUNNY.MOBI | IOFFER.COM |
| HOMETOWNLOCATOR.COM | IGN.COM | IPLAY.COM |
| HONDA.COM | IHEART.COM | IREPORT.COM |
| HOODAMATH.COM | IHOTELIER.COM | IRS.GOV |
| HOOVERS.COM | IKEA.COM | ISOHUNT.COM |
| HOTELPLANNER.COM | ILLINOIS.EDU | ISSOLUTIONS.INFO |
| HOTELS.COM | IMDB.COM | ISSUU.COM |
| HOTELSONE.COM | IMESH.COM | ISTOCKPHOTO.COM |
| HOTPADS.COM | IMGFAVE.COM | ITIBITIPHONE.COM |
| HOTTOPIC.COM | IMGUR.COM | ITT-TECH.EDU |
| HOTWIRE.COM | IMINENT.COM | IVILLAGE.COM |
| HOUSEHOLDBANK.COM | IMOTORS.COM | IWASTESOMUCHTIME.COM |
| HOUZZ.COM | IMVU-CUSTOMER-SANDBOX.COM | IWIN.COM |

| | | |
|---|---|---|
| JACKHENRY.COM | KHANACADEMY.ORG | LIVESTRONG.COM |
| JALOPNIK.COM | KICKSTARTER.COM | LIVINGSOCIAL.COM |
| JANGO.COM | KIDSHEALTH.ORG | LLBEAN.COM |
| JAVA.COM | KIZI.COM | LOC.GOV |
| JCPENNEY.COM | KMART.COM | LOCAL.COM |
| JCWHITNEY.COM | KNOWYOURMEME.COM | LOCALBUZZ.US |
| JEST.COM | KODAK.COM | LOCALGUIDES.COM |
| JETBLUE.COM | KODAKGALLERY.COM | LOCALHEALTH.COM |
| JEZEBEL.COM | KOHLS.COM | LOCALPAGES.COM |
| JOANN.COM | KOMONEWS.COM | LOCKERZ.COM |
| JOB.COM | KONGREGATE.COM | LOGITECH.COM |
| JOBAMATIC.COM | KOTAKU.COM | LOGMEIN.COM |
| JOBRAPIDO.COM | KRAFTRECIPES.COM | LOLZBOOK.COM |
| JOBS-TO-CAREERS.COM | KROGER.COM | LONELYPLANET.COM |
| JOBSONLINE.NET | KRONOSTM.COM | LOOPNET.COM |
| JOBSRADAR.COM | KSL.COM | LOVETOKNOW.COM |
| JOIN.ME | KTLA.COM | LOWERMYBILLS.COM |
| JOYSTIQ.COM | KUAM.COM | LOWES.COM |
| JR.COM | KUDZU.COM | LOWFARES.COM |
| JSONLINE.COM | LANDSEND.COM | LUMOSITY.COM |
| JSTOR.ORG | LANEBRYANT.COM | LYCOS.COM |
| JUSTANSWER.COM | LAST.FM | LYRICS007.COM |
| JUSTFAB.COM | LATIMES.COM | LYRICSFREAK.COM |
| JUSTIA.COM | LDS.ORG | LYRICSMANIA.COM |
| JUSTIN.TV | LEAGUEOFLEGENDS.COM | LYRICSMODE.COM |
| JUSTJARED.COM | LEAWO.COM | LYRICSTIME.COM |
| K12.CA.US | LEGACY.COM | MAC-FORUMS.COM |
| K12.FL.US | LEGO.COM | MACRUMORS.COM |
| K12.GA.US | LENOVO.COM | MACWORLD.COM |
| K12.IN.US | LEVI.COM | MACYS.COM |
| K12.NC.US | LG.COM | MADAMENOIRE.COM |
| K12.NJ.US | LIFEHACKER.COM | MADE-IN-CHINA.COM |
| K12.OH.US | LIFESCRIPT.COM | MADEMAN.COM |
| KABAM.COM | LIGHTINTHEBOX.COM | MAGICJACK.COM |
| KABOODLE.COM | LIJIT.COM | MAHALO.COM |
| KABOOSE.COM | LINKEDIN.COM | MAKERS.COM |
| KANSASCITY.COM | LISTVERSE.COM | MAKEUSEOF.COM |
| KARMALOOP.COM | LIVE.COM | MANAGEYOURLOANS.COM |
| KAT.PH | LIVEJOURNAL.COM | MANDATORY.COM |
| KAYAK.COM | LIVELEAK.COM | MANTA.COM |
| KBB.COM | LIVENATION.COM | MANUALSONLINE.COM |
| KEEPVID.COM | LIVESCIENCE.COM | MAPQUEST.COM |
| KELLOGGS.COM | LIVESTREAM.COM | MAPS4PC.COM |

MAPSGALAXY.COM
MAPSOFWORLD.COM
MARKETWATCH.COM
MARRIOTT.COM
MARTHASTEWART.COM
MARVEL.COM
MASHABLE.COM
MATCH.COM
MATHSISFUN.COM
MATHXL.COM
MATTEL.COM
MAXGAMES.COM
MAXIM.COM
MAXPREPS.COM
MAYOCLINIC.COM
MCAFEE.COM
MCDONALDS.COM
MCGRAW-HILL.COM
MEDHELP.ORG
MEDIAFIRE.COM
MEDIAITE.COM
MEDIATAKEOUT.COM
MEDICALNEWSTODAY.COM
MEDICINENET.COM
MEDSCAPE.COM
MEETME.COM
MEETUP.COM
MEFEEDIA.COM
MEGAMILLIONS.COM
MEGAUPLOAD.COM
MEIJER.COM
MEMEBASE.COM
MEMECENTER.COM
MENARDS.COM
MENSHEALTH.COM
MENSHEALTHBASE.COM
MENTALFLOSS.COM
MENUISM.COM
MENUPAGES.COM
MERCHANTCIRCLE.COM
MERCURYNEWS.COM
MERRIAM-WEBSTER.COM
METACAFE.COM

METACRITIC.COM
METAFILTER.COM
METRIC-CONVERSIONS.ORG
METROLYRICS.COM
METROMIX.COM
METROPCS.COM
MEVIO.COM
MGID.COM
MIAMIHERALD.COM
MICHAELS.COM
MICHIGAN.GOV
MICROSOFT.COM
MICROSOFTONLINE.COM
MICROSOFTSTORE.COM
MICROSOFTTRANSLATOR.COM
MILB.COM
MILITARY.COM
MINECRAFT.NET
MINECRAFTFORUM.NET
MINECRAFTWIKI.NET
MINICLIP.COM
MINT.COM
MIRROR.CO.UK
MIT.EDU
MLB.COM
MLIVE.COM
MLXCHANGE.COM
MMO-CHAMPION.COM
MNN.COM
MO.GOV
MOBILEPHONESURVEY.NET
MOCOSPACE.COM
MODCLOTH.COM
MODELMAYHEM.COM
MODERNHOMEMODERNBABY.COM
MOM.ME
MOMMYMIXING.COM
MOMSWHOTHINK.COM
MOMTASTIC.COM
MONEYNEWS.COM
MONKEYQUEST.COM
MONSTER.COM
MORNINGSTAR.COM

MOSHIMONSTERS.COM
MOTIFAKE.COM
MOTORTREND.COM
MOVIEFONE.COM
MOVIEROOMREVIEWS.COM
MOVIES.COM
MOVIESTARPLANET.COM
MOVIETICKETS.COM
MOVIEWEB.COM
MOZILLA.ORG
MRMOVIETIMES.COM
MSN.COM
MSNBC.COM
MTA.INFO
MTV.COM
MULTIPLY.COM
MUSICIANSFRIEND.COM
MUSICNOTES.COM
MUZY.COM
MVGUAM.COM
MYCOKEREWARDS.COM
MYCRICKET.COM
MYDAILYMOMENT.COM
MYDISH.COM
MYFITNESSPAL.COM
MYFLORIDA.COM
MYFOXNY.COM
MYFRIENDSGREETINGS.COM
MYFUNCARDS.COM
MYHOMEMSN.COM
MYLIFE.COM
MYLIFETIME.COM
MYNEWPLACE.COM
MYNEWSLETTERBUILDER.COM
MYPCBACKUP.COM
MYPODSTUDIOS.COM
MYPOINTS.COM
MYRECIPES.COM
MYSANANTONIO.COM
MYSPACE.COM
MYSTART.COM
MYSTORE411.COM
MYVIEW.COM

| | | |
|---|---|---|
| MYVOICENATION.COM | NEXTSPORTSTAR.COM | ONTHEREDCARPET.COM |
| MYWEBGROCER.COM | NFL.COM | OODLE.COM |
| MYWEBSEARCH.COM | NHL.COM | OPENTABLE.COM |
| MYXER.COM | NICK.COM | OPERA.COM |
| MYYEARBOOK.COM | NICKJR.COM | OPINIONPLACE.COM |
| NADAGUIDES.COM | NIH.GOV | OPM.GOV |
| NARUTOGET.COM | NIKE.COM | OPRAH.COM |
| NASA.GOV | NING.COM | OPTIMUM.NET |
| NASCAR.COM | NINTENDO.COM | ORACLE.COM |
| NASDAQ.COM | NISSANUSA.COM | ORBITZ.COM |
| NATIONALGEOGRAPHIC.COM | NJ.COM | ORCHARDBANK.COM |
| NATIONALJOURNAL.COM | NME.COM | OREGONLIVE.COM |
| NATIONALPOST.COM | NOAA.GOV | OREILLYAUTO.COM |
| NATURALNEWS.COM | NOLA.COM | ORLANDOSENTINEL.COM |
| NATURE.COM | NOMORERACK.COM | ORON.COM |
| NAVER.COM | NORDSTROM.COM | ORTSBOABC.COM |
| NAVY.MIL | NORTHERNTOOL.COM | OSU.EDU |
| NAVYFCU.ORG | NOTDOPPLER.COM | OURSTAGE.COM |
| NBA.COM | NOTEBOOKREVIEW.COM | OURWORLD.COM |
| NBAHOOPTROOP.COM | NOVAMOV.COM | OVERDRIVE.COM |
| NBC.COM | NPR.ORG | OVERSTOCK.COM |
| NBCNEWYORK.COM | NPS.GOV | OVGUIDE.COM |
| NBCSPORTS.COM | NVIDIA.COM | PACSUN.COM |
| NCAA.COM | NY.GOV | PALMBEACHPOST.COM |
| NCH.COM.AU | NYC.GOV | PANDORA.COM |
| NCHSOFTWARE.COM | NYDAILYNEWS.COM | PANERABREAD.COM |
| NEIMANMARCUS.COM | NYMAG.COM | PANORAMIO.COM |
| NEOPETS.COM | NYPOST.COM | PAPAJOHNS.COM |
| NEOSEEKER.COM | NYTIMES.COM | PARENTING.COM |
| NESN.COM | OCREGISTER.COM | PARENTS.COM |
| NETDOCTOR.CO.UK | ODDEE.COM | PARENTSCONNECT.COM |
| NETFLIX.COM | OFFICEDEPOT.COM | PARTYCITY.COM |
| NETSUITE.COM | OFFICEMAX.COM | PASSPORT.COM |
| NEWCOUPONSFOR.ME | OHIO.GOV | PASTEBIN.COM |
| NEWEGG.COM | OKCUPID.COM | PATCH.COM |
| NEWGROUNDS.COM | OLDNAVY.COM | PAWNATION.COM |
| NEWSBUSTERS.ORG | OLIVEGARDEN.COM | PAYLESS.COM |
| NEWSDAY.COM | OLX.COM | PAYPAL.COM |
| NEWSER.COM | OMEGLE.COM | PBS.ORG |
| NEWSMAX.COM | ONEKINGSLANE.COM | PBSKIDS.ORG |
| NEWYORKER.COM | ONETRAVEL.COM | PBWORKS.COM |
| NEXON.NET | ONLINE-REFERENCE-TOOLS.COM | PCGAMER.COM |
| NEXTAG.COM | ONSUGAR.COM | PCH.COM |

| | | |
|---|---|---|
| PCHGAMES.COM | POLITICO.COM | RADIOSHACK.COM |
| PCMAG.COM | POLYVORE.COM | RALPHLAUREN.COM |
| PCPOWERSPEED.COM | POPCAP.COM | RANKER.COM |
| PCWORLD.COM | POPSUGAR.COM | RANKINGSANDREVIEWS.COM |
| PENNY-ARCADE.COM | POPTROPICA.COM | RAPGENIUS.COM |
| PEOPLE.COM | POPULARMECHANICS.COM | RAPIDGATOR.NET |
| PEOPLECLICK.COM | POST-GAZETTE.COM | RAPIDLIBRARY.COM |
| PEOPLEFINDERS.COM | POSTINI.COM | RAPIDSHARE.COM |
| PEOPLEPETS.COM | POTTERYBARN.COM | RATEMYPROFESSORS.COM |
| PEOPLESMART.COM | PREVENTION.COM | READERSDIGEST.COM |
| PEPBOYS.COM | PREZI.COM | REAL.COM |
| PEREZHILTON.COM | PRICEGRABBER.COM | REALAGE.COM |
| PERSONALIZATIONMALL.COM | PRICELINE.COM | REALCLEARPOLITICS.COM |
| PETCO.COM | PRIMARYGAMES.COM | REALSIMPLE.COM |
| PETFINDER.COM | PRLOG.ORG | REALTOR.COM |
| PETSMART.COM | PRNEWSWIRE.COM | RECIPE.COM |
| PGATOUR.COM | PROACTIV.COM | REDBALCONY.COM |
| PHILLY.COM | PROBOARDS.COM | REDBOX.COM |
| PHOENIX.EDU | PRODUCTMADNESS.COM | REDBUBBLE.COM |
| PHONEARENA.COM | PRODUTOOLS.COM | REDDIT.COM |
| PHOTOBUCKET.COM | PROFLOWERS.COM | REDENVELOPE.COM |
| PHYS.ORG | PROGRESSIVE.COM | REDFIN.COM |
| PHYSICSFORUMS.COM | PRONTO.COM | REFERENCE.COM |
| PICMONKEY.COM | PRWEB.COM | REGALCINEMAS.COM |
| PICNIK.COM | PSU.EDU | REGIONS.COM |
| PILLSBURY.COM | PSYCHCENTRAL.COM | REI.COM |
| PINGER.COM | PSYCHOLOGYTODAY.COM | RELISH.COM |
| PINTEREST.COM | PUBLICRECORDS.COM | REMAX.COM |
| PIPL.COM | PUBLIX.COM | RENT.COM |
| PIRIFORM.COM | PURDUE.EDU | RENTALS.COM |
| PIXLR.COM | PURPLEMATH.COM | REPLY.COM |
| PIZAP.COM | PUTLOCKER.COM | RESEARCH.NET |
| PIZZAHUT.COM | QUALITYHEALTH.COM | RESEARCHNOW.COM |
| PLANETMINECRAFT.COM | QUESTBASIC.COM | RESERVEAMERICA.COM |
| PLAYHUB.COM | QUICKBOOKS.COM | RESTAURANT.COM |
| PLAYLIST.COM | QUICKMEME.COM | RETAILMENOT.COM |
| PLAYSTATION.COM | QUIZLET.COM | REUTERS.COM |
| PNC.COM | QUIZNOS.COM | REVERBNATION.COM |
| POEMHUNTER.COM | QUORA.COM | RHAPSODY.COM |
| POF.COM | QUOTEGARDEN.COM | RHYMEZONE.COM |
| POG.COM | QVC.COM | RIGHTDIAGNOSIS.COM |
| POGO.COM | RADARONLINE.COM | RITEAID.COM |
| POKEMON.COM | RADIO.COM | RIVALGAMING.COM |

RIVALS.COM
ROADRUNNER.COM
ROBLOX.COM
ROCKETLAWYER.COM
ROCKYOU.COM
RODALE.COM
ROLLINGSTONE.COM
ROTTENTOMATOES.COM
RUNESCAPE.COM
RUNNERSWORLD.COM
RUSHCARD.COM
RXLIST.COM
SACBEE.COM
SAFEWAY.COM
SAIPANTRIBUNE.COM
SAKSFIFTHAVENUE.COM
SALARY.COM
SALESFORCE.COM
SALLIEMAE.COM
SALON.COM
SAMOANEWS.COM
SAMOAOBSERVER.WS
SAMSCLUB.COM
SAMSUNG.COM
SAVINGSTAR.COM
SBNATION.COM
SCHOLASTIC.COM
SCHOOLFEED.COM
SCHOOLLOOP.COM
SCHWAB.COM
SCIENCEDAILY.COM
SCIENCEDIRECT.COM
SCOTTRADE.COM
SCOUT.COM
SCRABBLEFINDER.COM
SCREENRANT.COM
SCRIBD.COM
SEARCH-RESULTS.COM
SEARCHCOMPLETION.COM
SEARCHQUOTES.COM
SEARS.COM
SEARSPARTSDIRECT.COM
SEATTLEPI.COM

SEATTLETIMES.COM
SEAWORLDPARKS.COM
SEEKINGALPHA.COM
SEEKYSEARCH.NET
SELF.COM
SENDEARNINGS.COM
SENDORI.COM
SENDSPACE.COM
SEPHORA.COM
SERIOUSEATS.COM
SERVICEMAGIC.COM
SEVENFORUMS.COM
SEVENTEEN.COM
SFGATE.COM
SGSAPPS.COM
SHAPE.COM
SHAREBEAST.COM
SHARECARE.COM
SHEKNOWS.COM
SHMOOP.COM
SHOCKWAVE.COM
SHOEBUY.COM
SHOEDAZZLE.COM
SHOPATHOME.COM
SHOPAUTOWEEK.COM
SHOPLOCAL.COM
SHOPPING.COM
SHOPSTYLE.COM
SHOPWIKI.COM
SHOPZILLA.COM
SHUTTERFLY.COM
SHUTTERSTOCK.COM
SI.COM
SI.EDU
SIDEREEL.COM
SILKROAD.COM
SIMON.COM
SIMPLYHIRED.COM
SIMPLYRECIPES.COM
SINA.COM.CN
SING365.COM
SIRIUSXM.COM
SIXFLAGS.COM

SKYPE.COM
SLACKER.COM
SLASHDOT.ORG
SLASHGEAR.COM
SLATE.COM
SLICKDEALS.NET
SLIDESHARE.NET
SMARTER.COM
SMARTERLIFESTYLES.COM
SMARTMOMSTYLE.COM
SMARTMONEY.COM
SMARTSHOPPINGINFO.COM
SMARTSOURCE.COM
SMILEBOX.COM
SMOSH.COM
SMUGMUG.COM
SNAGAJOB.COM
SNAPFISH.COM
SNOPES.COM
SOCIALSECURITYDISABILITYBENEFITS.CO
SOCKSHARE.COM
SODAHEAD.COM
SOFT32.COM
SOFTONIC.COM
SOFTPEDIA.COM
SOHU.COM
SOLARMOVIE.EU
SOMEECARDS.COM
SONGKICK.COM
SONGLYRICS.COM
SONGMEANINGS.NET
SONY.COM
SOUNDCLOUD.COM
SOURCEFORGE.NET
SOUTHERNLIVING.COM
SOUTHPARKSTUDIOS.COM
SOUTHWEST.COM
SPACE.COM
SPANISHDICT.COM
SPARKNOTES.COM
SPARKPEOPLE.COM
SPEEDPAY.COM
SPELLINGCITY.COM

| | | |
|---|---|---|
| SPIKE.COM | STLTODAY.COM | TECHREPUBLIC.COM |
| SPINNER.COM | STLYRICS.COM | TED.COM |
| SPORCLE.COM | STORIFY.COM | TEENNICK.COM |
| SPORTINGNEWS.COM | STRAIGHTTALK.COM | TELEFLORA.COM |
| SPORTSAUTHORITY.COM | STTHOMASSOURCE.COM | TELEGRAPH.CO.UK |
| SPOTIFY.COM | STUBHUB.COM | TELEVISIONFANATIC.COM |
| SPREADSHIRT.NET | STUDENTLOANS.GOV | THEATLANTIC.COM |
| SPRINGERLINK.COM | STUDYISLAND.COM | THEATLANTICWIRE.COM |
| SPRINT.COM | STUMBLEUPON.COM | THEBLAZE.COM |
| SPRINTPCS.COM | STYLEBISTRO.COM | THEBOOMBOX.COM |
| SPRYLIVING.COM | STYLEBLAZER.COM | THEBOOT.COM |
| SQUARESPACE.COM | STYLELIST.COM | THEBUMP.COM |
| SQUIDOO.COM | SUALIZE.US | THECARCONNECTION.COM |
| SSA.GOV | SUBWAY.COM | THECELEBRITYCAFE.COM |
| STACKEXCHANGE.COM | SUDDENLINK.NET | THECHIVE.COM |
| STACKOVERFLOW.COM | SUITE101.COM | THEDAILYBEAST.COM |
| STANFORD.EDU | SUN-SENTINEL.COM | THEDAILYSHOW.COM |
| STAPLES.COM | SUNTIMES.COM | THEFASHIONSPOT.COM |
| STAR-TELEGRAM.COM | SUNTRUST.COM | THEFIND.COM |
| STARBUCKS.COM | SUPERCHEATS.COM | THEFREEDICTIONARY.COM |
| STARDOLL.COM | SUPERPAGES.COM | THEFRISKY.COM |
| STARFALL.COM | SUPERSAVINGSNOW.COM | THEGLOBEANDMAIL.COM |
| STARPULSE.COM | SURVEYGIZMO.COM | THEGRIO.COM |
| STARSJOURNAL.COM | SWAGBUCKS.COM | THEHILL.COM |
| STARTRIBUNE.COM | SWITCHBOARD.COM | THEHOLLYWOODGOSSIP.COM |
| STARWOODHOTELS.COM | SYMANTEC.COM | THEKITCHN.COM |
| STATE.FL.US | SYMPTOMFIND.COM | THEKNOT.COM |
| STATE.GOV | SYRACUSE.COM | THELADDERS.COM |
| STATE.IL.US | T-MOBILE.COM | THEOATMEAL.COM |
| STATE.MD.US | TAGGED.COM | THEONION.COM |
| STATE.MI.US | TALEO.NET | THEPIONEERWOMAN.COM |
| STATE.MN.US | TAMPABAY.COM | THEPIRATEBAY.SE |
| STATE.NJ.US | TAMU.EDU | THEPOSTGAME.COM |
| STATE.NY.US | TARGET.COM | THEROOT.COM |
| STATE.PA.US | TARINGA.NET | THERUGGED.COM |
| STATE.TX.US | TASTEOFHOME.COM | THESAURUS.COM |
| STATEFARM.COM | TBO.COM | THESIMS3.COM |
| STCROIXSOURCE.COM | TDAMERITRADE.COM | THESLAP.COM |
| STEADYHEALTH.COM | TDBANK.COM | THESMOKINGGUN.COM |
| STEAMCOMMUNITY.COM | TECHBARGAINS.COM | THESTAR.COM |
| STEAMPOWERED.COM | TECHCRUNCH.COM | THESTREET.COM |
| STICKPAGE.COM | TECHGUY.ORG | THESUN.CO.UK |
| STJOHNSOURCE.COM | TECHRADAR.COM | THESUPERFICIAL.COM |

THEVERGE.COM
THEWEEK.COM
THEWORKBUZZ.COM
THINKEXIST.COM
THINKGEEK.COM
THINKQUEST.ORG
THIRDAGE.COM
THISOLDHOUSE.COM
TICKETLIQUIDATOR.COM
TICKETMASTER.COM
TICKETS.COM
TIGERDIRECT.COM
TIME.COM
TIMEANDDATE.COM
TIMEOUT.COM
TIMESUNION.COM
TIMEWARNERCABLE.COM
TINYCHAT.COM
TINYPIC.COM
TIRERACK.COM
TMZ.COM
TNTDRAMA.COM
TOLUNA.COM
TOMS.COM
TOMSHARDWARE.COM
TOOFAB.COM
TOPIX.COM
TOPTENREVIEWS.COM
TORRENTCRAZY.COM
TORRENTHOUND.COM
TORRENTREACTOR.NET
TORRENTZ.EU
TOSHIBA.COM
TOTALBEAUTY.COM
TOTALRECIPESEARCH.COM
TOTALREWARDS.COM
TOYOTA.COM
TOYSRUS.COM
TRACTORSUPPLY.COM
TRAILS.COM
TRANSLATEYE.COM
TRANSUNION.COM
TRAVEL-TICKER.COM

TRAVELANDLEISURE.COM
TRAVELCHANNEL.COM
TRAVELMATH.COM
TRAVELOCITY.COM
TRAVELZOO.COM
TRENDMICRO.COM
TRIPADVISOR.COM
TRULIA.COM
TRUTV.COM
TRYSENSA.COM
TUBEPLUS.ME
TUDOU.COM
TUMBLR.COM
TUNEIN.COM
TURBOBIT.NET
TURBOTAX.COM
TURNITIN.COM
TV.COM
TVDUCK.EU
TVFANATIC.COM
TVGUIDE.COM
TVLINE.COM
TVTROPES.ORG
TWITCH.TV
TWITPIC.COM
TWITTER.COM
TYPEPAD.COM
UBI.COM
UCLA.EDU
UCOMPAREHEALTHCARE.COM
UFC.COM
UFL.EDU
UHAUL.COM
ULINE.COM
ULTA.COM
ULTIMATE-GUITAR.COM
ULTIRECRUIT.COM
UMICH.EDU
UMN.EDU
UNCOVERTHENET.COM
UNITED.COM
UNIVISION.COM
UOL.COM.BR

UPENN.EDU
UPICKEM.NET
UPLOADED.TO
UPLOADING.COM
UPROMISE.COM
UPROXX.COM
UPS.COM
UPTAKE.COM
URBANDICTIONARY.COM
URBANOUTFITTERS.COM
URBANSPOON.COM
US.COM
USA.GOV
USAA.COM
USAIRWAYS.COM
USAJOBS.GOV
USATODAY.COM
USBANK.COM
USCELLULAR.COM
USCIS.GOV
USDA.GOV
USGS.GOV
USMAGAZINE.COM
USNEWS.COM
USPS.COM
USSEARCH.COM
USTREAM.TV
UTAH.GOV
UTEXAS.EDU
UTORRENT.COM
V2CIGS.COM
VA.GOV
VACATIONRENTALS.COM
VANGUARD.COM
VANITYFAIR.COM
VENTUREBEAT.COM
VEOH.COM
VERIZON.COM
VERIZON.NET
VERIZONWIRELESS.COM
VEVO.COM
VH1.COM
VIBE.COM

| | | |
|---|---|---|
| VICE.COM | WEBKINZ.COM | WOMANSDAY.COM |
| VICTORIASSECRET.COM | WEBMD.COM | WOMENSFORUM.COM |
| VIDDLER.COM | WEBPRONEWS.COM | WOMENSHEALTHBASE.COM |
| VIDEO2MP3.NET | WEBS.COM | WOMENSHEALTHMAG.COM |
| VIDEOBASH.COM | WEBSHOTS.COM | WONDERHOWTO.COM |
| VIDEOFRAG.COM | WEDDINGBEE.COM | WOOT.COM |
| VIDEOSURF.COM | WEDDINGCHANNEL.COM | WORDPRESS.COM |
| VIDEOWEED.ES | WEDDINGWIRE.COM | WORDREFERENCE.COM |
| VIMEO.COM | WEEBLY.COM | WORLDATLAS.COM |
| VIRGINIA.GOV | WEEKLYSTANDARD.COM | WORLDSTARHIPHOP.COM |
| VIRGINISLANDSDAILYNEWS.COM | WEHEARTIT.COM | WORLDWINNER.COM |
| VIRGINMOBILEUSA.COM | WEIGHTWATCHERS.COM | WORTHPOINT.COM |
| VIRTUALLYTHERE.COM | WELLHABITS.COM | WOWHEAD.COM |
| VIRTUALTOURIST.COM | WELLNESS.COM | WSJ.COM |
| VISTAPRINT.COM | WELLSFARGO.COM | WTHR.COM |
| VITALS.COM | WESTERNUNION.COM | WTSP.COM |
| VOLUSION.COM | WETPAINT.COM | WUFOO.COM |
| VONAGE.COM | WETSEAL.COM | WUNDERGROUND.COM |
| VRBO.COM | WFAA.COM | WWE.COM |
| VULTURE.COM | WHATTOEXPECT.COM | XBOX.COM |
| VUREEL.COM | WHERE2GETIT.COM | XE.COM |
| WA.GOV | WHITEHOUSE.GOV | XEGEN.COM |
| WAHOHA.COM | WHITEPAGES.COM | XFINITY.COM |
| WAJAM.COM | WHOSAY.COM | XFINITYTV.COM |
| WALGREENS.COM | WIKIA.COM | XKCD.COM |
| WALLSTCHEATSHEET.COM | WIKIHOW.COM | Y8.COM |
| WALMART.COM | WIKIMEDIA.ORG | YAHOO.CA |
| WALMARTMONEYCARD.COM | WIKIMEDIAFOUNDATION.ORG | YAHOO.CO.IN |
| WALMARTSTORES.COM | WIKIPEDIA.ORG | YAHOO.CO.KR |
| WARNERBROS.COM | WIKIQUOTE.ORG | YAHOO.CO.UK |
| WASHINGTON.EDU | WIKISPACES.COM | YAHOO.COM |
| WASHINGTONEXAMINER.COM | WIKITRAVEL.ORG | YAHOO.COM.AU |
| WASHINGTONPOST.COM | WIKTIONARY.ORG | YAHOO.COM.CN |
| WASHINGTONTIMES.COM | WILEY.COM | YAHOO.COM.MX |
| WATCHCARTOONONLINE.COM | WIMP.COM | YAHOO.COM.PH |
| WATCHSERIES.EU | WINDOWSMEDIA.COM | YAHOO.COM.SG |
| WAYFAIR.COM | WINZIP.COM | YAHOO.ES |
| WAYPORT.NET | WIRED.COM | YAKAZ.COM |
| WE-CARE.COM | WISC.EDU | YARDBARKER.COM |
| WEATHER.COM | WIZARD101.COM | YARDSELLR.COM |
| WEATHER.GOV | WN.COM | YELLOWBOOK.COM |
| WEATHERBUG.COM | WND.COM | YELLOWBOT.COM |
| WEBCRAWLER.COM | WNLOADS.NET | YELLOWNOW.COM |

YELLOWPAGES.COM
YELP.COM
YEPI.COM
YFROG.COM
YIDIO.COM
YOLASITE.COM
YOUBEAUTY.COM
YOUKU.COM
YOURAVON.COM
YOURDICTIONARY.COM
YOURTANGO.COM
YOUSENDIT.COM
YOUTUBE-MP3.ORG
YOUTUBE.COM
YUKU.COM
YUMMLY.COM
ZAP2IT.COM
ZAPPOS.COM
ZAZZLE.COM
ZBIDDY.COM
ZDNET.COM
ZENDESK.COM
ZILLOW.COM
ZIMBIO.COM
ZIPPYSHARE.COM
ZIPREALTY.COM
ZMOVIE.TV
ZOCDOC.COM
ZOOSK.COM
ZULILY.COM
ZUMIEZ.COM
ZYNGA.COM

# EXHIBIT 4

728x90 Banner

Did You Purchase Stevia in the Raw?

A Class Action May Affect your Rights



CLICK HERE
FOR MORE
INFORMATION

300x250 Banner

Did You Purchase
Stevia in the Raw?

A Class action May
Affect Your Rights.

Click Here

Social (Facebook)



**Stevia in the Raw Settlement**
www.SteviaInTheRawSettlement.com
Did You Purchase Stevia in the Raw? Your rights may be affected



**Class Action Settlement**
www.SteviaInTheRawSettlement.com
Did You Purchase Stevia in the Raw? You May Be Entitled to Settlement Benefits.



**Stevia in the Raw Settlement**
www.SteviaInTheRawSettlement.com
Did You Purchase Stevia in the Raw? You May Be Entitled to Settlement Benefits.

Keyword Search

**Class Action Settlement**
www.SteviaInTheRawSettlement.com
 Did You Purchase Stevia in the Raw? Your rights may be affected

**Stevia in the Raw**
www.SteviaInTheRawSettlement.com
Did You Purchase Stevia in the Raw? Your rights may be affected

# EXHIBIT 5

**Settlement Administrator Dahl Administration Announces Class Action Settlement in the**
*Frohberg, et al. v. Cumberland Packing Corp.* **Litigation**

MINNEAPOLIS, <<DATE>> /PRNewswire/ -- Two plaintiffs have filed a lawsuit alleging that the use of the phrases "natural," "all natural" and "100% natural" on packages of Cumberland Packing Corp.'s Stevia In The Raw Products is misleading. The plaintiffs have brought these claims on behalf of all consumers who purchased Stevia In The Raw brand Products containing these phrases in the United States between October 9, 2009 and July 1, 2014. Cumberland denies that these phrases are inaccurate or misleading. The parties recently entered into a settlement agreement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

*Am I affected by the Settlement?* Your rights are affected by the Settlement, and you are entitled to obtain the benefits of the settlement agreement if you purchased at least one Stevia in the Raw brand Product containing the phrases "natural," "all natural" or "100% natural" in the United States between October 9, 2009 and July 1, 2014 for household use or personal consumption and not for resale or distribution.  If you meet these criteria, you are considered a member of the class of consumers on whose behalf the lawsuit is brought ("Class Member") unless you request that you be excluded from the class. Anyone who is a board member, officer, or attorney of Cumberland may not participate in the Settlement.

*What Can I Get From the Settlement?* Class Members may be eligible to receive a cash payment of up to $2 for each package of Stevia In The Raw Consumer brand Products they purchased during the designated time period, up to a maximum of 8 packages. The maximum potential payment is $16 per household.  Payments may be less than $2 per package, depending on the number of claims approved.  A detailed Class Notice and copies of the Claim Form are available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

*What are My Options?* To receive a cash payment, you must send in a Claim Form by [DATE]. If you do not wish to participate in the settlement, you may exclude yourself from the Class by [DATE].  The detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx explains how to exclude yourself from the settlement. If you exclude yourself, you can't get money from this settlement if it is approved.  If you're a Class Member, you may object to any part of the settlement you don't like, and the Court will consider your views. Your objection must be timely, in writing and must provide documents to establish your membership in the Class. Procedures for submitting objections are set out in the detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

The Court will hold a Final Fairness Hearing at ____ a.m./p.m. on _____ in _____, New York.  At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate and whether to approve payments  of up to $3,500 to each of the two plaintiffs who

initially filed the lawsuit, and attorneys' fees and expenses up to $450,000, and administrative and notice costs up to $210,000.  You may attend the hearing, and you may hire your own lawyer, but you are not required to do either.  The Court will consider timely written objections and will listen to people who have made a prior written request to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement.

*What If I Have Questions?* This Notice is just a summary. Detailed notice, as well as the Settlement Agreement and other documents filed in this lawsuit can be found online at www.xxxxxxxxxxxxxxx.com.  For more information, you may call or write to the Settlement Administrator at 1-8xx-xxx-xxxx, Stevia in the Raw Settlement, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614 or info@xxxxxxxxxxxxxxxxxx.com.

QUESTIONS? CALL 1-8xx- xxx-xxxx or VISIT www.xxxxxxxxxxxxxxx.com

MEDIA: Jeff Dahl, 952-562-3601

SOURCE: DAHL ADMINISTRATION, LLC

RELATED LINKS: www.xxxxxxxxxxxxxxx.com

# EXHIBIT D

## NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT OF CLAIMS

If You Purchased Stevia In The Raw Brand Products Between October 9, 2009 and July 1, 2014,
You May Be Eligible For A Cash Payment Of Up To $16

Two plaintiffs have filed a lawsuit alleging that the use of the phrases "natural," "all natural" and "100% natural" on packages of Cumberland Packing Corp.'s Stevia In The Raw brand Products is misleading. The plaintiffs have brought these claims on behalf of all consumers who purchased Stevia In The Raw brand Products containing these phrases in the United States between October 9, 2009 and July 1, 2014. Cumberland denies that these phrases are inaccurate or misleading. The parties recently entered into a settlement agreement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

**Am I affected by the Settlement?** Your rights are affected by the Settlement, and you are entitled to obtain the benefits of the settlement agreement, if you purchased at least one Stevia in the Raw brand Consumer Product containing the phrases "natural," "all natural" or "100% natural" in the United States between October 9, 2009 and July 1, 2014 for household use or personal consumption, and not for resale or distribution. If you meet these criteria, you are considered a member of the class of consumers on whose behalf the lawsuit is brought ("Class Member") unless you request that you be excluded from the class. Anyone who is a board member, officer, or attorney of Cumberland may not participate in the Settlement.

**What Can I Get From the Settlement?** Class Members may be eligible to receive a cash payment of up to $2 for each package of Stevia In The Raw brand Consumer Products they purchased during the designated time period, up to a maximum of 8 packages. The maximum potential payment is $16 per household. Payments may be less than $2 per package, depending on the number of claims approved. A detailed Class Notice and copies of the Claim Form are available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

**What are My Options?** To receive a cash payment, you must send in a Claim Form by [DATE]. If you do not wish to participate in the settlement, you may exclude yourself from the Class by [DATE]. The detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx explains how to exclude yourself from the settlement. If you exclude yourself, you can't get money from this settlement if it is approved. If you're a Class Member, you may object to any part of the settlement you don't like, and the Court will consider your views. Your objection must be timely, in writing and must provide documents to establish your membership in the Class. Procedures for submitting objections are set out in the detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

The Court will hold a Final Fairness Hearing at ____ a.m./p.m. on _____ in _____, New York. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate, and whether to approve payments of up to $3,500 to each of the two plaintiffs who initially filed the lawsuit, and attorneys' fees and expenses of up to $450,000, and administrative and notice costs of up to $210,000. You may attend the hearing, and you may hire your own lawyer, but you are not required to do either. The Court will consider timely written objections and will listen to people who have made a prior written request to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement.

**What If I Have Questions?** This Notice is just a summary. Detailed notice, as well as the Settlement Agreement and other documents filed in this lawsuit, can be found online at www.xxxxxxxxxxxxxxx.com. For more information, you may call or write to the Settlement Administrator at 1-8xx-xxx-xxxx, Stevia In The Raw Settlement, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614 or info@xxxxxxxxxxxxxxxxxx.com.

---

**CLAIM FORMS MUST BE RETURNED BY [MONTH DAY, YEAR].**
**QUESTIONS? VISIT** www.xxxxxxxxxxxxxxx.com **OR CALL 1-8XX-XXX-XXXX**

# EXHIBIT E

# ESCROW AGREEMENT

This Escrow Agreement dated _____, is made among _____ ("Class Counsel"), _____ ("Defense Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as escrow agent ("Escrow Agent").

## Recitals

A.      This Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Stipulation of Settlement (the "Settlement Agreement") dated _____ attached hereto as Exhibit A, entered into by, among others, Class Counsel on behalf of the Lead Plaintiffs and Defense Counsel on behalf of the Defendant, will be paid to settle the class action captioned _____, pending in _____ (the "Court").

B.      Pursuant to the terms of the Settlement Agreement, the Defendant has agreed to pay or cause to be paid the total amount of _____ in cash (the "Settlement Amount") in settlement of the claims brought against the Defendant in the Class Action.

C.      The Settlement Amount, together with any interest accrued thereon, is to be deposited into escrow and used to satisfy payments to Authorized Claimants, payments for attorneys' fees and expenses, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement.

D.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## Agreement

1.      Appointment of Escrow Agent.  The Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.      The Escrow Account.  The Escrow Agent shall establish and maintain an escrow account titled as _____ (the "Escrow Account").  Pursuant to the Settlement Agreement, the Defendant shall cause the Settlement Amount to be deposited into the Escrow Account within _____ days following entry of the Court's order preliminarily approving the settlement.  Escrow Agent shall receive the Settlement Amount into the Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund."  The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund.

3. <u>Investment of Settlement Fund</u>.  At the written direction of Class Counsel, Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government.  The Escrow Agent shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent.

4. <u>Escrow Funds Subject to Jurisdiction of the Court</u>.  The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5. <u>Tax Treatment & Report</u>.  The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1.  Class Counsel and, as required by law, the Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date.  For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Class Counsel.  Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1.  Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6. <u>Tax Payments of Settlement Fund</u>.  All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Escrow Agent shall timely pay such Taxes out of the Settlement Fund, as appropriate, without prior order of the Court, as directed by Class Counsel.  Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law.  The Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund.  The Settlement Fund shall indemnify and hold the Defendant harmless for any taxes that may be deemed to be payable by the Defendant by reason of the income earned on the Settlement Fund, and Escrow Agent shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendant pursuant to the terms of the Settlement Agreement, the Defendant shall provide Escrow Agent with a properly completed Form W-9.

7.     <u>Disbursement Instructions</u>

(a)     Class Counsel may, without further order of the Court or authorization by the Defendant's Counsel, instruct Escrow Agent to disburse the funds necessary to pay Notice and Administration Expenses.

(b)     Disbursements other than those described in paragraph 7(a), including disbursements for distribution of Class Settlement Funds, must be authorized by either (i) an order of the Court, or (ii) the written consent of _____ of Class Counsel and _____ of Defense Counsel.

(c)     In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Escrow Agent will seek confirmation of such instructions by telephone call back to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.  It will not be reasonably necessary to seek confirmation if Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b).  To assure accuracy of the instructions it receives, Escrow Agent may record such call backs.  If Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Escrow Agent.  Class Counsel and Defense Counsel agree to notify Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

8.     <u>Termination of Settlement</u>.  If the Settlement Agreement terminates in accordance with its terms, Class Counsel and the Defendant shall jointly notify Escrow Agent of the termination of the Settlement Agreement.  Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Class Counsel and the Defendant, shall be returned to the Defendant in accordance with instruction from the Defendant's Counsel.

9.     <u>Fees</u>.  For all services rendered by Escrow Agent pursuant to this Escrow Agreement, Escrow Agent shall charge a flat fee of $5,000.  The escrow fee shall be waived if the fund is invested in an FDIC insured account.  In the event that a portion of the Escrow

3

Account is invested in Treasury Bills, Escrow Agent shall charge an annualized fee of 0.03% (3 basis points) for Treasury Bill purchases.  All fees and expenses of Escrow Agent shall be paid solely from the Settlement Fund.  The Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Class Counsel.  If Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

      10.    <u>Duties, Liabilities and Rights of Escrow Agent</u>.  This Escrow Agreement sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

      (a)    Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel or Counsel for the Defendant, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

      (b)    Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.  Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Escrow Account only (i) upon approval by Class Counsel and the Defendant or (ii) pursuant to an order of the Court.

      (c)    The Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

      (d)    Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

      (e)    Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Escrow Agreement. The Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any an all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act  or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except as a result of the Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically set forth herein.

11.     <u>Non-Assignability by Escrow Agent</u>.     Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and the Defendant.

12.     <u>Resignation of Escrow Agent</u>.  Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Escrow Agreement herein.   On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent, subject to this Escrow Agreement.  If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

13.     <u>Notices</u>.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Class Counsel:

If to Defendant:

If to Escrow Agent:     THE HUNTINGTON NATIONAL BANK
Christopher Ritchie, Senior Vice President
1150 First Avenue, Suite 501
King of Prussia, PA  19406
Telephone:  (215) 568-2328
E-mail:  chris.ritchie@huntington.com

Kimberlee Wilson, Senior Vice President
Huntington National Bank
7 Easton Oval – EA4E63
Columbus, Ohio 43219
Telephone:  (614) 331-9556
E-mail:  kim.wilson@huntington.com

14.    <u>Patriot Act Warranties</u>.  Class Counsel hereby acknowledges receiving from the Defendant the representations and warranties, substantially similar in form and in substance to the following, concerning the Settlement Funds that the Defendant will deliver for deposit with the Escrow Agent:

(a)    The Defendant hereby acknowledges that it seeks to comply with all applicable laws concerning money laundering and related activities.  In furtherance of those efforts, the Defendant hereby represents, warrants, and agrees that, to the best of its knowledge:

(i)    none of the cash or property that it has paid, will pay or will contribute to the Settlement Fund has been or shall be derived from, or related to, an activity that is deemed criminal under United States law; and

(ii)    no contribution or payment by it to the Escrow Account shall cause Escrow Agent to be in violation of the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986 or the United States International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001.

(b)    The Defendant agrees to promptly notify Escrow Agent if any of the foregoing representations cease to be true and accurate.  The Defendant agrees to provide to Escrow Agent any additional information regarding itself or any insurers contributing to the Settlement Fund which is reasonably necessary or appropriate for the Escrow Agent to ensure its compliance with all applicable laws concerning money laundering and similar activities, subject to any confidentiality obligations (recognized or permitted by law) that may restrict or prohibit the Defendant from providing such information.  Escrow Agent agrees to keep any information provided by the Defendant pursuant to this paragraph confidential, and will not disclose such information to any other party except to the extent necessary or appropriate to ensure compliance with all applicable laws concerning money laundering and similar activities; provided, however, that Escrow Agent shall give notice to the Defendant as soon as practicable in the event it expects that such a disclosure will become necessary.

(c)     The Defendant agrees that if at any time Escrow Agent determines that any of the foregoing representations are incorrect with respect to it, or if otherwise required by applicable law or regulation related to money laundering and similar activities, Escrow Agent may undertake whatever actions are reasonably appropriate to ensure compliance with applicable law or regulation.

15.    <u>Entire Agreement</u>.  This Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.    <u>Governing Law</u>.  This Escrow Agreement shall be governed by the law of the State of Ohio in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Escrow Agent may commence pursuant to this Escrow Agreement for the appointment of a successor escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.    <u>Termination of Escrow Account</u>.  The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Escrow Agreement.

18.    <u>Miscellaneous Provisions</u>.

(a)    <u>Counterparts</u>.  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

(b)    <u>Further Cooperation</u>.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order (a) to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

(c)    <u>Non-Waiver</u>.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____
       Christopher W. Ritchie, Senior Vice President


Class Counsel

By: _____


Defense Counsel

By: _____