**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**HALUNEN LAW**
Clayton Halunen
*halunen@halunenlaw.com*
Melissa W. Wolchansky
*wolchansky@halunenlaw.com*
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LESLIE FROHBERG and NANCY HARDING, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br><br>      v.<br><br>CUMBERLAND PACKING CORP.,<br><br>                    Defendant. | No. 1:14-cv-00748-KAM-RLM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES TO PLAINTIFFS' COUNSEL AND INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     ARGUMENT ................................................................................................... 3

      A.      Class Counsel Negotiated Fees with Defendant Only after Agreeing upon the Settlement Terms ........................................................................ 4

      B.      The Agreed-upon Attorneys' Fees and Litigation Expenses Are Reasonable and Warrant Approval ................................................................................... 5

            1.      The Complexity, Magnitude, and Risks of the Action and the Contingent Nature of the Fee ...................................................... 9

            2.      The Result Achieved and the Quality of Representation ........................... 10

            3.      The Requested Multiplier of Less Than 1.00 Is Reasonable ................... 10

      C.      The Court Should Approve the Reimbursement of Class Counsel's Expenses ......................................................................................... 11

      D.      The Court Should Approve the Proposed Incentive Awards to the Class Representatives ............................................................................... 11

III.    CONCLUSION .............................................................................................. 13

## **TABLE OF AUTHORITIES**

**CASES**

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) ...................................................................................... 9

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988) .......................................................................... 10

*Blessing v. Sirius XM Radio Inc.*,
   507 F. App'x 1 (2d Cir. 2012) ....................................................................... 3, 5, 7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................ 6

*Bowling v. Pfizer, Inc.*,
   922 F. Supp. 1261 (S.D. Ohio) ............................................................................. 4

*City of Providence v. Aeropostale, Inc.*,
   No. 11 CIV 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................... 6, 8

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ............................................................................... 4

*Flynn v. New York Dolls Gentlemen's Club*,
   No. 13 CIV. 6530 PKC RLE, 2015 WL 3916161 (S.D.N.Y. Apr. 28, 2015) ...................... 5, 8

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ......................................................................... 5, 7, 8

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................ 4

*Hernandez v. Immortal Rise, Inc.*,
   306 F.R.D. 91 (E.D.N.Y. 2015) ........................................................................ 11

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ............................................................................... 4

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................... 6

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .................................. 6, 8

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 CIV.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ................................ 9

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................................ 9

*Johnston v. Comerica Mortgage Corp.*,
    83 F.3d 241 (8th Cir. 1996) ...................................................................................... 7

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 10

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11-CV-05669 BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ................. 11

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) ..................................................................... 5, 6, 7, 8

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) ....................................................................... 5, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..................................................................................... 6, 7

**STATUTES AND OTHER AUTHORITIES**

4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed. 2008) ..................... 11

Arthur R. Miller, Reporter, Court Awarded Attorney Fees: Report of the
    Third Circuit Task Force (1985) ............................................................................... 7

Plaintiffs[1] Leslie Frohberg and Nancy Harding respectfully submit this memorandum of law in support of Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Litigation Expenses to Plaintiffs' Counsel and Incentive Awards to the Class Representatives (the "Motion").

## I.   PRELIMINARY STATEMENT

As discussed in detail in Plaintiffs' Memorandum of Law in Support of Their Unopposed Motion for Final Approval of the Class Action Settlement (filed concurrently herewith), Class Counsel achieved a favorable Settlement on behalf of the Settlement Class Members after more than three years of work, including substantial investigation and discovery, vigorously contested litigation, and extensive arm's-length negotiations

Importantly, the Settlement Agreement provides for significant injunctive relief. Plaintiffs' allegations are that Cumberland deceptively and misleadingly marketed and labeled the Stevia in the Raw Consumer Products as "100% Natural." (*See generally* Second Am. Compl., ECF No. 44.) Through intensive negotiations, both before and during the pendency of the Action, as well as hard-fought pre-trial litigation, Plaintiffs brought about a Settlement that provides for removal of the representations "100% Natural" and "All Natural" from the Product labeling and packaging. (§ 4.2.) The removal is permanent. (§ 10.3.) The Settlement's injunctive relief constitutes a significant win for the Settlement Class Members.

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning as used in the Settlement Agreement. (See Pls.' Mem. Supp. Unopposed Mot. Prelim. Approval Settlement, Ex. 1, ECF No. 46-2.) References herein to "§ __" are to paragraphs in the Settlement Agreement.

In addition, the Settlement provides for substantial monetary compensation for the Settlement Class Members in the form of $1,547,000 fund from which Settlement Class Members may make Claims for reimbursement for their purchases of the Stevia in the Raw Consumer Products, as well as the costs of notice, claims administration, fees and costs are paid. Eligible Settlement Class Members may each recover $2 for each of their purchases of the Stevia in the Raw Consumer Products, up to a maximum of $16.[2] (§ 4.1(b).) This amount constitutes return of 40% of the average $5 purchase price and is more than consumers would likely have received if they case had proceeded to trial. (*See* Declaration of Michael R. Reese Supp. Pls.' Mot. Final Approval Settlement & Payment of Attorneys' Fees & Litigation Expenses & Service Awards ¶ 20 ("Reese Decl.") (ECF No. 55-3)).

The Parties only reached the Settlement after conducting significant investigation, research, and discovery and engaging in extensive arm's-length negotiations, over the course of three years, including a mediation session with David Geronemus, Esq., a settlement conference with the Court, and multiple in-person settlement conferences. (*See* Declaration of Melissa W. Wolchansky Supp. Pls.' Unopposed Mot. Final Approval Settlement ¶¶ 5–32 ("Wolchansky Decl.") (ECF No. 55-4); Reese Decl. ¶¶ 7–19.) As discussed above, the Settlement is an excellent result because it requires Defendant to make a major labeling change and provides the Settlement Class Members with meaningful monetary relief.

---

[2] The Settlement also provides for a separate payment of up to $210,000 to the Class Action Settlement Administrator to cover the costs of the Notice Plan and Claims administration. (§ 4.1(a).)

Class Counsel now hereby move for $450,000 as payment of attorneys' fees and reimbursement of litigation expenses. Class Counsel also hereby request payments to Plaintiffs of $3,500 each (for a total of $7,000) for their contributions to, and active participation in, the Action as the class representatives.

As the record before this Court demonstrates,[3] the favorable outcome in this case is the result of Class Counsel's hard work and diligent efforts. The amount requested in fees and expenses for Class Counsel fairly and reasonably compensates them for over three years of hard work and diligent efforts in negotiating and litigating this matter, as well as their unreimbursed expenses. The requested amount is in line with prior decisions of courts in the Second Circuit, and, in fact, *less than* Class Counsel's combined lodestar. *See, e.g.*, *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4–5 (2d Cir. 2012) (upholding award of $13 million in fees for injunctive relief settlement achieved after three years of litigation).

Based on Plaintiffs' contributions to the Action and incentive awards in other cases, the Incentive Awards for Plaintiffs are also fair and reasonable. For all of the reasons given herein, the Court should grant Plaintiffs' Motion.

## II.    ARGUMENT

Class Counsel has spent more than three years litigating this matter. (Reese Decl. ¶¶ 7–19; Wolchansky Decl. ¶¶ 5–32.) They should now be compensated for their work. As Plaintiffs demonstrate below, the $450,000 that Class Counsel seeks here is well within range of fee awards in similar cases in the Second Circuit and less than Class Counsel's lodestar.

---

[3] The Reese and Wolchansky Declarations are an integral part of this submission. Plaintiffs respectfully refer the Court to these Declarations for a detailed description of the factual and procedural history of the litigation, the claims asserted, the work Class Counsel performed, the settlement negotiations, and the numerous risks and uncertainties the litigation presented.

3

For the reasons stated below, Class Counsel respectfully request that the Court issue an order granting their request for payment of $450,000 for their efforts.

### A. Class Counsel Negotiated Fees with Defendant Only after Agreeing upon the Settlement Terms

As an initial matter, it is important to point out that Class Counsel did not negotiate attorneys' fees and expenses with Defendant until *after* the Parties reached agreement as to the terms of the Settlement benefiting the Settlement Class. (Reese Decl. ¶ 18.)

The United States Supreme Court has held that negotiated, agreed-upon attorneys' fee provisions are the ideal toward which the parties should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "A request for attorney's fees should not result in a second major litigation." *Id.* "Ideally, of course, litigants will settle the amount of a fee." *Id.*; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568–70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees).

Moreover, alteration of the fee amount here will not affect the monetary benefits available for the Settlement Class Members. (§ 4.1 (allocating up to a maximum amount of $880,000 for Settlement Class Members and an independent amount of up to $450,000 for Attorneys' Fees and Expenses of Class Counsel).) A decision to reduce or even to refuse to award a fee, while beneficial to Defendant, will not affect the Settlement Class Members. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (approving award of attorneys' fees where "[t]he vast majority of the fee [would] be paid by [the defendant] and [would] not come out of any class recovery"). Nor does a negotiated fee present the potential for adversity between Class Counsel and the Settlement Class that the traditional common fund fee may present, since the negotiated fee is being paid in addition to the monetary benefits for the Settlement Class. *See Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277–78 (S.D. Ohio) (recognizing that divergence of interest can arise in traditional

4

common fund situations), *aff'd*, 102 F.3d 777 (6th Cir. 1996). Courts at all levels of the judicial system have endorsed such negotiated fee and expense awards. *See, e.g.*, *Blessing*, 507 F. App'x at 4 (upholding fee award by District Court that was agreed to by the parties, stating that "the fee was negotiated only after settlement terms had been decided and did not, as the district court found, reduce what the class ultimately received").

**B.    The Agreed-upon Attorneys' Fees and Litigation Expenses Are Reasonable and Warrant Approval**

The fee request here is reasonable and worthy of the Court's approval.

Courts commonly look at two methodologies to determine the amount to award class counsel for their efforts in achieving relief for settlement class members: the lodestar method and the percentage-of-the-fund method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47, 50 (2d Cir. 2000); *accord Blessing*, 507 F. App'x at 4. Under the lodestar approach, the court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47 (citation omitted). Once the court has made the initial computation, it may, in its discretion, increase the lodestar by applying a multiplier. *Id.*; *see, e.g.*, *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197–98 (S.D.N.Y. 1997) (awarding a 5.5 multiplier).

Under the percentage-of-the-fund method, the court sets a percentage of the common fund recovery as a fee. *Goldberger*, 209 F.3d at 47. In courts within the Second Circuit, the amount of the attorneys' fees awarded under the percentage methodology is often between 20 and 30 percent of the fund and has been as much as 1/3 of the fund. *E.g.*, *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 216, 220–22 (S.D.N.Y. 2015) (approving request for 1/3 of $4,650,000 settlement as fees); *Flynn v. New York Dolls Gentlemen's Club*, No. 13 CIV. 6530 PKC RLE, 2015 WL 3916161, at *1 (S.D.N.Y. Apr. 28, 2015) (approving award of $1,290,000, which was 30% of the settlement

fund); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014) (stating that "[i]n this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund," and collecting cases); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of the $15 million settlement fund), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162, 165 (S.D.N.Y. 2011) (awarding 33% of the $13 million settlement fund).

Furthermore, under the percentage-of-the-fund method, it is appropriate to base the percentage on the full amount of the fund, *i.e.*, the gross cash benefits available for Settlement Class Members to claim plus the additional benefits conferred on the Settlement Class by Defendant's payment of attorneys' fees and expenses and the expenses of notice and claims administration. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980) ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.").

"Courts in the Second Circuit tend to grant class counsel a percentage of any settlement, rather than utilize the 'lodestar method' (multiplying the hours reasonably expended by a reasonable hourly rate), because the percentage method aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Raniere*, 310 F.R.D. at 220 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). "The lodestar method, on the other hand, disincentivizes early settlements, tempts lawyers to run up their hours, and 'compels district courts to engage in a gimlet-eyed review

of line-item fee audits.'"[4] *Id.* (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 121). The percentage method is an appropriate method of fee recovery here because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum recovery in the shortest amount of time required under the circumstances, is supported by public policy, has been recognized as appropriate by the Supreme Court for cases of this nature, and represents the overwhelming current trend in the Second Circuit and most other circuits. *Cf. Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 245 (8th Cir. 1996) (stating that a Third Circuit Task Force Report "recommended that the percentage of the benefit method be employed in common fund situations" (citing ARTHUR R. MILLER, REPORTER, COURT AWARDED ATTORNEY FEES: REPORT OF THE THIRD CIRCUIT TASK FORCE (1985) (published at 108 F.R.D. 237))); *see also id.* at 245 n.8 (listing deficiencies that the Third Circuit Task Force Report identified in the lodestar process particularly as it applies to a fund case).

Under either method, the courts are "guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50 (citation omitted) (the "*Goldberger* reasonableness factors"); *accord Blessing*, 507 F. App'x at 4.

---

[4] However, "[a]s a 'cross-check' to a percentage award, courts in this Circuit [do] use the lodestar method." *Wal-Mart Stores, Inc.*, 396 F.3d at 123 (citing *Goldberger*, 209 F.3d at 50).

Here, the agreed-upon award of $450,000 in attorneys' fees and expenses is reasonable under the percentage-of-the-fund method, as it constitutes approximately 29% of the total $1,547,000 Defendant will make available for payment of the Settlement. *See Raniere*, 310 F.R.D. at 216, 220–22; *Flynn*, 2015 WL 3916161, at *1; *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *12; *City of Providence*, 2014 WL 1883494, at *20. Furthermore, as Plaintiffs set out in more detail below and in the declarations accompanying this brief, the requested fee is also reasonable under the lodestar methodology. (Reese Decl. ¶¶ 28–31; Wolchansky Decl. ¶¶ 37–42.) And, as set forth below, under either method, the requested fees are reasonable in light of the *Goldberger* reasonableness factors.

Class Counsel have devoted considerable time and effort to the investigation, prosecution, and settlement of this highly technical, complex action. Over the course of more than 32 months, Class Counsel have spent in excess of 830 hours in performance of their services, which has resulted in the Settlement. (Reese Decl. ¶ 29; Wolchansky Decl. ¶ 39.) The Settlement is an outstanding result for the Settlement Class Members, and, indeed, it has already received preliminary approval from the Court. Class Counsel, however, have yet to be paid anything for their labor and efforts over the past two-plus years.

Class Counsel also have incurred expenses during the course of this case that have yet to be reimbursed, including but not limited to costs associated with mediation, court appearances, travel and discovery. (Reese Decl. ¶ 32; Wolchansky Decl. ¶ 50.) Class Counsel's lodestar to date is $509,822 and expenses are $9,910.78.[5] (Reese Decl. ¶¶ 29, 32; Wolchansky Decl. ¶¶ 39, 50.) Counsel anticipate they will also incur additional lodestar in seeking final approval of the

---

[5] Class Counsel's lodestar does not, and will not, include any time incurred in seeking fees, such as the time spent drafting this memorandum.

8

Settlement. (Reese Decl. ¶ 30; Wolchansky Decl. ¶ 40.)

### 1.   The Complexity, Magnitude, and Risks of the Action and the Contingent Nature of the Fee

The risk of litigation that Class Counsel undertook was significant in light of the considerable time and resources they devoted to this case strictly upon a contingency basis. From the commencement of this litigation, Class Counsel have been paid nothing for their substantial efforts. The significant outlay of cash and personnel resources that Class Counsel has made has been completely at risk. (Reese Decl. ¶¶ 33–34; Wolchansky Decl. ¶¶ 33–36, 38.) Payment for Class Counsel's services was wholly dependent on obtaining some benefit for the Settlement Class. (Reese Decl. ¶¶ 33–34; Wolchansky Decl. ¶ 38.) As Plaintiffs discuss in their papers in support of final approval, there was a significant possibility that Class Counsel would recover nothing for their substantial efforts. (Reese Decl. ¶¶ 33–34; Wolchansky Decl. ¶¶ 33–36, 38.) *See In re Lloyd's Am. Trust Fund Litig.*, No. 96 CIV.1262 RWS, 2002 WL 31663577, at *28 (S.D.N.Y. Nov. 26, 2002) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier[.]"); *In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160, 164 (S.D.N.Y. 1989) (same).

Courts have recognized that the risk of non-payment in complex cases, such as the case at bar, is very real and is heightened when plaintiffs' counsel press to achieve the very best result for those they represent. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *E.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class counsel won a substantial jury verdict, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation). (Reese Decl. ¶ 21 (discussing where counsel spent years on litigation on a contingency basis only to have case dismissed, with no compensation, due to a change in the law).)

9

### 2.    The Result Achieved and the Quality of Representation

The result achieved and the quality of the services provided are also important factors to consider in determining the amount of reasonable attorneys' fees under a lodestar/multiplier analysis. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547–48 (S.D. Fla. 1988) ("Perhaps no better indicator of the quality of representation here exists than the result obtained. The quality of work performed in a case that settles before trial is best measured by the benefit obtained." (footnote omitted)).

Here, the goals of the litigation were to enjoin Defendant from marketing the Stevia in the Raw Consumer Products in a manner that Plaintiffs contended was false and misleading and to provide monetary compensation for the Settlement Class Members for their purchases of the Products on account of the allegedly false and misleading marketing. Class Counsel's efforts in the litigation achieved both of these significant goals. (*See* §§ 4.1, 4.2.) The substantial experience of Class Counsel in prosecuting consumer protection class action cases was an important factor in achieving these significant goals.[6]

### 3.    The Requested Multiplier of Less than 1.00 Is Reasonable

To date, Class Counsel have expended no less than 830 hours, for a lodestar of $509,882, based on market rates. (Reese Decl. ¶¶ 29, 32; Wolchansky Decl. ¶¶ 39, 50.) As of the date of the filing of this brief, the multiplier is less than 1.00. This multiplier falls well within the acceptable range awarded by courts within the Second Circuit. *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 to be "well within the range awarded by courts in this Circuit and courts throughout the country").

---

[6] Furthermore, Class Counsel have a proven track record in the prosecution of class actions, and they have successfully litigated many major class action cases. (*See* Reese Decl. ¶ 27; Wolchansky Decl. ¶ 37.)

Here, taking into account the significant complexity of the issues, the risks of this litigation, and the contingent nature of the fee, a multiplier of less than 1.00 is certainly reasonable.

**C.      The Court Should Approve the Reimbursement of Class Counsel's Expenses**

Class Counsel have also expended $9,910.78 in costs, for which they should now be reimbursed. (Reese Decl. ¶ 32; Wolchansky Decl. ¶ 50.) These costs were integral to the prosecution of this case, including costs associated with mediation as part of the process of reaching a resolution of the Action. (*Id.*)

**D.      The Court Should Approve the Proposed Incentive Awards to the Class Representatives**

Plaintiffs have also moved the Court to approve Incentive Awards to the Class Representatives. "[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (citation omitted) (approving service awards of $2,500 and $7,500 to named plaintiffs as reasonable); *see also Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669 BMC, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases approving service awards ranging from $5,000 to $30,000); 4 WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 11:38 (4th ed. 2008).

Defendant has agreed to pay incentive awards of $3,500 each to Plaintiffs (for a total of $7,000) as compensation for their time and effort spent in the litigation. (§ 8.5.) Each Plaintiff performed an important and valuable service for the benefit of the Settlement Class. Each met, conferred, and corresponded with Class Counsel as needed for the efficient process of this litigation. (*See* Declaration of Nancy Harding (ECF No. 55-6); Declaration of Leslie Frohberg (ECF No. 55-5); Decl. Wolchansky Supp. Pls.' Unopposed Mot. Prelim. Approval Settlement ¶ 23, ECF No. 46-4.) Each Plaintiff has participated in numerous interviews by Class Counsel, provided personal information concerning the Action, and remained intimately involved in the mediation and litigation processes. (Harding Decl. ¶¶ 6–11, Frohberg Decl. ¶¶ 4–11.) Further, each Plaintiff actively participated in discussions related to the Settlement. (Harding Decl. ¶¶ 6–11; Frohberg Decl. ¶¶ 4–11.) Plaintiffs' actions have benefitted the Settlement Class to a significant degree (including by culminating in the Settlement). Plaintiffs respectfully request that the Court approve the $3,500 service awards.

III.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Award of Attorneys' Fees and Litigation Expenses to Plaintiffs' Counsel and Incentive Awards to Class Representatives.

Date: February 22, 2016                    Respectfully submitted,

                                    By:  _/s/ Michael R. Reese_____
                                         Michael R. Reese
                                         _mreese@reesellp.com_
                                         George V. Granade
                                         _ggranade@reesellp.com_
                                         **REESE LLP**
                                         100 West 93rd Street, 16th Floor
                                         New York, New York  10025
                                         Telephone: (212) 643-0500
                                         Facsimile: (212) 253-4272

                                         **HALUNEN LAW**
                                         Clayton Halunen
                                         _halunen@halunenlaw.com_
                                         Melissa W. Wolchansky
                                         _wolchansky@halunenlaw.com_
                                         1650 IDS Center
                                         80 South Eighth Street
                                         Minneapolis, Minnesota  55402
                                         Telephone: (612) 605-4098
                                         Facsimile: (612) 605-4099

                                         _Counsel for Plaintiffs and the Proposed Class_